1  ROBERT B. MILLIGAN, SBN 217348
   rmilligan@seyfarth.com
2  DANIEL JOSHUA SALINAS, SBN 282065
   jsalinas@seyfarth.com
3  SIERRA J. CHINN-LIU, SBN 322994
   schinnliu@seyfarth.com
4  SEYFARTH SHAW LLP
   2029 Century Park East, Suite 3500
5  Los Angeles, California 90067
   Telephone: (310) 277-7200
6  Facsimile: (310) 201-5219

7
   MICHAEL D. WEXLER (*admitted pro hac vice*)
8  mwexler@seyfarth.com
   KEVIN J. MAHONEY (*admitted pro hac vice*)
9  kmahoney@seyfarth.com
   KATELYN R. MILLER (*admitted pro hac vice*)
10 krmiller@seyfarth.com
   SEYFARTH SHAW LLP
11 233 South Wacker Drive, Suite 8000
   Chicago, Illinois 60606
12 Telephone: (312) 460-5000
   Facsimile: (312) 460-7000
13

14 JESSE M. COLEMAN (*admitted pro hac vice*)
   jmcoleman@seyfarth.com
15 SEYFARTH SHAW LLP
   700 Milam Street, Suite 1400
16 Houston, Texas 77002
   Telephone: (713) 225-2300
17 Facsimile: (713) 225-2340

18
   *Attorneys for Plaintiff*
19 Karma Automotive LLC

20                **UNITED STATES DISTRICT COURT**
21                **CENTRAL DISTRICT OF CALIFORNIA**

22 | KARMA AUTOMOTIVE LLC, a California limited liability company, | Case No. 8:20-cv-02104-JVS-DFM |
23 | | **REDACTED** |
   | Plaintiff, | **PLAINTIFF'S NOTICE OF** |
24 | | **MOTION AND MOTION TO** |
   | v. | **COMPEL THE RETURN OF A** |
25 | | **PRIVILEGED DOCUMENT AND** |
26 | LORDSTOWN MOTORS CORP., an Ohio corporation; STEVE BURNS, an individual, JOHN LEFLEUR, an individual, DARREN POST, an individual, RICH SCHMIDT, an individual, ROGER | **STRIKE DEPOSITION** |
27 | | **TESTIMONY; MEMORANDUM OF** |
   | | **POINTS AND AUTHORITIES** |
28 | | **IN SUPPORT THEREOF** |

1

| | |
|---|---|
| J. DURRE, an individual, HONG XIN HUAN (A.K.A "GEORGE" HUAN), an individual; BEI QIN, an individual; STEPHEN PUNAK, an individual; CHRISTOPHER KIM, an individual; DAN ZHIHONG HUANG, an individual; PUNAK ENGINEERING, INC., a California Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Date: June 8, 2021<br>Time: 10:00 a.m.<br>Crtrm: 6B<br>Judge: Hon. Douglas F. McCormick<br><br>[Declaration of Jesse M. Coleman; Declaration of Usama Kahf; Declaration of Michael Kunkel; Declaration of Leo Lin; Declaration of ▮▮▮▮▮; Declaration of Kevin Zhang; Declaration of Tushar Vaidya; and [Proposed] Order]<br><br>Date Action Filed: October 30, 2020 |

## NOTICE OF MOTION AND MOTION

## TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on June 8, 2021, at 10:00 a.m., or as soon thereafter as the parties may be heard by the Honorable Douglas F. McCormick, Plaintiff Karma Automotive LLC ("Karma") will and hereby does move under Federal Rule of Civil Procedure 26(c) for this Honorable Court to compel Defendants to identify and destroy all copies of a document protected by the work product doctrine and attorney-client privilege in their possession and refrain from using or referencing the document for any purpose. Karma also respectfully requests that this Court strike from relevant deposition transcripts any testimony or reference to the document or the information contained therein.

As set forth in the below accompanying memorandum, good cause exists to grant the relief requested by Karma. The document at issue, stolen by Defendant Roger Durre and unlawfully in the possession of Defendant Lordstown Motors Corp., is part of an analysis commissioned by Karma's outside counsel to inform strategy for anticipated litigation. Accordingly, the document is protected from discovery by the work product doctrine and attorney-client privilege. Moreover, although Karma took various

2

PLAINTIFF'S MOTION TO COMPEL RETURN
OF A PRIVILEGED DOCUMENT AND STRIKE DEPOSITION TESTIMONY
CASE NO. 8:20-CV-02104-JVS-DFM

precautions to maintain the confidentiality of the document, any purported disclosure to individuals in its organization outside of Karma's executive team was wholly inadvertent, precluding any finding of waiver. On this record, an order directing Defendants to destroy and refrain from using the document is appropriate.

