# EXHIBIT A

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

ROBERT B. MILLIGAN, SBN 217348
rmilligan@seyfarth.com
DANIEL JOSHUA SALINAS, SBN 282065
jsalinas@seyfarth.com
SIERRA J. CHINN-LIU, SBN 322994
schinnliu@seyfarth.com
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

MICHAEL D. WEXLER (*admitted pro hac vice*)
mwexler@seyfarth.com
KEVIN J. MAHONEY (*admitted pro hac vice*)
kmahoney@seyfarth.com
KATELYN R. MILLER (*admitted pro hac vice*)
krmiller@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

JESSE M. COLEMAN (*admitted pro hac vice*)
jmcoleman@seyfarth.com
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

*Attorneys for Plaintiff*
Karma Automotive LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARMA AUTOMOTIVE LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LORDSTOWN MOTORS CORP., an Ohio corporation; STEVE BURNS, an individual, JOHN LEFLEUR, an | CASE NO.: 8:20-cv-02104-JVS-DFM<br><br>**REDACTED DECLARATION OF USAMA KAHF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE RETURN OF A PRIVILEGED DOCUMENT AND STRIKE DEPOSITION TESTIMONY** |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

individual, DARREN POST, an
individual, RICH SCHMIDT, an
individual, ROGER J. DURRE, an
individual, HONG XIN HUAN
(A.K.A "GEORGE" HUAN), an
individual; BEI QIN, an individual;
STEPHEN PUNAK, an individual;
CHRISTOPHER KIM, an individual;
DAN ZHIHONG HUANG, an
individual; PUNAK ENGINEERING,
INC., a California corporation; and
DOES 1 through 50, inclusive,

       Defendants.

Date:  June 8, 2021
Time:  10:00 a.m.
Crtrm: 6B
Judge: Hon. Douglas F. McCormick

Date Action Filed: October 30, 2020

## DECLARATION OF USAMA KAHF

I, Usama Kahf, declare:

1.    I make this declaration based on my own personal knowledge or based on information and belief where stated and can and would testify to the same if required to do so in a court of law.

2.    I am an attorney licensed to practice law in the State of California.  I am a Partner at the law firm of Fisher & Phillip LLP ("Fisher Phillips").  Fisher Phillips was retained to represent Karma in the above-captioned litigation ("Litigation"). Fisher Phillips' representation of Karma in the Litigation ended on March 17, 2021 when attorneys with the law firm of Seyfarth Shaw LLP ("Seyfarth Shaw") substituted as counsel for Karma.  Prior to Seyfarth Shaw's substitution as counsel for Karma, I was primarily responsible for the representation of Karma in the Litigation.

3.    In connection with the Litigation, on December 4, 2020, Lordstown Motors Corp. ("LMC") produced over 6,000 documents to Karma.  One of those documents was a single-page screenshot of a highly privileged, multi-page ███████ analysis that was created at the direction of Karma's general counsel by Karma's outside counsel and a consulting firm engaged to assist counsel with the analysis ("███████ Analysis").  The single page screenshot was produced as LMC00178057.

2

DECLARATION OF USAMA KAHF IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL THE RETURN OF A PRIVILEGED DOCUMENT
AND STRIKE DEPOSITION TESTIMONY; CASE NO. 8:20-CV-02104-JVS-DFM

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

4.      Given that LMC produced more than 180,000 documents in the Litigation in under three months, that the document was one page buried in LMC's production among thousands of engineering architecture documents, and that the screenshot as produced by LMC did not contain the attorney-client privilege or attorney work product label, the single page screenshot was not immediately escalated to Karma's attention.

5.      On January 29, 2021, Defendant Roger Durre ("Durre") testified at his deposition that he "saw pieces" of a "████████████" that he "understood," from information he was told "fourth or fifth person down," was "by accident" "aired" during a meeting by Karma employee Kevin Zhang, and that someone took a "screenshot" of the document.  However, Durre did not testify that the document was in his possession or was in LMC's document production.  An excerpted certified copy of the transcript of Mr. Durre's deposition is attached as <u>Exhibit 1</u>.

6.      The actual single page screenshot first came to Karma's attention during the deposition of Mikael Elley ("Elley"), Karma's Chief of Staff, on February 18, 2021, when it was introduced by LMC as deposition Exhibit No. 133.

7.      After questioning regarding Exhibit 133 revealed the privileged nature of the document, I objected on the record to the use of the document itself and all questioning regarding the document as protected under the attorney-client privilege and work product doctrine. An excerpted certified copy of the transcript of Mr. Elley's deposition, showing my objection on the record, is attached as <u>Exhibit 2</u>.

8.      After Elley's deposition, Fisher Phillips was provided with a copy of the ████████ Analysis and the email transmitting the ████████ Analysis from Karma's outside counsel, ████████████████, to Karma's then general counsel, John Wilson ("Wilson").

9.      Fisher Phillips learned that access to the ████████ Analysis was strictly limited to Wilson, Ron Ashpes (Karma's Chief Financial Officer at the time), Ron Samaco (Karma's Controller), Leo Lin (Karma's Vice President for Global Finance at the

3

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

time, now Chief Financial Officer), and John Zavoli (Wilson's successor as General Counsel), who was provided access to ████ Analysis when he later joined Karma (collectively, "Control Group").

10.     Upon further investigation, Fisher Phillips learned that upon receipt of the ████ Analysis from ███, Wilson forwarded the ████ Analysis to Lin and inadvertently copied an engineer named Roozbeh Hamidzad.

11.     Based on this information, I directed an investigation and forensic review of Karma's Microsoft Office 365 environment, to locate any copies of the ████ Analysis and determine who within Karma had access to the ████ Analysis.  It is my understanding that Karma's Microsoft Office 365 environment includes Karma's Microsoft SharePoint cloud-based file server ("SharePoint") and the entirety of Karma's email server, which consists of the mailboxes of all current and certain former employees ("Email Accounts") (collectively, "Karma O365 Environment").

