THOMAS R. LUCCHESI (*Pro Hac Vice*)
tlucchesi@bakerlaw.com
TERRY M. BRENNAN (*Pro Hac Vice*)
tbrennan@bakerlaw.com
ANTHONY B. PONIKVAR (*Pro Hac Vice*)
aponikvar@bakerlaw.com
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone:   (216) 621-0200
Facsimile:    (216) 696-0740

WILLIAM W. OXLEY (SBN 136793)
woxley@bakerlaw.com
RYAN D. FISCHBACH (SBN 204406)
rfischbach@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Ste. 1400
Los Angeles, CA 90025
Telephone:   (310) 820-8800
Facsimile:    (310) 820-8859

*Attorneys for Defendants*
LORDSTOWN MOTORS CORP., *et al.*

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARMA AUTOMOTIVE LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>LORDSTOWN MOTORS CORP., an Ohio Corporation; STEVE BURNS, an individual, JOHN LEFLEUR, an individual, DARREN POST, an individual, RICH SCHMIDT, an individual, ROGER J. DURRE, an individual, HONG XIN HUAN (A.K.A. "GEORGE" HUAN), an individual, BEI QIN, an individual, STEPHEN PUNAK, an individual, CHRISTOPHER KIM, an individual, DAN ZHIHONG HUANG, an individual; PUNAK ENGINEERING, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 8:20-cv-02104-JVS-DFM<br><br>**DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUESTS FOR PRODUCTION NOS. 39-44 AND THE PRODUCTION OF DEVICE IMAGES**<br><br>Date:    Sept. 14, 2021<br>Time:   11:00 a.m.<br>Judge:  Hon. Douglas F. McCormick<br>Ctrm:   6B<br><br>Action Filed:   October 30, 2020<br>Trial Date:      April 12, 2022 |

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on September 14, 2021, at 11:00 a.m., before the Honorable Douglas F. McCormick, Defendants Lordstown Motor Corp., Steve Burns, John LaFleur, Darren Post, Rich Schmidt, Roger J. Durre, Hong Xin Huan, Bei Qin, Stephen Punak, Christopher Kim, Dan Zhihong Huang, and Punak Engineering, Inc., (collectively, "Defendants") will move under Federal Rules of Civil Procedure 26 and 34 for an order compelling Plaintiff Karma Automotive LLC ("Karma") to respond to Defendants' Requests for Production Nos. 39-44 by producing images of all devices used for Karma-related business by Roger J. Durre, Hong Xin "George" Huan, Bei "Brian" Qin, Stephen Punak, Christopher Kim, and Darren Post. As explained in the accompanying memorandum, good cause exists to grant Defendants' motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place via telephone on August 3, 2021. Moreover, this motion is made in accordance with Judge McCormick's order following the parties' September 2, 2021 telephone status conference with the Court.

WHEREFORE, Defendants respectfully request that the Court enter an order compelling Karma to respond to Defendants' Requests for Production Nos. 39-44 by producing images of all devices used for Karma-related business by Roger J. Durre, Hong Xin "George" Huan, Bei "Brian" Qin, Stephen Punak, Christopher Kim, and Darren Post, and for such other and further relief as the Court deems just.

Dated: September 7, 2021

Respectfully Submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Thomas R. Lucchesi*
Thomas R. Lucchesi *(Pro Hac Vice)*
*Attorneys for Defendants*
LORDSTOWN MOTORS CORP., *et al.*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Karma refuses to produce forensic images of the Karma-issued computers used by six of the individual Defendants, even though Karma's Amended Complaint and recent motions overflow with allegations premised on Defendants' use of those computers, and Karma's own forensic experts have submitted declarations relying on data apparently obtained from inspecting them. Indeed, just a few months ago, Karma argued to this Court that obtaining forensic images of the same Defendants' LMC and personal devices was vital to this case, noting that courts across the country have granted forensic imaging requests in similar cases. As a result, the parties entered into an agreed forensic protocol whereby LMC is in the process of producing forensic images of dozens of devices.

Nevertheless, Karma continues to object to Defendants' requests for corresponding images of the individual Defendants' Karma computers, arguing that the requests are overly broad, vague, and beyond the scope of appropriate discovery in this case. Nothing could be further from the truth.

