ROBERT B. MILLIGAN, SBN 217348
rmilligan@seyfarth.com
DANIEL JOSHUA SALINAS, SBN 282065
jsalinas@seyfarth.com
SIERRA J. CHINN-LIU, SBN 322994
schinnliu@seyfarth.com
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067
Telephone: (310) 277-7200

MICHAEL D. WEXLER (*admitted pro hac vice*)
mwexler@seyfarth.com
KEVIN J. MAHONEY (*admitted pro hac vice*)
kmahoney@seyfarth.com
KATELYN R. MILLER (*admitted pro hac vice*)
krmiller@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000

JESSE M. COLEMAN (*admitted pro hac vice*)
jmcoleman@seyfarth.com
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300

*Attorneys for Plaintiff*
Karma Automotive LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARMA AUTOMOTIVE LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> LORDSTOWN MOTORS CORP., an Ohio corporation; STEVE BURNS, an individual, JOHN LEFLEUR, an individual, DARREN POST, an individual, RICH SCHMIDT, an individual, ROGER J. DURRE, an individual, HONG XIN HUAN (A.K.A "GEORGE" HUAN), an individual; BEI QIN, an individual; STEPHEN PUNAK, an individual; | Case No. 8:20-cv-02104-JVS-DFM <br><br> **PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS AWARDED PURSUANT TO THE COURT'S FEBRUARY 18, 2022 ORDER** <br><br><br> Date Action Filed:  October 30, 2020 |

1  | CHRISTOPHER KIM, an individual; DAN
2  | ZHIHONG HUANG, an individual;
   | PUNAK ENGINEERING, INC., a
3  | California Corporation; and DOES 1
   | through 50, inclusive,

4  |                    Defendants.

5

## I.    Introduction

6        This Court determined in its February 18, 2022 Order ("Order") (Dkt. 189)

granting in part Plaintiff Karma Automotive LLC's ("Karma") Motion for Terminating

Sanctions Against Defendants Lordstown Motors Corp. ("LMC") and Darren Post

("Post") ("Sanctions Motion") (Dkt. 182), that "Post and Lordstown shall reimburse

Karma for all costs incurred as a result of their failure to comply with this Court's orders,

including the attorneys' fees and costs related to this motion." (Order at 10). The Court

ordered Karma to submit "a fee petition documenting its attorneys' fees and costs within

fourteen days" of the Order. (*Id*.). Accordingly, Karma respectfully requests that the

Court enter an order requiring LMC and Post to reimburse Karma $110,431.34 for its

attorneys' fees and costs incurred as a result of Defendants' sanctionable conduct.

## II.    Background

On February 18, 2022, this Court issued an order granting in part Karma's

Sanctions Motion, finding that Post's "intentional act" of double-deleting "a significant

number of emails from his Gmail account" that "appear to be substantively related to

Karma's claims" was "a clear violation of both the TRO Order and the Forensic

Protocol" and was done with a "culpable state of mind." (Order at 2, 3, 6 and 8). As

stated by the Court, Post's failure to comply with its orders "lacks any justification" and

is "subject to sanctions." (*Id*. at 6-7).

Regarding LMC, the Court ruled that it "should have been aware of Post's use of

his personal [Gmail] account to conduct work business" yet "failed to take steps to ensure

that the account was produced and preserved earlier in the litigation." (*Id*. at 7).  LMC

2

PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES  AND COSTS AWARDED
PURSUANT TO THE COURT'S FEBRUARY 18, 2022 ORDER
CASE NO. 8:20-CV-02104-JVS-DFM

produced hundreds of documents in discovery referencing Post's Gmail account, and was aware that "a personal email address was identified for every individual defendant other than Post." (*Id.* at 7). Yet, LMC failed to "investigate that omission further, either by following up with Post or proactively searching the universe of produced documents to confirm" whether the Gmail account was subject to the Forensic Protocol before Post engaged in his deletion spree. (*Id.*). Thus, "Lordstown is also in violation of the Court's orders" and "subject to sanctions." (*Id.* at 7).