This Motion is based on this Notice, the below Memorandum of Points and Authorities, the Declarations of Jesse Coleman, Usama Kahf, Michael Kunkel, Leo Lin, Kevin Zhang, ▮▮▮▮▮▮▮▮, and Tushar Vaidya, the pleadings and papers on file in this action, all matters of which this Court may take judicial notice, oral argument of counsel presented at any hearing scheduled by the Court, and any other matters presented to the Court in connection with this Motion. A proposed order has been lodged herewith.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place via teleconference on March 9, 2021.

WHEREFORE, Karma respectfully requests that the Court enter an order compelling Defendants to identify and destroy all copies of the privileged and work-product document in their possession and refrain from using or referencing the document for any purpose, as well as an order striking from relevant deposition transcripts any testimony or reference to the document or the information contained therein, and for such other and further relief as the Court deems just.

DATED: May 14, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ *Sierra J. Chinn-Liu*
Sierra J. Chinn-Liu
Attorneys for Plaintiff
Karma Automotive LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants should not benefit from their unlawful theft and possession of Karma Automotive LLC's ("Karma") privileged document. Yet, that is exactly what Defendants seek to do in this lawsuit. This whole case involves the surreptitious theft of confidential information and double-dealing conduct of Defendants to unfairly benefit themselves and harm Karma. The instant discovery dispute is one particular but telling example of this theft and double-dealing, and specifically of Defendant Roger Durre ("Durre") stealing a privileged and confidential Karma document to use against his former employer, to his unlawful benefit.

As set forth below, Lordstown Motors Corporation ("LMC") produced and used part of a highly confidential analysis sent by Karma's outside attorney to Karma's then-general counsel in anticipation of litigation and maintained within a group of a handful of high-level Karma executives. Revealingly, the document produced by LMC is not the analysis in its original form: It is a single-page, hazy screenshot with the "Attorney-Client Privileged; Attorney Work Product" designations inexplicably removed. Karma has no record of mistakenly sending the document to any third party. And, LMC has offered no credible explanation as to how it obtained the document.

That is because Durre stole the document from Karma, saved it on his computer, provided it to LMC, and is now, along with LMC, exploiting the document to undermine Karma in this litigation. On these facts, which is just one example of the thousands of documents Durre stole from Karma, an order requiring Defendants' destruction and non-use of the document is more than warranted.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The instant dispute arises from Defendants' refusal to return a privileged document—a document stolen from Karma by Durre—which first came to Karma's attention during a deposition. On January 29, 2021, Durre testified at his deposition that

1  he "saw pieces" of a "███████████" that he "understood," from information he
2  was told "fourth or fifth person down," was "by accident" "aired" during a meeting by
3  Karma employee Kevin Zhang, and that someone took a "screenshot" of the document.
4  (Decl. of Usama Kahf, attached as <u>Exhibit A</u>, ¶ 5). Durre did not disclose that he was in
5  possession of the document, that he stole the document from Karma, that he saved the
6  document to his computer, or that the document was in LMC's document production.
7  (*Id.*). Rather, Durre only testified that he "saw" the document. Then, on February 18,
8  2021, LMC took the deposition of Karma's Chief of Staff, Mikael Elley ("Elley"). (*Id.* ¶
9  6). During the deposition, LMC's counsel introduced a single-page screenshot of a multi-
10 page ████████ analysis (the "Analysis") prepared by a consulting firm engaged by
11 Karma's outside counsel to inform Karma's legal strategy. (*Id.* ¶¶ 3, 6).[1]
12       Specifically, in 2019, ███████████████, an attorney at the law firm of
13 ███████████████, was retained by Karma to provide legal advice as ███████
14 ███████████████ (Decl. of ███████████, attached as <u>Exhibit B</u>, ¶¶ 2, 4). After
15 ████ provided Karma's then-general counsel, John Wilson ("Wilson"), initial legal
16 advice, Wilson authorized ████ to commission a █████████████████
17 ████████████████████████████ (*Id.* ¶ 5). ████████, in turn, retained
18 consultant ██████████████████████ for this purpose. (*Id.*). At ██████
19 instruction, and using █████████████████████████ prepared the Analysis,
20 marking it highly confidential and protected under the attorney-client privilege and work
21 product doctrine. (*Id.* ¶ 6). After review, ██████ provided Wilson the Analysis on March
22 19, 2021, and, thereafter, spoke with Wilson and high-level Karma executives about the
23 Analysis and its findings, using the same to inform his legal advice to Karma concerning
24 █████████████████ (*Id.* ¶¶ 8-9).