12.     Fisher Phillips requested that our forensic consultant, Setec Investigations, search for the ████ Analysis itself ("Document Search"), and separately, conduct a search for the following keywords with a date restriction of February 1, 2020 to October 31, 2020 ("Term Search"):

- ████
- ████
- ████
- ████

13.     Fisher Phillips directed Setec Investigations to prepare and execute the Document Search across all active Karma Email Accounts, including former Karma employee Email Accounts which were still searchable as of March 1, 2021.

14.     Fisher Phillips also directed Setec Investigations to execute the Document Search and Term Search across Karma's SharePoint servers, which I understand include

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

the individually-assigned SharePoint accounts for all current and former Karma employees.

15.     Fisher Phillips also directed Setec Investigations to run the Term Search over the Email Accounts of Wilson, Zavoli, Lin, Samaco, Ashpes, and Hamidzad.

16.     Setec Investigations delivered the results of the above searches to Fisher Phillips for review.

17.     Fisher Phillips reviewed all iterations of the ▇▇▇▇ Analysis it found in the searches executed by Setec Investigations and confirmed that each page of the ▇▇▇▇ Analysis was labeled "Highly Confidential: Attorney-Client Privileged; Attorney Work Product."

18.     Further, upon review of the searches provided by Setec Investigations, Fisher Philips concluded that the ▇▇▇▇ Analysis was strictly limited in access to the Control Group, and identified only the single instance described above where the ▇▇▇▇ Analysis was inadvertently sent outside the Control Group.

19.     Specifically, Fisher Phillips reviewed the March 24, 2020 email from Wilson to Lin and Hamidzad which attached the ▇▇▇▇ Analysis. Fisher Phillips also reviewed an email dated March 24, 2020 from Lin to Wilson in which Lin informed Wilson that Wilson sent the email attaching the ▇▇▇▇ Analysis to the wrong person and asked Wilson to recall his email to Hamidzad.

20.     Fisher Phillips reviewed Hamidzad's Email Account and confirmed that the March 24, 2020 email from Wilson was found only in Hamidzad's "Deleted Items" folder, indicating that the email had been deleted.

21.     Fisher Phillips also searched Hamidzad's Email Account for any additional copies of the ▇▇▇▇ Analysis and any communications transmitting the ▇▇▇▇ Analysis.  Fisher Phillips confirmed that no such commutations exist and that the ▇▇▇▇ Analysis was not found anywhere else in Hamidzad's mailbox. Thus, Fisher

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Phillips confirmed that Hamidzad did not send the ███████ Analysis to anyone using his Karma Email Account.

22.    Fisher Phillips also reviewed the contents of Hamidzad's computer and confirmed that Hamidzad did not retain the ███████ Analysis on his Karma computer.

23.    Additionally, review of both the Document and Term Searches did not uncover any evidence that Kevin Zhang, Karma's Chief Technology Officer, had access to or was provided a copy of the document.

24.    After reviewing the ███████ Analysis and speaking with Karma regarding the nature and purpose of the document, on February 24, 2021, I emailed Defendants' counsel, Terry Brennan, reiterating that Exhibit 133 is a highly confidential, internally maintained document protected by the attorney-client privilege and work product doctrine and demanding that Defendants (a) immediately identify and destroy all copies of the document, (b) refrain from using or referencing the document in any Court submission, and (c) stipulate to having the court reporter remove Exhibit 133 from Elley's deposition transcript and strike all testimony referencing it. A true and correct copy of this February 23, 2021 email is attached as Exhibit 3.

25.    On February 27, 2021, Mr. Brennan responded, stating that Defendants were declining to comply with Karma's above requests.

26.    On March 2, 2021, and pursuant to Local Rule 37-1, I sent to Defendants' counsel a request to meet and confer, advising that Karma would proceed with a motion to compel return of Exhibit 133 and strike Elley's testimony if Defendants did not comply with Karma's demands regarding its destruction and nondisclosure. A true and correct copy of this March 2, 2021 letter is attached as Exhibit 4.

27.    On March 9, 2021, the parties' counsels conferred telephonically about the dispute and Karma's anticipated motion. Defendants again refused to comply with Karma's demands for Defendants to destroy all copies of Exhibit 133, refrain from using

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Exhibit 133 in this proceeding, and stipulate to striking Elley's testimony regarding Exhibit 133.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 11, 2021 in Irvine, California

_____
Usama Kahf

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 1

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Roger Durre                                January 29, 2021
Karma Automotive LLC v. Lordstown Motors Corp

Page 1

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4       KARMA AUTOMOTIVE LLC, a              )

5       California limited liability    ) Case No.

6       company,                        ) 8:20-cv-02104-JVS-DFM

7                        Plaintiff,      )

8              v.                        )

9       LORDSTOWN MOTORS CORP., an       )     DEPOSITION OF:

10      Ohio corporation; STEVE BURNS,  )    ROGER JOE DURRE

11      an individual, JOHN LAFLEUR,     )

12      an individual, DARREN POST, an  ) TAKEN:  JANUARY 29, 2021

13      individual, RICH SCHMIDT, an     )

14      individual, ROGER J. DURRE, an   )

15      individual, HONG XIN HUAN        )

16      (A.K.A. "GEORGE" HUAN), an       )

17      individual, and DOES 1 through   )

18      50, inclusive,                   )

19                        Defendants.    )

20      _____ )

21      REPORTED REMOTELY BY:

22

23      Beverly A. Benjamin, CSR No. 710

24

25      Notary Public

EXHIBIT 1
1

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Roger Durre                                                  January 29, 2021
Karma Automotive LLC v. Lordstown Motors Corp

---

Page 2

1       THE DEPOSITION OF ROGER JOE DURRE was taken on
2   behalf of the Plaintiff via Zoom videoconference,
3   commencing at 10:17 a.m. EST on January 29, 2021, before
4   Beverly A. Benjamin, Certified Shorthand Reporter and
5   Notary Public within and for the State of Idaho, in the
6   above-entitled matter.
7
8       A P P E A R A N C E S :
9           [All via Zoom]
10  For the Plaintiff:
11      Fisher & Phillips LLP
12      BY MR. MICHAEL P. ELKON, melkon@fisherphillips.com
13      MR. SEAN T. KINGSTON, skingston@fisherphillips.com
14      1075 Peachtree Street NE, Suite 3500
15      Atlanta, Georgia 30309
16  For the Defendants:
17      Baker & Hostetler LLP
18      BY MR. THOMAS R. LUCCHESI, tlucchesi@bakerlaw.com
19      MR. ANTHONY B. PONIKVAR, aponikvar@bakerlaw.com
20      MR. TERRY A. BRENNAN, tbrennan@bakerlaw.com
21      127 Public Square, Suite 2000
22      Cleveland, Ohio 44114
23
24  ALSO PRESENT: John Zavoli, Karma General Counsel
25      Stefan Gudmundsson, Karma CIO