As fully explained below, there is no question that the forensic images at issue contain relevant information. In addition to allowing the Defendants to cross-examine Karma's experts on their own use of the forensic data from the devices at issue, those devices contain a plethora of information relevant to Karma's claims—for example, Karma alleges that various individuals did not complete any work for Karma during certain portions of their employment at Karma; that individuals acted as "double agents," performing work for LMC's benefit while still employed at Karma; and that certain individuals deleted information from Karma's network. Without the requested forensic images, Defendants cannot fully test these claims.

Furthermore, contrary to Karma's objections, Defendants' requests are limited in scope and proportional to the needs of the case (which Karma itself claims is a multi-billion-dollar dispute). Compared to the dozens of forensic images

1

DEFENDANTS' MOTION TO COMPEL
CASE NO.: 8:20-CV-02104-JVS-DFM

Defendants have produced, Defendants are simply asking that Karma produce six forensic images of known devices in Karma's possession according to the same stipulated forensic imaging protocol that Karma drafted and that this Court entered months ago.

Simply put, Karma's objections to Defendants' requests for forensic images of Defendants' Karma-issued devices are meritless, especially when viewed in the context of Karma's Amended Complaint, its recent motions, and its own discovery arguments. The Court should grant the motion to compel.

## II. BACKGROUND

Over four months ago, on April 30, 2021, Defendants served Karma with document requests asking for "an image or copy of all DEVICES" used by six individual defendants— Roger J. "Joe" Durre, Hong Xin "George" Huan, Bei "Brian" Qin, Stephen Punak, Christopher Kim, and Darren Post—that had been used for "Karma-related business activities." (*See* Defs.' Third Set of RFPs, Request Nos. 39-44, attached hereto as **Exhibit A**.)

On June 1, 2021, Karma responded to Defendants' requests with boilerplate objections and an outright refusal to "produce [any] information . . . at this time." (*See* Karma's Response to Defs.' Third Set of RFPs, Requests Nos. 39-44, attached hereto as **Exhibit B**.) Karma complained that Defendants' requests were overly broad in that they sought "all" devices; were vague and ambiguous as to the phrase "Karma-related business activities"; and were beyond the scope of permissible discovery in this case. (*Id.*)

In the meantime, at Karma's insistence, the parties stipulated to a forensic imaging protocol so that Karma could obtain forensic images of all of the individual Defendants' LMC and personal devices. (*See* Order Entering Stipulated Forensic Inspection Protocol, Dkt. 123.) Indeed, while pursuing its own requests for forensic images, Karma argued to the Court that "[i]n cases involving trade secrets and electronic evidence, forensic inspection and copying of devices are especially

justified and are routinely permitted." (*See* Letter from J. Colman to Hon. D. McCormick, dated June 16, 2021, attached hereto as **Exhibit C**.)

Following the entry of the stipulated forensic protocol, the parties met and conferred to discuss Karma's refusal to respond to Defendants' requests. Counsel for Defendants explained that Defendants' requests merely sought forensic images of six Karma-issued computers, which could be imaged pursuant to the parties' agreed forensic inspection protocol Agreement. (*See* August 3, 2021 Discovery Letter, attached hereto as **Exhibit D**; *see also* Order Entering Stipulated Forensic Inspection Protocol (Dkt. 123).) Despite this clarification, Karma reupped its outright refusal to produce any images.

Since then, in accordance with the parties' stipulation, Defendants have submitted over sixty (60) LMC and personal devices and accounts for forensic inspection. In addition, Karma has amplified the necessity of forensic images of Defendants' Karma-issued devices by citing to evidence from those devices in its recent sanctions motion (*see* Dkt. 133). This latest reliance on evidence from Karma-issued devices is in addition to the laundry list of allegations in Karma's Amended Complaint that implicate data from those devices. (*See, e.g.*, First Am. Compl. ¶¶ 6, 7, 16, 90-96, 100, 101, 230, 240, 243, 253, 260, 275, 285, 317 (Dkt. 72).)

Nevertheless, Karma continues to rebuff Defendants' requests for forensic images of the individual Defendants' Karma computers. Defendants are therefore left with no other option but to seek this Court's intervention or risk litigating this case on an uneven playing field.

### III. <u>ARGUMENT</u>

Parties are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Part of that entitlement is the ability "to inspect [or] copy .

. . electronically stored information," including "data compilations—stored in any medium." Fed. R. Civ. P. 34(a)(1)(A).