Accordingly, the Court sanctioned both LMC and Post under Federal Rule of Civil Procedure 37 and "order[ed] that Post and Lordstown shall reimburse Karma for all costs incurred as a result of their failure to comply with this Court's orders, including the attorneys' fees and costs related to this motion." (*Id.* at 10). Pursuant to the Court's direction, Karma's counsel at Seyfarth Shaw LLP ("Seyfarth") reviewed all of its time and expense records and identified $110,431.34 in fees and costs incurred in connection with the matters for which the Court ordered reimbursement. *See* Declaration of Jesse Coleman ("Coleman Decl.") ¶¶ 5, 24. The tasks Seyfarth identified as reimbursable are summarized below.

By way of brief background, after Karma alerted Defendants of their failure to identify Post's Gmail account as being subject to the Forensic Protocol and prior to the collection of the account, Post intentionally and deliberately double-deleted thousands of emails from the account in an attempt to destroy information relevant to this lawsuit. Upon learning of Post's deletion spree, Seyfarth investigated the restoration and remediation efforts of information contained in the account. (*Id.* at ¶ 7). Seyfarth exchanged numerous correspondence with Defendants' counsel regarding the deletions and engaged in meet-and-confer conferences. (*Id.*). Seyfarth then undertook a detailed review of the thousands of files deleted by Post, which evidenced Defendants' use and/or disclosure of Karma's trade secrets and confidential information at issue in this lawsuit. (*Id.* ¶ 8). To confirm the full extent of Post's attempted spoliation of evidence, Seyfarth

searched for and analyzed all emails exchanged with Post's Gmail account found on Karma's own network as well. (*Id.* ¶ 9). Additionally, Seyfarth reviewed and analyzed documents produced by LMC in this litigation for references to Post's Gmail account in order to gather additional evidence of LMC's failure to preserve the account and comply with this Court's orders. (*Id.*). Seyfarth then issued written discovery to investigate the full extent of Defendants' failure to identify and preserve relevant devices, Post's deletion spree, and restoration and remediation efforts undertaken by Defendants and their forensic vendors. (*Id.* ¶ 10). Seyfarth also prepared for and took the deposition of Post regarding his failure to identify his Gmail account pursuant to court order and intentional and deliberate deletion of relevant evidence in violation of court order. (*Id.* ¶ 11). Post's admissions under oath were necessary evidence to support Karma's Sanctions Motion. (*Id.*). Additionally, through Post's deposition and additional review of documents, Seyfarth investigated Post's failure to preserve his iPad in violation of the Forensic Protocol and Post's contradictions regarding when his iPad allegedly became inoperable. (*Id.* ¶ 12). Finally, Seyfarth briefed Karma's Sanctions Motion, which included preparing and filing the Motion (Dkt. 182), Memorandum in Support (Dkt. 182-1), Application for Leave to File Certain Exhibits in Support of its Motion Under Seal (Dkt. 180), Reply in Support (Dkt. 187), and all declarations and exhibits thereto, and reviewing and evaluating Defendants' Memorandum of Points and Authorities in Opposition to Karma's Motion for Terminating Sanctions, including all declarations and exhibits thereto (Dkt. 184). (*Id.* ¶ 13).

As set forth above and in the accompanying declaration, Karma seeks recovery of $110,431.34, including $108,337.54 in fees and $2,093.80 in costs, incurred in connection with LMC and Post's failure to comply with this Court's orders and Karma's Sanctions Motion.

4

PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES  AND COSTS AWARDED
PURSUANT TO THE COURT'S FEBRUARY 18, 2022 ORDER
CASE NO. 8:20-CV-02104-JVS-DFM

## III.   ARGUMENT

The "customary method of determining fees" in the Ninth Circuit is the lodestar method of calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *see also Acosta v. Sw. Fuel Mgmt., Inc.*, No. 16-4547, 2017 WL 8941164, at *1 (C.D. Cal. Aug. 11, 2017) ("The lodestar method is utilized by courts to calculate the award of reasonable attorney fees under Rule 37."). The lodestar figure represents "the number of hours the prevailing party reasonably expended on the litigation [multiplied] by a reasonable hourly rate." *Morales*, 96 F.3d at 363. In defining the lodestar method, the Supreme Court explained:

> The . . . starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Reasonable hourly rate" means the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks omitted). When determining a reasonable hourly rate under the lodestar method, "the relevant community is the forum in which the district court sits." *Id.*