---

[1] Karma will provide to the Court a copy of the single-page screenshot and a copy of the full, multi-page analysis for *in camera* review.

1  The Analysis was not produced by Karma during discovery. (*See generally* Kahf Decl.). Instead, Karma—through its counsel, Usama Kahf ("Kahf") of Fisher Phillips LLP—first became aware of LMC's possession of the single-page screenshot when it was marked as "Exhibit No. 133" at Elley's deposition. (Kahf Decl. ¶ 6). After questioning regarding Exhibit No. 133 revealed the privileged nature of the document, Kahf objected on the record to use of the document and all questioning regarding it, citing the attorney-client privilege and work product doctrine. (*Id.* ¶ 7).

Exhibit No. 133 was produced by LMC in its December 4, 2020 document production—part of LMC's aggregate production of more than 180,000 documents. (*Id.* ¶¶ 3-4). Notably, in addition to being only one page of the full Analysis, Exhibit No. 133 contained no privilege designations even though all iterations of the Analysis in Karma's possession were labeled, "Highly Confidential: Attorney-Client Privilege; Attorney Work Product." (*Id.* ¶¶ 4, 17; ▮ Decl. ¶¶ 6-8). Karma does not know who allegedly took a screenshot of the Analysis or how Durre obtained access to the document. (Decl. of Leo Lin, attached as Exhibit C, ¶ 11). It is clear, however, that Durre stole the document from Karma and saved it to his computer; indeed, metadata produced with the document confirms that ***Durre is the custodian of the document and that Durre saved the document to the desktop folder of his computer***. (Decl. of Tushar Vaidya, attached as Exhibit D, ¶ 6).

Moreover, despite Durre's testimony, Kevin Zhang never had access to the document. (Decl. of Kevin Zhang, attached as Exhibit E, ¶ 3). Rather, access to the Analysis was strictly limited to Wilson, Ron Ashpes (Karma's then-Chief Financial Officer), Ron Samaco (Karma's Controller), Leo Lin (Karma's then-Vice President for Global Finance and current Chief Financial Officer), and John Zavoli (Wilson's successor as General Counsel) (collectively, the "Control Group"). (Lin Decl. ¶ 5; Kahf Decl. ¶ 9). Karma could identify only one instance where the document went beyond the Control Group. (Kahf Decl. ¶ 18). Wilson, when sending the Analysis to Lin,

inadvertently copied a then-Karma engineer Roozbeh Hamidzad ("Hamidzad") on the email. (*Id.* ¶ 10). Lin immediately informed Wilson of his mistake and advised Wilson to recall the email. (Lin Decl. ¶¶ 6-7). Karma also undertook an investigation upon this revelation to confirm no further dissemination of the document occurred. (Kahf Decl. ¶ 11). A forensic inspection of Karma's Microsoft Office 365 environment, file server, and email server verified that access to the Analysis was limited to the Control Group and that the incident of Wilson mistakenly copying engineer Hamidzad was the only instance where the document went outside the Control Group. (Kahf Decl. ¶¶ 11, 18; *see also* Decl. of Michael Kunkel, attached as <u>Exhibit F</u>.). The forensic analysis also confirmed that Hamidzad deleted the email Wilson sent him, did not send the Analysis to anyone using his Karma email and did not retain the Analysis on his Karma computer. (Kahf Decl. ¶¶ 20-22). There is no evidence anywhere of any third-party dissemination outside of Durre's theft.

Given that Karma closely safeguarded the Analysis and that Durre's possession of the stolen document was undoubtedly unintentional on Karma's part, on February 24, 2021, (just days after the discovery at Elley's deposition), Kahf emailed Defendants' counsel, reiterating that Exhibit No. 133 was protected by the attorney-client privilege and work product doctrine and demanding that Defendants destroy all copies of the document and stipulate to removal of Exhibit No. 133 and related testimony from Elley's deposition. (Kahf Decl. ¶ 24). When Defendants' counsel declined to comply, on March 2, 2021, Kahf sent them a request to meet and confer. (*Id.* ¶ 26). At the March 9, 2021 meet and confer, Defendants' counsel again stated that Defendants would not comply with Karma's requests. (*Id.* ¶ 27).