---

Page 3

1           I N D E X
2   TESTIMONY OF ROGER JOE DURRE          PAGE
3   Examination by Mr. Elkon                 7
4
5           E X H I B I T S
6   NO.   DESCRIPTION                      PAGE
7   Exhibit 1 - Plaintiff Karma Automotive LLC's     31
8       Amended Notice of Taking the
9       Deposition of Defendant Roger Durre
10  Exhibit 2 - Plaintiff Karma Automotive LLC's     32
11      Request for Production of Documents,
12      Set One
13  Exhibit 3 - Karma Confidential Information,      101
14      Invention Assignment and Arbitration
15      Agreement
16  Exhibit 4 - Email from Joe Durre to Stefan       119
17      Gudmundsson, 1/28/2020, Subject:
18      Vehicle intelligence
19      Monetization.xlsx, Bates Nos. KARMA
20      0009950-951
21  Exhibit 5 - Mutual Non-Disclosure Agreement, Bates   128
22      Nos. LMC00167054-059
23
24
25

---

Page 4

1   Exhibit 6 - Email from Darren Post to Joe Durre,    136
2       3/26/2020, Subject: Infotainment
3       Proposal - karma.pptx, Bates
4       Nos. LMC00179204-211
5   Exhibit 7 - Email chain ending from Joe Durre to   140
6       John Cazort
7   Exhibit 8 - Email from Darren Post to Joe Durre,   146
8       4/2/2020, Subject: EE Infotainment and
9       Connectivity Org Chat, Bates
10      Nos. LMC00179190-192
11  Exhibit 9 - Email chain ending from John LaFleur    155
12      to Darren Post, 4/16/2020, Subject:
13      FW: EE Infotainment and Software
14      Engineering Team in California, Bates
15      LMC00167396-398
16  Exhibit 10 - Email from Darren Post to Steve Burns,  157
17      4/7/2020, Subject: Proposed LMC
18      Infotainment and Connected Car Team,
19      Bates No. LMC00167145
20  Exhibit 11 - Email chain ending from Darren Post to  163
21      Joe Durre, 6/11/2020, Subject: Fwd:
22      Signed LOI - Karma, Bates
23      Nos. LMC00178304-310
24  Exhibit 12 - LMC West Coast Business Case, Bates    170
25      No. LMC00178142

---

Page 5

1   Exhibit 13 - Email chain ending from Joe Durre to    178
2       Darren Post, 7/29/2020, Subject: Re:
3       Data requested, with attachments,
4       Bates Nos. LMC00166948-950
5   Exhibit 14 - Email chain ending from Darren Post to  183
6       Darren Post, 7/30/2020, Subject: FW:
7       Endurance Infotainment Systems Cost
8       Savings Estimate: justify LMC
9       Infotainment - West, Bates
10      Nos. LMC00166679-680
11  Exhibit 15 - Excel document                       186
12      AuditLog_2020-08-01_2020-09-04
13  Exhibit 16 - Email chain ending from Joe Durre to   202
14      Joe Durre, 8/3/2020, Subject: FW:
15      U-BLOX Telematics - Reference design,
16      with attachments, Bates Nos. KARMA
17      0019212-362
18  Exhibit 17 - Email thread ending from Joe Durre to   204
19      Joe Durre, 8/3/2020, Subject: FW:
20      WELLS schematic for review, with
21      attachment, Bates Nos. KARMA
22      0017811-837
23
24
25

---

2 (Pages 2 - 5)

EXHIBIT 1
2

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Roger Durre                                    January 29, 2021
Karma Automotive LLC v. Lordstown Motors Corp



Page 142

1   there were ██████████ So again, this is part of
2   the contingency of looking for the flex space, so
3   something that wouldn't cost a lot, but would give us a
4   place to actually develop, pull those people back in.
5   That's what that was all about.
6       Q. Mr. Durre, this is the second time you have
7   referred to ████████████████████████
8   ██ correct?
9       A. As far as I know, they haven't.
10      Q. And no one at Karma had ever told you that
11  your job was threatened; correct?
12      A. That is incorrect.
13      Q. Who at Karma told you that your job was
14  threatened?
15      A. So again, a lot of this stuff is indirect,
16  even conversations with other colleagues of mine that
17  were there. So there wasn't a document that was
18  circulating, and this was coming from Kevin Zhang, one
19  of his meetings. So I don't report to Kevin Zhang. So
20  Stefan and Kevin are two of the C-level guys that are on
21  the same level. I was reporting to Stefan; a bunch of
22  the other guys were reporting to Kevin. So in one of
23  these meetings from Kevin the ██████████████ was
24  aired, by accident I imagine.
25      Q. What ████████████████████

Page 143

1       A. It was -- I don't know what it was exactly. I
2   just saw pieces of it.
3       Q. You understand ████████████████████
4   ████████████████████████████████████
5   ████████████████
6       MR. LUCCHESI: Objection.
7       Q. (BY MR. ELKON) Do you understand the
8   difference between ████████████████████
9   ████████████████████
10  ████████████████████████████████████
11  ████████████████████████████████████
12  ████████████████████████████████████
13  ████████████████████████████████████
14  ████████████████████████████████████
15      Q. This was a presentation put on by Kevin?
16      A. I don't believe it was a presentation, at
17  least not on purpose for sure. It was just information
18  that was somehow leaked into this meeting, or whatever
19  the meeting was. Again, this is fourth or fifth person
20  down.
21      Q. Do you know how the information was leaked?
22      A. I do not. From what I understood, Kevin was
23  sharing a screen, and it was on the screen. I don't
24  know.
25      Q. Who told you this?