One such data compilation that parties may obtain is the forensic or mirror imaging of electronic devices. This is especially true in cases, like this one, where a party alleges device misuse and then uses that misuse as a basis for several claims, including, trade secret misappropriation, unfair competition, breaches of fiduciary duty and loyalty, and tortious interference. *See* **Exhibit D** (Karma stating, "In cases involving trade secrets and electronic evidence, forensic inspection and copying of devices are especially justified and are routinely permitted." (citing *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012); *Balboa Threadworks, Inc. v. Stucky*, No. 05–11157–JTM–DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006)).) *See also Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *2 (E.D. Mo. Dec. 27, 2006), *as amended on clarification*, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) ("Courts have found that [direct access to a party's electronic information system] is justified in cases involving both trade secrets and electronic evidence, and granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation.").

In such cases, the close relationship between plaintiffs' claims, defendants' defenses, and the parties' electronic devices necessitates the production of forensic images. *See Ameriwood Indus., Inc.*, 2006 WL 3825291, at *1 (granting request "to obtain and search a mirror image" of "computer equipment" due to the "the close relationship between plaintiff's claims and defendants' computer equipment.").

A. **Forensic images of Defendants' Karma-issued devices are relevant to this action.**

Here, the requested images of Defendants' Karma-issued devices are relevant, and indeed critical, to several of Karma's claims and Defendants' defenses.

4

*First*, the images will provide information relevant to Karma's allegation that, in an attempt to sabotage Karma, various individuals did not complete any work for Karma during portions of their employment at Karma. (*See, e.g.*, First Am. Compl. ¶¶ 240, 243, 253, 260, 275, 285 (asserting claims based on Defendants' "actions" "while they were still employed by Karma," including Defendants' alleged "sabotaging and undermining [of] the Endurance Project").

Defendants need images of their Karma-issued devices to defend against these allegations. For instance, the images will show that each Defendant, in fact, continued to fulfill their duties to Karma throughout their employment. The images will reflect documents being created and edited by individual Defendants, emails being sent and received, meeting and call invitations, notes from those meetings and calls, and access logs depicting each Defendant's use of Karma's network and cloud-based storage accounts. And even assuming Karma's allegations about "sabotage" are true (which they are not), Karma would still need to produce the requested forensic images to show the absence of any work done by Defendants.

*Second*, the images will contain information relevant to Karma's claim that, to the extent Defendants did work at Karma, it was not for Karma's benefit but for the benefit of LMC. In its Amended Complaint, Karma claims that Defendants were "double agents," working on LMC's Endurance infotainment system while employed at Karma. (*See, e.g.,* First Am. Compl. ¶ 230 ("LMC and the LMC Individual Defendants' misconduct was independently tortious and unlawful because it involved the conspiracy to recruit and hire Karma's infotainment team and have them work as double agents for Karma and LMC at the same time[.]"); *id.* ¶ 310 ("Durre and Post schemed and conspired with LMC and the LMC Individual Defendants to facilitate the Former Employee Defendants working to further LMC's interests while still employed by Karma."); *id.* ¶ 317 (asserting RICO conspiracy claim based on allegation that "LMC and the LMC Individual Defendants conspired with each other [to] . . . quit working at Karma and go to

work for LMC . . . [and to] use Karma's computer systems beyond their level of authorization prior to departure from Karma for a non-work related purpose[.]"). Again, images of Defendants' devices will include information to rebut these allegations, showing what work was and was not done by each Defendant while employed at Karma.

This "double agent" claim goes to the very heart of Karma's case, making access to the requested images essential for Defendants to rebut Karma's claims. Karma alleges, among other things, that Defendants misappropriated trade secrets, breached contracts, and were unjustly enriched because they allegedly used or created information stored on their Karma devices to develop the Endurance for LMC. The only way Defendants can adequately test those claims is to analyze data and activity on Defendants' Karma-issued devices.

*Third*, information stored on Defendants' Karma-issued devices is relevant to recent claims Karma made in its motion for preliminary injunction (Dkt. 129). Karma asserts that it provided great value to LMC during the parties' letter of intent ("LOI") process for the "Endurance Project" and that LMC is wrongfully benefiting from that work. (*See id.* at 10, 13 (alleging that LMC continues to use "Karma's proposed improvements" to the Endurance, as well as "designs" and "cost breakdowns" that "Karma was developing for the Endurance Project").) Access to Defendants' Karma-issued devices will allow Defendants to demonstrate that those purported "improvements" were not proprietary information developed by Karma specifically for LMC, but rather were well-known, industry-standard technologies used across the infotainment spectrum.