### 1.   Seyfarth's Rates Are Reasonable.

The rates charged by Seyfarth are reasonable in light of prevailing market rates charged by similar firms, particularly given Seyfarth's widely-recognized quality and expertise. *See Lewis v. Silvertree Mohave Homeowners' Ass'n, Inc.*, No. C 16-03581 WHA, 2017 WL 5495816, at *3 (N.D. Cal. Nov. 16, 2017) ("The reasonableness of an hourly rate should be determined based on the rates prevailing in the community for lawyers of reasonably comparable skill, experience and reputation.") (internal quotations omitted). The reasonableness of Seyfarth's rates is bolstered by "evidence that a billing

5

PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES  AND COSTS AWARDED
PURSUANT TO THE COURT'S FEBRUARY 18, 2022 ORDER
CASE NO. 8:20-CV-02104-JVS-DFM

rate was the usual rate the attorney charges for his or her services." *Perfect 10, Inc. v Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *5 (C.D. Cal. Mar. 24, 2015). This is because "[b]illing rates usually reflect, in at least a general way, counsel's reputation and status." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982).  Further, "it is appropriate for the district court to rely on its own familiarity with the legal market when assessing the reasonableness of hourly rates claimed in fees motions." *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 966 (N.D. Cal. 2014) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Seyfarth is one of the country's top-ranked law firms, with approximately 900 attorneys in 17 offices around the world. (Coleman Decl. ¶ 3). Seyfarth's trade secret practice consistently ranks among the top in the nation and was named as a Tier 1 Firm, for the sixth year in a row, in Legal 500's Trade Secret Rankings for 2021. *See e.g.*, The Legal 500 2021 Rankings, https://www.legal500.com/c/united-states/intellectual-property/trade-secrets-litigation-and-non-contentious-matters/; Coleman  Decl. ¶ 3. The lead attorneys representing Karma in this matter are highly experienced trade secret attorneys, whose reputation and ability are nationally recognized, with each being well-established writers and speakers on such topics. (Coleman Decl. ¶ 2).

Seyfarth's hourly rates for work outlined in this Application range from $615.00 per hour for a mid-level associate to $790.00 per hour for partners. (Coleman Decl. ¶¶ 16-19).[1] Karma has paid all of Seyfarth's invoices issued to date, which "adds weight to the presumption of reasonableness." *Id.* ¶ 22; *Sazerac Co. v. Fetzer Vineyards, Inc.*, Case No. 3:15-cv-04618-WHO, 2017 WL 6059271, at *11 (N.D. Cal. Dec. 7, 2017). Courts in this District have consistently found similar rates to be reasonable in this market. *See, e.g.*, *Oumere, LLC v. Zarpas*, No. 21-224, 2021 WL 4902199, at *2 (C.D. Cal. July 30, 2021) (concluding that "requested rate of $750 per hour [was] reasonable and in line with

---

[1] Karma receives a 5% discount on each bill generated by Seyfarth, which is reflected in Seyfarth's billing records and total amount of fees Karma seeks to recover through this Application. (Coleman Decl. ¶ 22).

recent orders regarding reasonable attorneys' fees in the Central District"); *125916 Ontario Ltd. v. Kagan*, No. 20-2630, 2020 WL 7038605, at *2 (C.D. Cal. Nov. 16, 2020) (finding billing rates of $625 to $825 per hour reasonable in case involving breach-of-contract and civil theft claims); *Strategic Partners, Inc. v. FIGS, Inc.*, No. 19-2286, 2020 WL 3064440, at *4 (C.D. Cal. Apr. 29, 2020) (finding billing rates of $695 per hour and $795 per hour reasonable in unfair competition matter); *Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (finding billing rates of $800 per hour and $650 per hour reasonable in unfair business practices matter); *AECOM Energy & Constr., Inc. v. Ripley*, No. 17-5398, 2018 WL 1010270, at *1 (C.D. Cal. Feb. 16, 2018) (finding billing rates of $892 per hour for partner reasonable); *Perfect 10, Inc.*, 2015 WL 1746484, at *15 (finding billing rates of $825 per hour for senior partner, $750 per hour for junior partner, and $690 per hour for associate reasonable).

Given Seyfarth's expertise and that its rates are well within the range of rates approved in this District, the rates sought by Seyfarth are appropriate.