On March 10, 2021, Seyfarth Shaw LLP was retained by Karma to serve as counsel in lieu of Fisher Phillips. (Decl. of Jesse Coleman, attached as <u>Exhibit G</u>, ¶ 2). On March 18, 2021, Seyfarth contacted counsel for Defendants, asking if Defendants would agree to an informal discovery conference, to which Defendants consented. (*Id.* ¶¶

Case 8:20-cv-02104-JVS-DFM   Document 82   Filed 05/14/21   Page 8 of 18   Page ID #:2311
REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

4-5). Thereafter, the parties submitted position letters, and an informal discovery conference was held on April 14, 2021. (*Id.* ¶ 6). The dispute was not resolved, and the Court requested further briefing, precipitating the instant motion. (*Id.* ¶ 7).

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) provides that upon a showing of good cause, the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding certain disclosures or "inquiry into certain matters." Fed. R. Civ. P. 26(c)(1). District courts have "very broad discretion" in fashioning protective orders under Rule 26(c). *Osband v. Woodford*, 290 F.3d 1036, 1042 (9th Cir. 2002). Relevantly here, Rule 26(b) also provides that if information produced during discovery "is subject to a claim of privilege or of protection as trial-protection material," upon being notified of such claim of protection, the opposing party must "return, sequester, or destroy" the information and refrain from using or disclosing the information until the claim is resolved. Fed. R. Civ. P. 26(b)(5)(B). A protective order can serve as the appropriate remedy to cure or prevent unauthorized use of privileged or protected information. *See KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 917-19 (9th Cir. 1987) (affirming protective order requiring return and non-use of privileged communication); *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 187 (C.D. Cal. 2001) (issuing Rule 26(c) protective order compelling return of inadvertently produced privileged document and directing nonmovant "not to mention, use, or disclose the documents or their contents in any way or for any purpose").

## IV.  ARGUMENT

### A.  The Analysis Is Protected by the Work Product Doctrine.

The Analysis, prepared by ▌▌▌ consultant ▌▌▌ to inform Karma's potential ▌▌▌▌▌▌▌▌▌▌▌, plainly constitutes work product material. The Federal Rules of Civil Procedure govern the application of the work product doctrine. *E.g.*, *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010). Rule 26(b) states,

5

PLAINTIFF'S MOTION TO COMPEL RETURN
OF A PRIVILEGED DOCUMENT AND STRIKE DEPOSITION TESTIMONY
CASE NO. 8:20-CV-02104-JVS-DFM

"[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). To be afforded protection under Rule 26(b), a document must (1) be prepared in anticipation of litigation and (2) be prepared by or for a party or that party's representative. *In re Grand Jury Subpoena (Mark Torf/Torf Environ. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). The work product doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. U.S.*, 539 F.3d 1143, 1148 (9th Cir. 2008).

Here, the Analysis was prepared by ▇ at the direction Karma's outside counsel, ▇, to help him assess Karma's ▇ and provide Karma informed legal advice on these matters. (*See* ▇ Decl. ¶¶ 5-9). Accordingly, the Analysis, prepared by a consultant for Karma and its attorney, clearly satisfies the second factor of Rule 26(b)'s two-inquiry test. *See Grand Jury Subpoena*, 357 F.3d at 907 (concluding documents prepared by consultant retained by attorney deemed work product).

Likewise, the document was prepared in anticipation of litigation, satisfying the first requirement of Rule 26(b). ▇ commissioned ▇ to create the Analysis specifically to inform his legal advice concerning ▇ (▇ Dec. ¶ 5). It is well-settled that ▇ constitutes "litigation" under a work product doctrine analysis. ▇

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Further, it is of no import that litigation ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was not initiated by Karma. Rule 26(b) makes clear that documents are protected if they are prepared "in *anticipation* of litigation," such that work product protections are "not … limited to discovery where litigation has been commenced." ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; *see also Todd v. STARR Surgical Co.*, No. 14-5236, 2015 WL 13388227, at *10 (C.D. Cal. Aug. 21, 2015) ("It would be perverse to exclude material from the work product doctrine because it was carried out in order to prevent anticipated litigation, rather than to carry out litigation.").