Page 144

1       A. Give me a second. I can't think of his name
2   right off. But he led the ADAS team. I can't think of
3   his name right off.
4       Q. What's Kevin's last name?
5       A. Zhang.
6       Q. So somebody, whose name you can't remember,
7   told you fourth- or fifth-hand that Kevin Zhang at some
8   meeting did a screen share that referenced ████████
9   ████████████████████████████████████████
10  ██████████ Am I getting that correct?
11      MR. LUCCHESI: Objection to the accuracy of
12  your summation.
13      But Joe, you can tell him if it was correct.
14      THE WITNESS: So it was partially correct. So
15  ████████████████████████████████████
16  ████████████████████████████████████
17  ████████████████████████████████████
18      Yeah, and I didn't believe it either. So he
19  shared the screenshot with me. But he isn't the one
20  that actually got the information. He got it from
21  somebody else.
22      Q. (BY MR. ELKON) So you actually saw the
23  screenshot?
24      A. Yes.
25      Q. On the basis of that you started looking for

Page 145

1   real estate for a commercial venture?
2       A. No. I was in contingency mode before that.
3   After the second layoff, I was already very worried and
4   I had people that were very worried and people that were
5   out of work. So trying to keep touch with everyone and
6   find stuff for everyone. So I was calling -- every
7   headhunter I knew that was calling me, I would push
8   these guys over there and find them jobs and give them
9   something to do so they wouldn't be out. And the guys
10  that were inside, I was constantly having to convince
11  them not to leave. It was coming apart at the seams,
12  and it was all I could do just to corral them in and
13  keep them focused.
14      Q. Who did you talk to to try to convince them to
15  stay?
16      A. For one, George, Vittorio, there were others
17  that were contractors that I was trying to convince to
18  not go elsewhere, but they got cut anyways. So they
19  ended up going before I could get anything established.
20      Q. So George, Vittorio, some contractors. Who
21  else did you convince to stay?
22      A. That was pretty much it. The rest of them
23  were my managers coming to me saying, Hey, so and so is
24  interviewing with whatever, and me going through the
25  management saying, Calm them down and give them

37 (Pages 142 - 145)

EXHIBIT
3

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 2

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Mikael Elley                                    February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3                 ~~~~~~~~~~~~~~~~~~~~~

4      KARMA AUTOMOTIVE, LLC,

5      a California Limited

6      Liability Company,

7                   Plaintiff,

8

9         vs.                    Case No.

10                               8:20-CV-02104-JVS-DFM

11     LORDSTOWN MOTOR CORP.,

12     an Ohio Corporation,

13     et al.,

14                   Defendants.

15                 ~~~~~~~~~~~~~~~~~~~~~

16              Remote Video Deposition of

17                   MIKAEL ELLEY

18

                    February 18, 2021

19                   6:59 a.m. (PST)

20              Taken Remotely at:

                Karma Automotive, LLC

21                9950 Jeronimo Road

                 Irvine, California

22

23        Christine M. Emery, Notary Public

24

25

EXHIBIT 2
1

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Mikael Elley                                    February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp

Page 2

1   APPEARANCES:
2   (All present remotely)
3       On behalf of the Plaintiff:
4           Fisher & Phillips LLP, by
5           USAMA KAHF, ESQ.
6           2050 Main Street, Suite 1000
7           Irvine, CA  92614
8           949-851-2424
9           ukahf@fisherphillips.com
10
11      On behalf of the Defendants:
12          Baker & Hostetler LLP, by
13          TERRY M. BRENNAN, ESQ.
14          THOMAS LUCCHESI, ESQ.
15          ANTHONY B. PONIKVAR, ESQ.
16          CORY N. BARNES, ESQ.
17          127 Public Square, Suite 2000
18          Cleveland, OH  44114
19          216-621-0200
20          tbrennan@bakerlaw.com
21          tlucchesi@bakerlaw.com
22          aponikvar@bakerlaw.com
23          cbarnes@bakerlaw.com
24  ALSO PRESENT:
25          Phil Glauberson, Videographer

Page 3

1           TRANSCRIPT INDEX
2
3   APPEARANCES................................  2
4
5   INDEX OF EXHIBITS ........................  6
6
7   EXAMINATION OF MIKAEL ELLEY
8   BY MR. BRENNAN............................  10
9
10  REPORTER'S CERTIFICATE....................  379
11
12  EXHIBIT CUSTODY
13  EXHIBITS RETAINED BY THE COURT REPORTER
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1   OPEN ISSUES
2   object....................................   65
3   object....................................   94
4   object....................................   96
5   object....................................  100
6   objection.................................  105
7   objection. ...............................  108
8   objection.................................  109
9   objection.................................  111
10  objection.................................  111
11  objection.................................  113
12  objection.................................  113
13  object.................................... 115
14  objection.................................  115
15  objection.................................  116
16  objection.................................  118
17  objection.................................  119
18  objection.................................  120
19  objection.................................  122
20  objection.................................  126
21  objection.................................  183
22  objection.................................  190
23  legal conclusion.......................... 194
24  legal conclusion.......................... 194
25  object.................................... 199

Page 5

1   objection. ............................... 212
2   objection. ............................... 212
3   objection................................. 213
4   objection................................. 217
5   objection................................. 219
6   legal conclusion.......................... 220
7   legal conclusion.......................... 237
8   speculation............................... 263
9   objection................................. 282
10  objection................................. 284
11  objection................................. 286
12  objection................................. 300
13  object.................................... 316
14  objection................................. 317
15  objection................................. 318
16  objection................................. 346
17  object, .................................. 348
18
19
20
21
22
23
24
25

2 (Pages 2 - 5)

Mikael Elley                                        February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp



Page 302

Page 303
1    Q.   Okay.
2         MR. BRENNAN:  Cory, can you pull up
3    Baker 19?
4         - - - - -
5         (Thereupon, Exhibit 133,

77 (Pages 302 - 305)

EXHIBIT 2
3

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Mikael Elley                                    February 18, 2021

Karma Automotive LLC v. Lordstown Motors Corp



78 (Pages 306 - 309)

EXHIBIT 2
4

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Mikael Elley                    February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp



79 (Pages 310 - 313)

EXHIBIT 9
5

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Mikael Elley                    February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp



Page 314

Page 315

4    MR. KAHF:  Terry, if we're done
5  with this exhibit maybe now -- now is a good
6  time to break?
7    MR. BRENNAN:  Yeah, that's fine.
8    MR. KAHF:  Ten minutes?
9    MR. BRENNAN:  Yep, perfect.
10    THE WITNESS:  Sounds good.
11    THE VIDEOGRAPHER:  This will end
12  media unit five.  Going off the record at 2:32,
13  February 18, 2021.
14    (Short recess had.)
15    THE VIDEOGRAPHER:  We are back on
16  the record.  The time is 2:46, February 18,
17  2021.  This begins media unit six.