*Fourth*, Karma's recent sanctions motion repeatedly relies on its *own forensic investigation of Defendants' Karma-issued computers* to substantiate its trade secret claims and spoliation allegations, making clear once and for all that forensic images of those devices are essential to Defendants' ability to defend this case. (*See* Dkt. 133 at 12 (describing Karma's "substantial forensic investigation");

*see also* Kunkel Decl. ¶ 9 (Dkt. 133-3) ("Setec Investigations' analysis of the devices used by the former employees uncovered a wealth of information."); Elley Decl. (Dkt. 133-4) ¶ 2 (describing "Karma's investigation and forensics examination of Durre's work computer"); Hernandez Decl. (Dkt. 133-5) ¶ 13 ("Karma provided Huan's Karma laptop to Setec Investigations for Setec's forensic review.").

Given that Karma itself had to conduct a forensic investigation of Defendants' Karma-issued devices to support its claims, there can be no dispute that relevant information exists on the devices. Karma cannot be permitted to conduct its own forensic review of those devices, rely on the resulting evidence, and then refuse to give Defendants the same opportunity.

**B.     Nothing is burdensome or disproportional about Defendants' requests for forensic images.**

Contrary to Karma's objections, nothing is overly burdensome or disproportional about Defendants' requests for images of Karma-issued devices.

Defendants' requests are limited to six Karma-issued computers—each one issued to and used by one of the individual Defendants Karma is suing in this case. Producing six images is no burden, especially when compared to Defendants' ongoing production of over sixty (60) forensic images from Defendants' LMC-issued and personal devices and accounts. Moreover, Defendants have proposed following the same stipulated forensic protocol (Dkt. 123) that Karma drafted, and that the parties agreed to months ago for the production of Defendants' forensic images in this case. By entering that protocol, the parties have already carried all burdens associated with locating an agreeable forensic investigator and hashing out an imaging protocol and schedule. Plus, Karma is a sophisticated company supported by sophisticated counsel. It has the resources to handle Defendants' requests, as shown by the fact that it has already conducted forensic investigations of Durre's and Huan's devices.

Producing six images is also proportional to the needs of this case. Indeed, at almost every informal discovery conference, Karma's counsel has asserted that broad discovery is necessary to this action due to Karma's own broad allegations. Karma asserts twenty-eight (28) separate counts against Defendants, ranging from trade secret misappropriation, to contractual and quasi-contractual claims, to fraud, to violations of California's criminal code. (*See* First Am. Compl.) And as Karma has been quick to point out in prior discovery disputes, it is seeking not only broad injunctive relief, but also "hundreds of millions and *perhaps billions of dollars*" in damages. (First Am. Compl. ¶ 14 (emphasis added).) There is simply no credible argument that following the existing forensic imaging protocol for six Karma devices is disproportionate to the needs of the case as Karma has pled it.

Lastly, any argument by Karma that forensic imaging is too intrusive is nonsense. Unlike the imaging being conducted of Defendants' devices, all of the computers at issue here were used by employees who no longer work at Karma—thus, nothing in the protocol will disrupt Karma's day-to-day operations in any way. Moreover, the parties' stipulated forensic imaging protocol includes adequate protections for protecting privileged information and confidentiality, mandating that all forensic images "shall be initially designated Attorneys' Eyes Only, subject to the Parties' rights later to challenge designation(s) under the protective order (the "Protective Order") in place in the Litigation." (Dkt. 123.) There is therefore no risk that sensitive business information will be disclosed outside the agreed confines of this litigation.

And, even if these protections were not set in stone, the only devices subject to Defendants' requests are devices that were issued to the individual Defendants by Karma, which should just contain the individual Defendants' work history. So, any disclosure risks are, in reality, fictious because each Defendant has already seen or had access to the information stored on his Karma-issued device.

## IV. CONCLUSION

For the foregoing reasons, Defendants request that the Court grant its motion and enter an order compelling Karma to respond to Defendants' Request for Production Nos. 39-44 by producing images of all devices used for Karma-related business by Roger J. Durre, Hong Xin "George" Huan, Bei "Brian" Qin, Stephen Punak, Christopher Kim, and Darren Post.

Dated: September 7, 2021

Respectfully Submitted,

**BAKER & HOSTETLER LLP**

By: /s/ Thomas R. Lucchesi
Thomas R. Lucchesi *(Pro Hac Vice)*
*Attorneys for Defendants*
LORDSTOWN MOTORS CORP., *et al.*