## 2. The Number of Hours Seyfarth Expended Was Reasonable.

The number of hours expended by Seyfarth was reasonable given the complexity of the litigation, the amount at stake in the dispute, and Defendants' misconduct. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) ("A strong presumption exists that the lodestar figure represents a reasonable fee.") (internal quotations omitted); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (same); *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553 (2010) (explaining that "the novelty and complexity of a case" should be "reflected in the number of billable hours recorded by counsel").

The work performed by Seyfarth, and the fees incurred by Karma, were a direct result of, and entirely driven by, Defendants' sanctionable conduct. Seyfarth's work at issue in this Application occurred over the course of three and half months, during which time Seyfarth learned that—after it alerted Defendants of their failure to identify Post's

Gmail account as being subject to the Forensic Protocol and prior to the collection of the account—Post deleted thousands of files from his Gmail account, and then (1) investigated the restoration and remediation efforts of information contained in the account; (2) undertook a detailed review of the thousands of files deleted by Post; (3) searched for and analyzed all documents referencing Post's Gmail account produced by LMC and found on Karma's own network to gather additional evidence of improper deletion of evidence by Post; (4) drafted correspondence and met and conferred with Defendants' counsel regarding Defendants' misconduct; (5) engaged in written discovery regarding Defendants' failure to comply with Court orders and deletion of relevant evidence; (6) prepared for and took the deposition of Post regarding his failure to comply with Court orders and deletion of relevant evidence; (7) investigated Post's failure to preserve his iPad and contradictions regarding when his iPad allegedly became inoperable; and (8) researched and drafted Karma's Sanctions Motion, including submitting briefs, declarations, and evidence in support of that Motion. (Coleman Decl. ¶¶ 6-13).

By limiting this work to five attorneys on the Karma team—each responsible for separate aspects of Karma's investigation, analysis, discovery, and briefing on these issues—Seyfarth exercised care in not billing excessive, redundant, or otherwise unnecessary hours. *See Hensley*, 461 U.S. at 433; Coleman Decl. ¶¶ 14-15. Rather, the legal fees Karma seeks to recover were reasonable and necessary to undercover, investigate, and bring to the Court's attention LMC and Post's deliberate and willful violation of this Court's orders.

Seyfarth extensively reviewed its invoices and segregated time spent on tasks for which the Court ordered recovery of fees. Through this process, Seyfarth has identified 160.8 hours and $108,337.54 in fees that it believes are squarely attributable to costs and fees "incurred as a result of [LMC and Post's] failure to comply with this Court's orders, including the attorneys' fees and costs related to [the Sanctions Motion]." (Order at 10).

Those fees are supported by detailed billing entries, which were prepared contemporaneously with the work performed, were submitted to Karma on a monthly basis, and were paid in full by Karma. (Coleman Decl. ¶ 20).

Thus, given the complexity of this litigation, the amount at stake, and Defendants' sanctionable conduct, Seyfarth's fees are reasonable.

## IV.    Karma's Costs and Expenses Are Reasonable.

Karma seeks $1,336.80 in court reporting services for the December 22, 2021 deposition transcript of Post. (Coleman Decl. ¶ 23). Post's December 22, 2021 deposition was limited to the issues raised in Karma's Sanctions Motion—namely, his deletion of thousands of files from his Gmail account in direct contravention of this Court's orders. Further, Post's deposition was necessary to support Karma's Sanctions Motion, as Post admitted under oath to intentionally and deliberately deleting information that was relevant to this lawsuit in violation of this Court's orders. Karma also seeks $757.00 in travel expenses associated with Seyfarth's Jesse Coleman traveling to Cleveland, Ohio to depose Post. (*Id.*). The Court ordered recovery of all costs related to Defendants' misconduct as a sanction under Federal Rule 37, which necessarily includes costs associated with Post's December 22, 2021 deposition. (Order at 10).

## V.    Conclusion

Pursuant to the Court's February 18, 2022 Order (Dkt. 189), Karma respectfully requests that the Court award $110,431.34 in attorneys' fees and costs incurred in connection LMC and Post's failure to comply with Court orders and related to Karma's Motion for Terminating Sanctions (Dkt. 182).

DATED: March 4, 2022                    Respectfully submitted,
                                        SEYFARTH SHAW LLP

                                        By: */s/ Jesse M. Coleman*
                                        Attorneys for Plaintiff
                                        Karma Automotive LLC

9