Simply put, the Analysis was (1) prepared in anticipation of litigation ▓▓ ▓▓▓▓▓▓▓▓ (2) by ▓▓ (a consultant) for Karma and ▓▓▓▓. Indeed, ▓▓▓▓ retained ▓▓ to create the report in advance of a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and the document would not have been created *but for* this purpose. Because the Analysis "clearly pass[es] the two-part test," its contents are non-discoverable work product, and Exhibit No. 133 must be returned by Defendants. *Grand Jury Subpoena*, 357 F.3d at 907.

While Defendants may contend that the Analysis is not work product because it contains helpful business information, such an argument is unavailing. Where a document is arguably prepared for "dual purposes"—i.e., litigation *and* business reasons—the Ninth Circuit applies a "because of" standard. *See Todd*, 2015 WL 13388227, at *8. Under this test, the court "considers the totality of the circumstances" and deems material work product where it appears that the document "would not have been created in substantially similar form but for the prospect of litigation." *Grand Jury Subpoena*, 357 F.3d at 908.

1  Here, the Analysis was "not prepared in the ordinary course of business or pursuant to a separate independent duty," but was created because ▓ retained ▓ for the purpose of informing his legal opinions. *Cal. Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585, 594 (E.D. Cal. 2012) (report prepared by independent auditing firm protected by work product doctrine); *see also Todd*, 2015 WL 13388227, at *2 (applying "because of" standard and finding that report prepared by attorney-retained consultant was protected from disclosure, as consultant "was involved for the purpose of assisting counsel in providing legal advice"). Further, the fact that the report was prepared contemporaneously with ▓ provision of legal advice also weighs in favor of finding the Analysis protected by the work product doctrine. (*See* ▓ Decl. ¶¶ 5-9). *See Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. 19-835, 2020 WL 7862133, at *2 (C.D. Cal. Nov. 4, 2020) (highlighting timing of creation of document in finding it protected by work product doctrine).

At base, the Analysis is a document prepared at the direction of Karma's counsel, by a consultant retained by its counsel, to aid in litigation strategy. This is exactly the type of material Rule 26(b) is designed to safeguard from discovery.

**B.    The Analysis Is Protected by the Attorney-Client Privilege.**

There is no question that the Analysis is protected by the work product doctrine, necessitating Exhibit No. 133's return and non-use by Defendants. Additionally, the Analysis is protected by the attorney-client privilege, further justifying the relief requested by Karma. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981).[2] The privilege extends to both communications made by the

---

[2] While recognizing that most courts apply federal common law, there is no Ninth Circuit opinion deciding what law should apply where, as here, the District Court exercises federal-question jurisdiction with pendant state law claims. *See Wilcox v. Arpaio*, 753

client to the attorney and the attorney to the client. *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002). Significantly, the Ninth Circuit also recognizes that "[t]he attorney-client privilege may extend to **communications with third parties** who have been engaged to assist the attorney in providing legal advice." *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (emphasis added); *see also U.S. v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (communications between lawyer and private investigator retained by lawyer to assist in representation covered by privilege).

In line with *Richey*, this Court has held that the attorney-client privilege attaches to documents—such as the Analysis—prepared by third parties at the direction of counsel for the purpose of providing legal advice. In *Olen Properties v. Sheldahl*, No. 91-6446, 1994 WL 212135, at *1 (C.D. Cal. Apr. 12, 1994), plaintiff sought production of audits prepared by defendant's consultant for the purpose of "gather[ing] information for [defendant's] attorneys to assist the attorneys in evaluating compliance with relevant laws and regulations." *Id.* at *1. This Court determined that the audits, prepared for the purpose of providing the party an opinion of law, were protected from disclosure under the attorney-client privilege. *Id.* Like the audits in *Olen Properties*, the Analysis was prepared by ▮ for the purpose of informing ▮ legal opinions regarding ▮

---

F.3d 872, 877 n.3 (9th Cir. 2014) (declining to opine on the issue). *But see Williams & Cochrane, LLP v. Rosette*, 17-1436, 2020 WL 3433074, at *4 (S.D. Cal. June 23, 2020) (no error where court applied state common law in case involving supplemental jurisdiction). If this Court *were* to apply California common law, there is no question that the Analysis, transmitted from ▮ (an attorney) to Wilson (his client) would be covered by the attorney-client privilege. The California Supreme Court has confirmed that the attorney-client privilege attaches to documents sent from an attorney to his client, as "it is the actual fact of the transmission which merits the protection." *Mitchell v. Superior Ct.*, 691 P.2d 642, 646 (Cal. 1984); *see also Superior Nat'l*, 518 B.R. at 569 (applying California privilege law and holding that "mere transmission" of documents by attorney to client invokes privilege).