Page 316

23    MR. KAHF:  Object to published.
24    Q.   Published means, we're not talking
25  about writing a book and, you know, having

Page 317

1  Barnes and Noble or Amazon distribute it,
2  disseminated to, sent to, shared with Karma
3  employees.  Are you aware of the fact that this
4  was published to Karma employees?
5    MR. KAHF:  Objection as to whether
6  this was an intentional sharing or an
7  unintentional sharing.
8    MR. BRENNAN:  That wasn't my
9  question.  There was nothing intentional about
10  it.  So please stop coaching the witness.

24    MR. KAHF:  My -- my Zoom is
25  crashing if you guys can give me 30 seconds?

80 (Pages 314 - 317)

EXHIBIT 2
6

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Mikael Elley                                    February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp



Page 318

1    THE VIDEOGRAPHER: Do you want to
2  stay on the record?
3    MR. KAHF: No. No. Off the
4  record. Just give me 30 seconds. Okay. I'm
5  back. Sorry about that.
6    MR. BRENNAN: Okay. Are we on the
7  record?
8    THE VIDEOGRAPHER: We are still on
9  the record.
10
11
12
13
14
15
16
17
18
19
20    MR. BRENNAN: If we can turn to the
21  next exhibit, please?
22    MR. KAHF: Before we turn to the
23  next exhibit, I want to make an objection on
24  the record and I will give you more time on the
25  record if you want because of this objection.

Page 319

1  But we have serious concerns that this document
2  should not have been in the hands of anybody at
3  LMC. And if Joe Durre had taken it, he would
4  have taken confidential and privileged,
5  attorney/client privileged information. To the
6  extent this document was prepared by counsel or
7  at the direction of counsel with the assistance
8  of counsel, especially because it's in a draft
9  mode, suggests that this is attorney work
10  product and should be stricken completely from
11  the record. Because no one should have had it
12  and, let alone, take it with them and retain
13  it.
14    That is our objection. We'll
15  follow up on that after the -- the deposition.
16  But I just want to make sure that's on the
17  record. I will give you more time to --
18  because of my long objection.
19    MR. BRENNAN: Yeah, we can talk
20  about it offline. But -- but if your complaint
21  is that one of your employees created this
22  document, published it to employees, and we
23  have eviscerated the attorney/client privilege
24  by the fact that one of your employees
25  published this to a number of other employees,

Page 320

1  we'll deal with that separately.
2    MR. KAHF: Well, you're using the
3  term published as if it's a legal conclusion.
4  If someone accidentally shared it on Zoom
5  because they don't know how to share, use the
6  share button on Zoom, and somehow they shared
7  the wrong screen and it was on the screen for a
8  second and Joe took a screenshot of it, he
9  wasn't authorized to see it, nobody was
10  authorized to see it. And it was an
11  unintentional sharing. And an unintentional
12  sharing does not eviscerate the attorney/client
13  privilege.
14    We can deal with that off the
15  record. But, I mean, we're objecting to the
16  entire exhibit as being part of the record or
17  any questions about it. But, you know, I -- I
18  let you ask all the questions and we'll deal
19  with the issue of whether this is a privileged
20  documents or not later. Thanks.
21    MR. BRENNAN: Okay. Is it your
22  contention that the company represents all of
23  the employees who saw this?
24    MR. KAHF: Are you asking me?
25    MR. BRENNAN: Yes.

Page 321

1    MR. KAHF: Whether the company
2  represents all of the employees who saw this?
3    MR. BRENNAN: Yes.
4    MR. KAHF: I don't know who all the
5  employees who saw this.
6    MR. BRENNAN: Okay. You understand
7  it's a screenshot; correct?
8    MR. KAHF: That's my understanding.
9  That is a screenshot that should not have
10  been taken.
11    MR. BRENNAN: It -- we can argue
12  about it later, but you will find out that
13  Mr. Durre didn't take the screenshot. Okay?
14
15                          You shared it with a
16  number of employees. That information was
17  captured and the company did nothing to tell
18  employees not to disseminate that information
19  or do anything about the fact that they saw the
20  information
21
22    MR. KAHF: It's because nobody knew
23  that it was accidentally shared, other than
24  the, apparently, the person who took the
25  screenshot and kept it and talked to other

81 (Pages 318 - 321)

EXHIBIT 6
7

Mikael Elley                                      February 18, 2021
Karma Automotive LLC v. Lordstown Motors Corp



Page 322

1  people about it.
2           MR. BRENNAN:  Well, of course -- of
3  course the person who shared it had a hiccup
4  moment and said, oh, my goodness, I
5  accidentally pulled up ███████████ as
6  opposed to moving forward document.  Correct?
7           MR. KAHF:  Right.  Well, okay, so
8  if they -- if they had a memo from me,
9  whatever -- ████
10 ████████ and it was on one of their screens
11 and they accidentally shared it and then when
12 they realized that -- that it was accidentally
13 shared they stopped the share, and a couple of
14 the employees inappropriately retained that
15 information, does that mean that my -- my -- my
16 attorney work product and attorney/client
17 privileged infor -- memo is suddenly completely
18 waived?  I think that's a ridiculous argument.
19 But let's -- let's take it offline.
20          MR. BRENNAN:  What -- what is the
21 legal advice presented in that document?
22
23
24
25

Page 323

1           MR. KAHF:
2
3
4
5
6
7
8
9
10
11
12          MR. BRENNAN:  Okay.  Who created
13 the document?
14          MR. KAHF:  We're going to find out.
15          MR. BRENNAN:  Okay.  You don't
16 know?
17          MR. KAHF:  I don't know right now,
18 no.
19          MR. BRENNAN:  You don't have a
20 basis to assert the privilege?
21          MR. KAHF:  Well, it is a document
22 that the witness testified that there was
23 outside counsel involved.  The type of document
24 reflects that it -- it is prepared with the
25 direction and input of counsel.