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (▮▮▮ Decl. ¶¶ 5-9). The
Analysis is, therefore, a privileged document.

Relatedly, the Ninth Circuit embraces the *Kovel* doctrine, which provides that the attorney-client privilege extends to communications with a third-party consultant that are "incident to the client's obtaining legal advice from the attorney." *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-3709, 2006 WL 1699536, at *6 (N.D. Cal. June 16, 2006). On this point, *United States v. Judson*, 322 F.2d 460 (9th Cir. 1963), proves particularly instructive. There, the government sought, through a subpoena to a taxpayer's attorney, a net-worth statement prepared by the taxpayer's accountants at the attorney's request. *Id.* at 461-62. The Ninth Circuit affirmed an order quashing the subpoena, finding the statement protected by the attorney-client privilege. *Id.* at 462. Citing *Kovel*, the Ninth Circuit emphasized that the "statement was prepared at the attorney's request, in the course of an attorney-client relationship, for the purpose of advising and defending his clients." *Id.* The accountants' report "constituted confidential communications within the attorney-client privilege," as it was prepared to "facilitate an accurate and complete consultation between the client and the attorney" about the client's "financial picture." *Id.*

Just like the accountants' report in *Judson*, the Analysis was (a) prepared by ▮▮▮ at ▮▮▮ request (b) in the course of ▮▮▮ attorney-client relationship with Karma (c) for the purpose of ▮▮▮ offering comprehensive legal advice to Karma. The Analysis, prepared with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, was meant to facilitate ▮▮▮ provision of legal advice, specifically by providing ▮▮▮ information about Karma's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Judson*, 322 F.3d at 462. As made clear by *Judson*'s application of the *Kovel* doctrine, the attorney-client privilege "logically encompasses reports prepared by third parties at the request of the attorney or client where the purpose of the report was to put in usable form information obtained from the client." *Samuels v. Mitchell*, 155 F.R.D. 195, 198 (N.D. Cal. 1994); *see also In re Morning Bird Song Food Litig.*, No. 12-

10

1592, 2015 WL 12791473, at *3-6 (S.D. Cal. July 17, 2015) (finding documents created by consultant and used by attorney for legal advice protected from disclosure under attorney-client privilege). The Analysis—prepared by ▮ at the request of Karma's outside counsel—squarely falls into this recognized category of attorney-client privileged documents.

### C. Karma Did Not Waive the Work Product Protection or the Attorney-Client Privilege.

In light of the above, there can be no question that the Analysis both constitutes work product and is privileged. The fact that the Analysis surreptitiously landed in the hands of LMC does not invoke waiver so as to strip the document of its protections. *See Dukes v. Wal-Mart Stores, Inc.*, No. 01-2252, 2013 WL 1282892, at *5 (N.D. Cal. Mar. 26, 2013) (ordering return of privileged document that was subject of "unauthorized disclosure," recognizing that waiver is not triggered where documents "are stolen or otherwise misappropriated and then revealed"); *Resolution Tr. Corp. v. Dean*, 813 F. Supp. 1426, 1428 (D. Ariz. 1993) (finding no waiver where defendant sought to "capitalize on an unauthorized illegal leak of a privileged internal memorandum").

Moreover, any inadvertent disclosure of the Analysis does not operate as a waiver because "(1) the disclosure is inadvertent; (2) [Karma] took reasonable steps to prevent disclosure; and (3) [Karma] promptly took reasonably steps to rectify the error." Fed. R. Evid. 502(b). Rule of Evidence 502 was intended to "limit the consequences of inadvertent disclosure" and "reliev[e] litigants of the burden that a single mistake during the discovery process can cost them the protection of a privilege." *Stamps.com v. Endicia, Inc.*, No. 06-7499, 2008 WL 11338241, at *2 (C.D. Cal. Oct. 6, 2008). Karma has established all three requirements of Rule 502(b).