Page 324

1           MR. BRENNAN:  Nope.  Nope.  Not --
2  the record will stand on its own.  But the
3  witness hasn't seen the document, much to his
4  chagrin.  But he doesn't -- he understands that
5  outside counsel is consulted in connection with
6  ████████████████████████████████████████
7  ██████████  But the witness is not capable
8  of testifying that he knows that this
9  particular document that he never saw before a
10 half hour ago was prepared for -- was prepared
11 by counsel.  We can agree on that; correct?
12          MR. KAHF:  Correct, he does not
13 know.
14          MR. BRENNAN:  Okay.  All right.
15 Let's -- we can argue offline.
16      Q.   And, I'm sorry, Mr. Elley, this is
17 what we do for a living, which is why you're in
18 the business world.
19      A.   No problem.
20          MR. KAHF:  Like I said, Terry, I --
21 I don't mind you taking more time.  This is an
22 important issue that's taking up time of your
23 questioning, so feel free to take an extra five
24 minutes in addition to stoppage time.
25          MR. BRENNAN:  I appreciate it.  I

Page 325

1  thought we were at an hour and ten minutes and
2  then I was told it was less than that, but that
3  didn't include stoppage time.  So we'll --
4  we'll deal with it.  I'll try to take a break
5  when I think we have ten minutes left with or
6  without stoppage time.
7           So if we can go to the next
8  exhibit?
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

82 (Pages 322 - 325)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 3

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

---

| | |
|---|---|
| **From:** | Kahf, Usama <ukahf@fisherphillips.com> |
| **Sent:** | Wednesday, February 24, 2021 9:06 AM |
| **To:** | Brennan, Terry |
| **Cc:** | Lucchesi, Thomas; Ponikvar, Anthony B.; Fischbach, Ryan D.; Oxley, William W.; Elkon, Michael; Kingston, Sean; Crane, Andrew; Saxon, Andrew; Watkins, Miranda; Lindegren, Karl; Miranda, Adriana |
| **Subject:** | Request for Immediate Return of Privileged Document - LMC00178057 |

Terry,

At the deposition of Mikael Elley on 2/18/21, you introduced as exhibit #133 a document that LMC had produced at Bates # LMC00178057, which is a screenshot of a highly privileged Karma document that was and remains in Joe Durre's possession.  Before you completed your line of questioning regarding this document, I raised the objection on the record that this is a privileged document that appears to have been improperly obtained.  The story we heard from Defendants is that the document was shared on the screen during a meeting and someone took a screenshot of the document that appeared on the screen and shared it with Durre and others at Karma.

We do not know exactly who took this screenshot or how it ended up in Durre's possession.  Durre's testimony regarding this document was vague.  However, we do know with absolute certainty that this document was never intentionally or knowingly disclosed to Durre or others outside of a very small circle of top executives and legal counsel at Karma.  This document was unlawfully and without authorization obtained and acquired by whomever took the screenshot and then unlawfully and without authorization shared by that person with Durre and others.  It was created by and with the direction of Karma's outside counsel, with further input provided by Karma's inhouse counsel.

Specifically, LMC00178057 is one page out of a larger document that was created by ███████ ████ (Karma's outside counsel) and a consulting firm engaged to assist counsel on this analysis.  On the Karma side, the document was edited by John Wilson (Karma's General Counsel at the time) and Ron Ashpes (Karma's Chief Financial Officer at the time).  Access was limited to only those two, along with Ron Samaco (Karma's Controller) and Leo Lin (Karma's VP for Global Finance at the time, now CFO).  John Zavoli (Wilson's successor as GC) got access to this document later when he joined Karma.  Whoever created the screenshot image appears to have removed the "**Attorney-Client Privileged; Attorney Work Product**" label that was at the top of the page as it appears in the original Karma document, and it is unclear whether the person who took the screenshot left out the privilege label at the top or if it was redacted by Durre or others to remove the label.  In any event, the screenshot is one page of a larger document that was prepared by, at the direction of, and with input from legal counsel.  It is clearly privileged.  If any of them shared this on their screen during a Zoom or Teams meeting, they did not know they did and never intentionally did so.  This is

EXHIBIT 3
1

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

understandable at the beginning of the pandemic when most people didn't know how to operate the "screenshare" features of Zoom and other virtual meeting platforms.

As LMC00178057 is a Karma document that is protected by the attorney-client privilege and attorney work product doctrine, Karma demands that (a) you immediately identify and then destroy all copies of this document that are in the possession of any of the defendants, any other LMC employees, and Baker Hostetler and any of your vendors, (b) Defendants refrain from using or referencing this document or any of the information contained within it for any purpose including in any filing with the court, and (c) Defendants stipulate to having the court reporter strike from Elley's depo transcript any reference to or questions about this document and remove it entirely from the transcript and destroy any copies the reporter has of it.

You and your clients are not only legally required to comply with this demand, but it is also your ethical duty to do so under the California code of professional responsibility. This is not a document that Karma inadvertently produced in discovery and is now attempting to claw back. Rather, it is a document that Defendants illegally obtained and came to possess and that you and your clients have no right under the sun to have and continue to possess. **If you do not comply with this demand by no later than end of business this Friday Feb. 26, 2021, we will seek the appropriate relief from the magistrate judge next week.**

Finally, we note that Durre has a contractual obligation to return to Karma all of its property in his possession at the end of his employment. The fact that Durre retained this document to use for his own purposes is, needless to say, consistent with one of the themes of Karma's case against him and the other Defendants, namely that they utilize Karma's intellectual property to advance their own interests.