#### 1. Any Disclosure Was Inadvertent.

First, any disclosure of the Analysis by Karma was decidedly inadvertent. This factor is satisfied by a showing that disclosure of a privileged document was

unintentional or made by mistake or accident. *See CP Salmon Corp. v. Pritzker*, 238 F. Supp. 3d 1165, 1175 (D. Alaska 2017); *Kelly v. CSE Safeguard Ins. Co.*, No. 08-88, 2011 WL 3494235, at *2 (D. Nev. Aug. 10, 2011). Importantly, here, Karma did not accidentally produce the document in discovery or share with any third party. Rather, the document was captured or copied and then stolen by Durre without Karma's knowledge or authorization and fed to LMC—just like the confidential and trade secret information on which this case is premised. Tellingly, only a *screenshot*, constituting a single page of the Analysis, was produced by LMC. (Kahf Decl. ¶ 6). What is more, the "Highly Confidential: Attorney-Client Privileged; Attorney Work Product" designation does not appear on Exhibit No. 133, even though *all* iterations of the Analysis in Karma's possession were so designated, indicating that the label was covertly removed. (*Id.* ¶¶ 4, 17). Simply put, LMC's receipt of Exhibit No. 133 was not the consequence of inadvertent disclosure, but surreptitious and unauthorized copying.

In any event, any disclosure of the Analysis, including Wilson's mistakenly sending the document to Karma engineer Hamidzad, was unintentional and actively guarded against by Karma. (*See* Lin Decl. ¶¶ 5-7). *See Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 17-1118, 2018 WL 2979575, at *12 (S.D. Cal. June 8, 2018) (declaration stating that production of privileged document was inadvertent satisfied first prong of Rule 502(b) inquiry); *Multiquip, Inc. v. Water Mgmt. Sys. LLC*, No. 08-403, 2009 WL 4261214, at *4 (D. Idaho Nov. 23, 2009) (no waiver where counsel mistakenly sent privileged communication to nonparty via email). Further, when Karma discovered that Exhibit No. 133 was in Defendants' possession, it promptly and repeatedly demanded the document's return, demonstrating that Karma was unaware of, and did not intend, the disclosure. *See CP Salmon*, 238 F. Supp. 3d at 1175 (retrieval attempts upon learning of disclosure evidenced inadvertence).

2.  <u>Karma Took Reasonable Steps to Prevent Disclosure.</u>

Second, Karma took more than reasonable steps to safeguard the Analysis and protect against its disclosure. After ▮▮▮▮ provided the document to Karma (through Wilson), the Analysis was strictly limited to four high-level Karma executives. (Kahf Decl. ¶ 9). Deliberately limiting access to this Control Group demonstrates that Karma took steps reasonably designed to prevent disclosure. *See Stamps.com*, 2008 WL 11338241, at *2 (fact of mistaken disclosure by itself does not militate against a finding of reasonable-steps factor being satisfied). Further, while Wilson inadvertently copied engineer Hamidzad on a single email attaching the Analysis, Karma conducted a forensic investigation to verify that the document was not further disseminated. (Kahf Decl. ¶¶ 11-15; Kunkel Decl.). This investigation confirmed that Hamidzad deleted the email and did not forward the Analysis to anyone or retain the Analysis on his computer. (Kahf Decl. ¶¶ 20-22). Accordingly, Karma took adequate measures to prevent disclosure. The "isolated act" of one email to another Karma employee does not vitiate this finding. *Multiquip*, 2009 WL 4261214, at *5 (finding no waiver). In addition, the fact that the Analysis—in its unadulterated form—was marked with privilege and work product designations further establishes that Karma took reasonable precautions to prevent disclosure to third parties. *See Bagley*, 204 F.R.D. at 180.

3.  <u>Karma Took Prompt Steps to Rectify the Internal Disclosure.</u>

Lastly, Karma promptly took reasonable steps to rectify any disclosure. LMC's possession of Exhibit No. 133 only came to the attention of Karma when the document was introduced at Elley's deposition. (Kahf Decl. ¶ 6). Significantly, the question of whether a party has acted promptly "is not evaluated from the initial disclosure date, but from the date where the inadvertent [disclosure] becomes known." *Politte v. U.S.*, No. 07-1950, 2010 WL 11512354, at * 17 (S.D. Cal. Mar. 29, 2010); *accord Bagley*, 204 F.R.D. at 180; *Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1041 (N.D. Ill. 2009). When LMC's possession of Exhibit No. 133 came to Kahf's attention at