If it helps in your deliberation on this issue, I am happy to get on a phone or video call with you today (Wed.) or tomorrow (Thurs) to discuss.

Best regards,



**Usama Kahf**
Partner

Fisher & Phillips LLP
2050 Main Street | Suite 1000 | Irvine, CA 92614
ukahf@fisherphillips.com | O: (949) 798-2118

vCard
[fisherphillips.com] | Bio
[fisherphillips.com] | Website
[fisherphillips.com]

*On the Front Lines of Workplace Law℠*

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

EXHIBIT 3
2

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 4

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



fisherphillips.com

**Irvine**
2050 Main Street
Suite 1000
Irvine, CA 92614

(949) 851-2424 Tel
(949) 851-0152 Fax

**Writer's Direct Dial:**
(949) 798-2118

**Writer's E-mail:**
ukahf@fisherphillips.com

March 2, 2021

***Via E-Mail Only***

Terry A. Brennan, Esq.
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH  44114
tbrennan@bakerlaw.com
tlucchesi@bakerlaw.com
aponikvar@bakerlaw.com

   Re: *Karma Automotive LLC v. Lordstown Motors Corporation, et al.*
     *Meet and Confer Request Pursuant to Cal. Cen. Dist. Local Rule 37-1*

Dear Mr. Brennan:

   Pursuant to California Central District Local Rule 37-1, this letter is a request to meet and confer prior to Plaintiff's filing a motion relating to discovery under Federal Rule of Civil Procedure 26, via telephone (or videoconference), within ten (10) days of today's date. If you fail to respond or cooperate as required by Local Rule 37-1, Plaintiff will proceed with a Motion to Compel Return of Documents and to Strike Deposition Testimony pursuant to Federal Rule of Civil Procedure 26.

   As discussed in my email to you on Wednesday, February 24, at the deposition of Mikael Elley on February 18, Defendants introduced as Exhibit #133 a document that Defendants had produced at Bates No. LMC00178057, which is a screenshot of a highly privileged document belonging to Karma Automotive LLC ("Karma") that was and remains in Defendant Joe Durre's possession. At the deposition, I raised the objection on the record that this is a privileged document that appears to have been improperly obtained. You stated that the document was shared on the screen during a meeting and someone took a screenshot of the document that appeared on the screen and shared it with Mr. Durre and others at Karma.

   At the close of business on Friday, February 26, you responded to my email and declined to return the document, claiming that the document is not privileged "on its face." Your email is incorrect in several aspects. The document is indeed privileged and given that any disclosure of the document was inadvertent, no privilege was waived pursuant to Federal Rule of Evidence 502(b).

**Fisher & Phillips LLP**

Atlanta • Baltimore • Bethesda • Boston • Charlotte • Chicago • Cleveland • Columbia • Columbus • Dallas • Denver • Detroit • Fort Lauderdale • Gulfport •
Houston • Irvine • Kansas City • Las Vegas • Los Angeles • Louisville • Memphis • New Jersey • New Orleans • New York • Orlando • Philadelphia
Phoenix • Pittsburgh • Portland • Sacramento • San Diego • San Francisco • Seattle • Tampa • Washington, DC • Woodland Hills

FP 39931122.2

                 EXHIBIT 4
                    1

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Terry A. Sherman, Esq.
March 2, 2021
Page 2

Your email first claims that, because the document does not contain any legal advice by counsel, it is not a privileged document. This argument conveniently ignores that LMC00178057 is one page out of a larger, multi-page ██████ analysis document that was created by ██████ ████ (Karma's outside counsel) and a consulting firm engaged to assist counsel on this analysis. All material contained in the document was prepared directly by or in consultation with Karma's counsel to assist Karma in analyzing its legal options – nothing could more clearly be a privileged communication.

Next, your email claims in several instances that the document was "widely disseminated" at Karma, but you have provided no evidence of this statement. Although you told me previously that this document was shared during a meeting and "someone" took a screenshot of the document and shared it at Karma, you have not provided any evidence that this event actually occurred, let alone that such disclosure (if that event *did* occur) was an intentional disclosure of this document. You have also not identified who took this screenshot, who gave it to Mr. Durre, and to whom it was also provided besides Durre. The identity of who took this screenshot and to whom it was disclosed is not information within Karma's possession, custody or control, as no one was authorized to disclose this document.

Contrary to your assertions, the document was strictly limited in access to John Wilson (Karma's General Counsel at the time), Ron Ashpes (Karma's Chief Financial Officer at the time), Ron Samaco (Karma's Controller), and Leo Lin (Karma's VP for Global Finance at the time, now CFO). John Zavoli (Wilson's successor as GC) was also provided access to this document later when he joined Karma. As I explained in my previous email to you, this document was never intentionally or knowingly disclosed to Mr. Durre or others outside of a very small circle of top executives and legal counsel at Karma. This document was unlawfully and without authorization obtained and acquired by whomever took the screenshot and then unlawfully and without authorization shared by that person with Mr. Durre and others. Moreover, despite your assertion to the contrary, the document was at all times was labeled as "**Attorney-Client Privileged; Attorney Work Product**" at the top of each and every page of the document. No version of this document *without* this conspicuous labeling was ever in existence at Karma, which begs the question of whether your firm or your client redacted the privilege label at the top of the page before producing the document in an effort to pretend like you or your client did not know that it was privileged.



You also seem to conflate ████████████████████████████████ You are free to explore all avenues of your clients' theory ████████████ your ability to do so is not in dispute, and we have never taken a position that this topic as a whole is "privileged" or off-limits. However, the contents of the document itself, and any testimony disclosing privileged communications surrounding the document, is privileged ████████ ████████████████████████████████████

The fact that Mr. Durre and/or other Karma employees believed that ████████████ ████ did not give Mr. Durre free license to collect and disseminate privileged information about ████████   It also did not give Mr. Durre, in his role as a manager at Karma and while employed by Karma, free license to help LMC identify and recruit any other Karma employees and especially the infotainment team that he was leading. This follows an unfortunate pattern with regard to Mr. Durre in that he acted as if the rules did not apply to him once he believed █ ████████████████████████████ Had Karma been aware of the document's unauthorized

EXHIBIT 4
2

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Terry A. Brennan, Esq.
March 2, 2021
Page 3

acquisition and/or dissemination at the time – by Mr. Durre or any other employee – this would have been constituted grounds for discipline or termination.