13

PLAINTIFF'S MOTION TO COMPEL RETURN
OF A PRIVILEGED DOCUMENT AND STRIKE DEPOSITION TESTIMONY
CASE NO. 8:20-CV-02104-JVS-DFM

Elley's deposition, Kahf made an objection on the record, asserting that the document was protected both by the attorney-client privilege and work product doctrine. (Kahf Decl. ¶ 7).[3] Kahf's objection during Elley's deposition demonstrates that Karma took prompt, reasonable steps to remedy the disclosure. *See Fisher*, 2020 WL 6540510, at *5 (party "promptly took reasonable steps to rectify" where counsel objected twenty minutes into deposition); *Valenzuela v. Union Pac. R.R. Co.*, No. 15-1092, 2016 WL 7385037, at *6 (D. Ariz. Dec. 21, 2016) (counsel acted promptly when documents at issue were introduced in morning session of deposition, and counsel asserted privilege objection after lunch break); *Kelly*, 2011 WL 3494235, at *1, 3 (same where privileged document was introduced at deposition and counsel interposed objection following break). Again, the assessment of sufficient promptness is measured by not the time of disclosure, but at the time of awareness. *See Coburn*, 640 F. Supp. 2d at 1036, 1041 (no waiver where disclosure of mistakenly produced document was revealed months later at deposition).

Moreover, after Elley's deposition, Karma diligently followed the procedures of Rule 26(b)(5)(B) to retrieve the document. *See* Fed. R. Evid. 502(b)(3); *Coburn*, 640 F. Supp. 2d at 1041. On February 24, 2021, after conferring with Karma and investigating the facts surrounding the Analysis, Kahf emailed Defendants' counsel restating Karma's objections and requesting that Defendants destroy and refrain from further use of the document. (Kahf Decl. ¶ 24). After Defendants' attorneys declined to comply, Kahf sent another letter on March 2, 2021, advising that Karma would proceed with motion practice if all copies of Exhibit No. 133 were not returned. (*Id.* ¶ 26). Following an unsuccessful

---

[3] Any argument that Karma should have discovered the disclosure following LMC's document production holds no water. LMC produced more than 180,000 documents in under three months, and Exhibit No. 133 represented a single page of this production. (Kahf Decl. ¶¶ 3-4, 6). *Cf. Bagley*, 204 F.R.D. at 180-81 (considering scope of discovery and extent of disclosure as factors when analyzing privilege waiver). Further, the document was not produced in the format known to Karma: a multi-page document with confidentiality designations on all pages. (Kahf Decl. ¶¶ 3-4).

Rule 37-1 conference, Seyfarth attorneys continued to pursue return of Exhibit No. 133, asking on March 18, 2021 (days after Seyfarth's retention) if Defendants would consent to holding an informal discovery conference on the issue. (Coleman Decl. ¶¶ 2-4). *See also CP Salmon*, 238 F. Supp. 3d at 1176 (reasonable steps established where party sent clawback letters asserting privilege and requesting return).

Karma timely objected to Defendants' use of Exhibit No. 133 and demanded its return, satisfying the final prong of Rule 502(b). Because all three factors of the Rule 502(b) inquiry are met, Defendants' possession of Exhibit No. 133 and any inadvertent disclosure on the part of Karma "does not operate as a waiver" of the work product protection and attorney-client privilege, which Karma has established attach to the document. Fed. R. Evid. 502(b). Accordingly, good cause exists for the relief requested by Karma, which will ensure that these well-established protections are honored and enforced. *See Bagley*, 204 F.R.D. at 187 (ordering opposing party to return inadvertently produced documents, destroy files containing summaries or quotations of documents, and refrain from using documents or their contents "in any way or for any purpose").

## V. CONCLUSION

For the reasons set forth above, Karma requests that the Court grant its Motion and enter an order (a) directing Defendants to identify and destroy all copies or partial copies of the Analysis in their possession; (b) directing Defendants to refrain from using or referencing the Analysis or its contents for any purpose; and (c) striking from any deposition transcript any testimony or reference to Exhibit No. 133 or any other portion of the Analysis or its contents.

DATED: May 14, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: */S/ SIERRA J. CHINN-LIU*
Sierra J. Chinn-Liu
Attorneys for Plaintiff
Karma Automotive LLC