Lastly, you appear to argue that, even if the document was privileged, such privilege has been waived. However, this argument fails given the circumstances surrounding the document's disclosure bring it under the purview of Federal Rule of Evidence 502(b), which states that an inadvertent disclosure of protected communications or information in connection with a federal proceeding does not constitute a waiver if the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error. *See also In re Grand Jury Proceedings,* 219 F.3d 175, 185-186 (2nd Cir. 2000) (court must carefully weigh the circumstances surrounding disclosure in deciding whether a corporation's privilege has been waived).

The document squarely meets all three elements under FRE 502(b). The disclosure was clearly inadvertent. Indeed, it was not produced by Karma in this discovery, nor was it provided to Mr. Durre or any other Defendant in this litigation. Rather, as discussed above, it appears to have been surreptitiously gathered vis-à-vis a screenshot without any authorization by Karma. Thus, Defendants' possession of this document is not through any purposeful disclosure by Karma.

Second, reasonable steps were taken to prevent the disclosure. Access to the document was restricted to a very small group of high-level Karma executives. The document itself is merely one page of a larger document that contained a label clearly identifying the material as "Attorney-Client Privileged; Attorney Work Product". As the document itself appears to be a screenshot, it was taken covertly, by means that Karma could not detect, and with the intention to hide from Karma that it had been taken at all. Accordingly, Karma took reasonable steps to prevent the document's disclosure.

Lastly, Karma has taken reasonable steps to seek the document's return. The time period of reasonableness is measured from the period of the discovery of the disclosure, not the disclosure itself. *See Heriot v. Byrne,* 257 F.R.D. 645, 660-62 (N.D. Ill. 2009) (how the party discovers and rectifies the disclosure is "more important than when after the inadvertent disclosure the discovery occurs"). Here, the disclosure of the document was made during deposition, once the document was reviewed by Mr. Elley and Mr. Elley confirmed via his testimony that the document was indeed a privileged communication. Although the document had been produced in discovery on December 4, 2020, the document had not previously been escalated to my attention or to the attention of my client until you introduced it at Mr. Elley's deposition. Given that over 180,000 documents have been produced in under three months, the document was altered to remove any reference to attorney-client privilege, and the document is one page buried in Defendant's production among thousands of engineering architecture documents, it is reasonable that Karma would not have completed its review of the entirety of LMC's production and flagged this document as privileged prior to the deposition.

On the record at deposition, I objected within approximately thirty minutes of the disclosure on the grounds of privilege. This constitutes a timely objection sufficient to protect the objection from any attack on the grounds of waiver. *See Datel Holdings, Ltd. v. Microsoft Corp.*, 2011 WL 866993, Case No. C-09-05535 EDL, at *5 (N.D. Cal. Mar. 11, 2011) (finding no waiver where defending counsel failed to immediately object to the use of a privileged document and eliciting related testimony, but a few hours later while the deposition was still going, put the privilege assertion on the record); *accord Multiquip, Inc. v. Water Mgmt. Sys. LLC* 2009 WL 4261215 (D.

EXHIBIT 4
3

Terry A. Brennan, Esq.
March 2, 2021
Page 4

Idaho Nov. 23, 2009) *cited favorably by Orthopaedic Hospital v. DJO Global, Inc.*, 2020 WL 5363307, Case No. 3:19-cv-00970-JLS-AHG (Sept. 8, 2020. S.D. Cal.) (where objection raised within one hour of privileged document introduction, there was no waiver). Accordingly, even if the objection was asserted only after you had indicated you wanted to turn to another exhibit, the objection was still timely and not waived.

In addition to timely asserting a privilege objection, Karma has promptly made a request for the demand of the return and destruction of the document vis-à-vis my email dated February 24. By this very letter, Karma continues to take reasonable steps to seek the document's return by promptly seeking a meet and confer prior to a discovery motion, as required by Local Rule 37-1. *See Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1040-41 (N.D. Ill. 2009) (party seeking return of privileged document after its use at deposition took reasonable steps to seek the document's return by initiating the meet and confer process and subsequently filing a Motion to Compel Return of Documents and to Strike Deposition testimony five weeks later). Consequently, Karma meets all requirements under FRE 503(b) for inadvertent disclosure and thus the privilege protection has not been waived.

For these reasons, Karma demands that (a) you immediately identify and then destroy all copies of LMC00178057 that are in the possession of any of the defendants, any other employees of Lordstown  Motors Corp. ("LMC"), and Defendants' counsel, Baker Hostetler LLP, and any of your vendors, (b) Defendants refrain from using or referencing LMC00178057 or any of the information contained within it for any purpose including in any filing with the court, and (c) Defendants stipulate to having the court reporter strike from Mr. Elley's depo transcript any reference to or questions about this document and remove it entirely from the transcript and destroy any copies the reporter has of the document.

You and your clients are not only legally required to comply with this demand, but it is also your ethical duty to do so under the California code of professional responsibility. This is not a document that Karma inadvertently produced in discovery and is now attempting to claw back. Rather, it is a document that Defendants illegally obtained and came to possess and that you and your clients have no right under the sun to have and continue to possess. Indeed, your failure to disclose this document as soon as you received it, and your use of this document, can subject you to sanctions or disqualification under the prevailing Ninth Circuit authority. *Gomez v. Vernon*, 255 F.3d 1118, 1132 (9th Cir. 2001).

Please provide your availability for a discussion via videoconference within 10 days of today's date as required by Local Rule 37-1. Pursuant to Mag. Judge MacCormick's standing rules, we are amenable to an informal telephonic conference with Mag. Judge McCormick prior to the filing of a formal motion.

I look forward to discussing this matter with you via videoconference within 10 days as required by Local Rule 37-1.

Sincerely,

USAMA KAHF
For FISHER & PHILLIPS LLP

FP 39931122.2

EXHIBIT 4
4