UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)                     Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

Present: The Honorable     **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **[IN CHAMBERS] Order Regarding Motion for Summary Judgment [272]**

Defendants Lordstown Motors Corporation ("Lordstown"), Steven Burns ("Burns"), John LaFleur ("LaFleur"), Darren Post ("Post"), Rich Schmidt ("Schmidt"), Roger J. Durre ("Durre"), Hong Xin Huan ("Huan"), Bei Qin ("Qin"), Stephen Punak ("Punak"), Christopher Kim ("Kim"), Dan Zhihong Huang ("Huang"), Punak Engineering Inc. ("Punak Engineering"), and Does 1 through 50 ("Does") (collectively, "Defendants"), move for summary judgment on all claims brought by Plaintiff, Karma Automotive LLC ("Karma"). Mot., Dkt. No. 272. Karma opposes. Opp'n, Dkt. No. 286. Defendants replied. Reply, Dkt. No. 305.

For the following reasons, the Court **GRANTS in part and DENIES in part** the motion for summary judgment.

The Court **GRANTS** Defendants' motion for summary judgment on Counts XIV, XVI, XVIII, XXIII, XIX, XX, XXI, XXIV, and XXVI.

The Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment on Counts I, II, V, VI, VII, VIII, IX, X, XI, XII, and XVII.

The Court **DENIES** Defendants' motion for summary judgment on Counts III, IV, XIII, XV, XXII, XXV, XXVII, XXVIII, and Damages.

## I. BACKGROUND

The following undisputed facts are from Karma's Statement of Genuine Disputes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title     Karma Automotive LLC v. Lordstown Motors Corp. et al.

of Material Fact ("SGD") and Karma's Additional Statement of Material Facts ("ASOF") and Defendant's responses to the ASOF.  SGD, Dkt. No. 287-2; ASOF, Dkt. No. 287-2.

Karma is a developer and manufacturer of vehicles and automobile technology. SGD ¶ 1.  Karma and Lordstown both occupy space in the automotive technology industry.  ASOF ¶ 3.  Karma, among other things, researches and develops automotive technology including infotainment systems, connectivity, and powertrain control.  Id. Lordstown is developing a pickup truck, called the Endurance.  SGD ¶ 35.

Durre, Huan, Qin, Huang, Kim, Punak (including Punak Engineering) are former Karma employees (collectively, "Former Employee Defendants").  See ASOF ¶¶ 41, 46. Each signed a confidentiality agreement.  Id. ¶¶ 4–10.  Burns, LaFleur, Post, and Schmidt are current or former Lordstown employees (collectively, "Lordstown Employee Defendants").  See SGD ¶¶ 48, 54, 62, 68.  Post is also a former Karma employee but for the purposes of this Order, and for consistency with the parties' motions, is considered as part of the Lordstown Employee Defendants.  See id. ¶ 67.

Karma and Lordstown signed a Letter of Intent on June 11, 2020.  SGD ¶ 214–15. The purpose of the arrangement was to "develop and improve the Infotainment Systems for the LMC Endurance (and other models)."  Defendants Statement of Uncontroverted Facts ("SOF"), Dkt. No. 278, Ex. 1, ¶ 5.  Subsequently, Karma and Lordstown entered into a due diligence process to exchange information.  ASOF ¶ 115.  As part of the due diligence process, the parties entered into a Mutual Non-Disclosure Agreement on or around February 24, 2020.  Id.  Lordstown terminated the Letter of Intent on or around August 6, 2020.  Id. ¶ 286.  At or around the same time, or eventually, Durre, Huan, Punak, Kim, Qin, and Huang each began working at Lordstown.  SGD ¶¶ 81, 99, 128, 146, 170, 191, 301.

On October 30, 2020, Karma filed a Complaint.  Dkt. No. 1.  Defendants answered on December 23, 2020.  Dkt. Nos. 39–45.  On April 20, 2021, Karma filed a First Amended Complaint.  FAC, Dkt. No. 72.

Karma alleges Defendants engaged in a scheme to poach Karma employees and steal Karma's confidential and trade secret information.  The First Amended Complaint alleged twenty-eight causes of action.  Id.  The claims include: Violation of the Computer Fraud & Abuse Act (I, II); Misappropriation of Trade Secrets in Violation of the Defend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)        Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

Trade Secrets Act and California Uniform Trade Secrets Act (III, IV); Violation of Confidentiality Agreements by the Former Employee Defendants (V–XII); Breach of the Mutual Non-Disclosure Agreement (XIII); Breach of the Letter of Intent (XIV); Tortious Interference with Contract and Prospective Economic Advantage (XV, XVI); Unfair Competition (XVII); Breach of Duty of Loyalty and Fiduciary Duty (XVIII, XIX); Aiding & Abetting Breach of Duty of Loyalty and Fiduciary Duty (XX, XXI); Conspiracy (XXII); Fraud (XXIII); RICO and RICO Conspiracy (XXIV, XXV); Violation of the Lanham Act (XXVI); and Violation of California Penal Code § 502 (XXVII, XXVIII). Id. Defendants answered on June 7, 2021. Dkt. Nos. 92–102.

Defendants now move for summary judgment on all of the claims. Mot., Dkt. No. 272.

The Court heard oral argument on November 14, 2022.

## II. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . ." (internal quotation marks omitted)).

Facts that are "material" are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine if a dispute about a material fact is "genuine," the trial court must not weigh the evidence and instead must draw all reasonable inferences in the nonmoving party's favor. Tolan v. Cotton, 572 U.S. 650, 655–59 (2014) (per curiam). The nonmoving party cannot manufacture a "genuine dispute" by relying on allegations in the pleadings. Anderson, 477 U.S. at 251; Oracle Am., Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1049 (9th Cir. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-02104 JVS (DFMx) | Date | November 18, 2022 |
|---|---|---|---|

| Title | Karma Automotive LLC v. Lordstown Motors Corp. et al. |
|---|---|

A trial court may not resolve issues of credibility to determine whether a fact is "genuinely disputed." Id. at 658–59. To do so is to improperly weigh the evidence. Id. A court may discount uncorroborated, self-serving testimony where "it states only conclusions and not facts." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497–98 (9th Cir. 2015). However, a court may not discount "self-serving" testimony that includes contrary factual assertions and requires the observation of a witness's demeanor to assess credibility. See Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Furthermore, an undisputed fact may support several reasonable inferences, but a trial judge must resolve those differing inferences in favor of the nonmoving party. Hunt v. Cromartie, 526 U.S. 541 (1999). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

The moving party has the initial burden of establishing the absence of a material fact for trial. Id. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. To defeat summary judgment, the nonmoving party who bears the burden at trial must present more than a "mere scintilla" of "affirmative evidence." Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007) (citing Anderson, 477 U.S. at 248). Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

When resolving a motion for summary judgment, courts may only consider admissible evidence. Fed. R. Civ. P. 56. On a motion for summary judgment, a party may object that the material used to "dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). A court must rule on material evidentiary objections. Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010).

The Court only considered admissible evidence in resolving Defendants' motion for summary judgment. When the Order cites evidence to which the parties have objected, the objection is impliedly overruled. Additionally, the Court declines to rule on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 20-02104 JVS (DFMx) | Date | November 18, 2022 |

| | |
|---|---|
| Title | Karma Automotive LLC v. Lordstown Motors Corp. et al. |

objections to evidence upon which it did not rely.

### III. DISCUSSION

*A.    Violation of the Computer Fraud and Abuse Act ("CFAA")*

Karma alleges the Former Employee Defendants acted on behalf of Lordstown and Lordstown Employee Defendants and accessed Karma's computers without authorization to download and transfer files containing confidential information and trade secrets, and delete files from Karma's computer systems. FAC, Dkt. No. 72, ¶ 126. Counts I and II of the First Amended Complaint bring causes of actions against all Defendants for violation of the CFAA. Id. ¶¶ 123–37.

1.    Former Employee Defendants

The CFAA, 18 U.S.C. § 1030, et seq., was enacted to enhance the government's ability to prosecute computer crimes and to "target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130 (9th Cir. 2009) (internal quotation marks omitted). Karma's complaint does not invoke a specific section within the CFAA that Defendants violated. But "[t]he CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers *without authorization or in excess of authorization*, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." Id. at 1131 (emphasis added). Defendants argue Karma's claims fail as an initial matter because the alleged access was not "without authorization." Mot., Dkt. No. 272, at 1.

"[A]n employer gives an employee 'authorization' to access a company computer when the employer gives the employee permission to use it." Brekka, 581 F.3d at 1133. Authorization is still present even when an employee uses the computer contrary to the employer's interest. Id. When an employee accesses a computer after they are no longer employed, the access is "without authorization" under the CFAA. Id. at 1136 (noting after an employee "left the company . . . , he would have accessed a protected computer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

'without authorization' for purposes of the CFAA").

Separately, the Ninth Circuit clarified the meaning of "exceeding authorized access" for purposes of the CFAA in United States v. Nosal, 676 F.3d 854 (9th Cir. 2012). In Nosal, the court dismissed a CFAA charge under § 1030(a)(4) where a former employee asked current employees to steal confidential information to help him start a competing business. 676 F.3d at 856, 864. Nosal explained, using an example which proves instructive here: a person who has permission to access customer lists for use in preparing invoices does not "exceed authorized access" by impermissibly giving those lists to a competitor. Id. at 859. Furthermore, the court explained that the CFAA is "a statute whose general purpose is to punish hacking — the circumvention of technological access barriers — not misappropriation of trade secrets — a subject Congress has dealt with elsewhere." Id. at 863. The Supreme Court further clarified this in Van Buren v. United States. 141 S. Ct. 1648 (2021). "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." Id. at 1662.

A violation of CFAA can occur when the Former Employee Defendants accessed Karma computer systems after their termination or they accessed information in off limits areas. It is undisputed the Former Employee Defendants were given access to Karma computer systems during their employment at Karma. SGD ¶¶ 90, 116, 131, 157, 194, 175. Thus, any access to Karma Systems during employment, for whatever purpose was not "without authorization." Any access after termination of employment was "without authorization." See Brekka, 581 F.3d at 1136. Punak admits to voluntarily working on a Karma project and pushing lines of code to the repository after his termination. SGD Ex. 107, No. 13. Kim admits to retaining his laptop following the end of his employment with Karma. SOF Ex. 66, at 53–58. Kim further admits to deleting personal files on his Karma laptop after the end of his employment with Karma. Id. at 60. Huan also admits to deleting personal files, and potentially inadvertently deleting business files, from his laptop after the end of his employment with Karma. SOF Ex. 48, at 175–76. With respect to Punak, Kim, and Huan, each accessed their computer after the end of their employment with Karma. This is sufficient to satisfy the "without authorization" requirement of CFAA. See Brekka, 581 F.3d at 1136. There is no evidence indicating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)                    Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

Durre, Qin, or Huang accessed their Karma laptops following the end of their employment with Karma.

Karma argues, nonetheless, all the Former Employee Defendants acknowledged receiving a Karma Code of Conduct indicating they would use Karma's computer systems "only to conduct legitimate Company business." Opp'n, Dkt. No. 287-1 at 7. But Karma's argument relies on its misreading of hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th 1180 (9th. Cir. 2022). In hiQ Labs, Inc., the Ninth Circuit restated Van Buren's holding: "a user with authorization is not subject to limitations on access whether those limitations are code-based or contained in contracts or policies." 31 F.4th at 1198 (internal quotations omitted). As such, contract based provisions limiting scope of access does not equate to "without authorization."

Karma also argues Durre and Huan deleted a substantial amount of Karma material prior to their resignations. Opp'n, Dkt. No. 287-1, at 8. Karma points to evidence indicating Huan deleted over 57,000 files *after* the end of his employment. SGD Ex. 32, ¶ 26. This alone is sufficient to meet the "without authorization" requirement. As to Durre, he deleted thousands of confidential SharePoint files on his last day of user access. SGD Ex. 286, ¶ 10. This is insufficient to show his conduct was "without authorization." The same declaration also states Durre "had access to, regularly used, and [was] responsible for" maintaining the SharePoint files. As such, Durre's actions did not "exceed authorized access" because Durre was responsible for, not limited to, those files. See Van Buren, 141 S. Ct. at 1662 ("In sum, an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him.").

Only Punak, Punak Engineering, Kim, and Huan used Karma computer systems "without authorization." As such, Durre, Qin, and Huang are entitled to summary judgment on Count II.

2.   Lordstown and Lordstown Employee Defendants

"[T]he CFAA creates liability only for those who violate its terms—it makes no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)              Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

mention of vicarious liability or liability for those who should have known of its violations." SolarCity Corp. v. Pure Solar Co., 2016 WL 11019989, at *9 (C.D. Cal. Dec. 27, 2016). But "courts have held that an employer can be vicariously liable for an employee's violations of the CFAA if those transgressions occur in the scope of employment or the employer directs the employee's conduct." NetApp, Inc. v. Nimble Storage, Inc., 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014) (collecting cases).

As discussed above, there are potential CFAA violations by Punak, Punak Engineering, Kim, and Huan. Karma fails to allege or provide any evidence of direct violations of the CFAA by Lordstown or the Lordstown Employee Defendants. Defendants argue there is no evidence showing any of the Lordstown or the Lordstown Employees directed the Former Employee Defendants acted within their scope of employment or were directed to act in a such a way that violated the CFAA. The evidence discussed previously does show some Former Employee Defendants acted "without authorization," but does not show or even suggest they did so at the direction of Lordstown or the Lordstown Employee Defendants. As such, Lordstown and the Lordstown Employee Defendants are entitled to summary judgment on Count I.

  3. Damages

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37 (c)(1).

Defendants argue Karma's claim fails for lack of damages. Karma argues it suffered damages in the form of costs incurred by having Setec Investigations determine "which employees accessed, altered, damaged, or deleted data from Karma's computer systems; the extent computer systems were tampered with, damaged, or accessed without authorization; and potential methods of remediation." SGD Ex. 285, ¶ 2. Defendants allege the Declaration of Michael Kunkel ("Kunkel Declaration"), describing Karma's costs, is being disclosed for the first time in Karma's opposition to Defendants' motion. Reply, Dkt. No. 305, at 3. The Kunkel Declaration was executed on October 9, 2022. SGD Ex. 285. In the Kunkel Declaration, Kunkel discusses the costs Karma incurred by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

employing Setec Investigations.  Nowhere in his other declarations does Kunkel describe the costs Karma incurred.  See Dkt. Nos. 20-4, 81-9, 133-2, 149-3.  Notably, in his August 24, 2022, deposition, Kunkel is unaware of the exact amount of time he has spent on the case or the amount of money he has been paid by Karma.  SOF Ex. 45, at 35–38.  But Kunkel also discusses his hourly billing rate of $275 for non-testimony and $400 for testimony.  Id.  Moreover, Kunkel stated he "spent probably a bit more time on this case than a large number of cases" and he has worked on the case for approximately two years.  Id. at 37–38.  Based on the deposition, Defendants are certainly on notice that Karma has spent some significant amount of money over two years in employing Kunkel.  Courts in this district have excluded evidence of damages that are untimely disclosed.  See, e.g., Mission Viejo Florist, Inc. v. Orchard Supply Co, LLC, 2019 WL 13045043 (C.D. Cal. Apr. 15, 2019); TCL Comms. Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson, 2016 WL 6562075 (C.D. Cal. Aug. 9, 2016).  But in Mission Viejo Florist, Inc., there were no relevant documents or deposition testimony supporting the damages theory.  And in TCL Communications Technology Holdings, Ltd., the deposition provided only "two ballpark estimates of [the] total legal fees."  2016 WL 6562075, at *8.  The Court finds admitting the declaration is not prejudicial to Defendants.  As such, Karma's claims do not fail for lack of damages.

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment on Counts I and II.

> B.    *Violation of California Penal Code Section 502 ("Section 502")*

Defendants argue Karma's Section 502 claim fails for lack of damages and because Karma cannot show Huang improperly took, used, or deleted information from Karma's computer systems.  Mot., Dkt. No. 272, at 8–9.

> 1.    Damages

Defendants argue Karma's Section 502 claim fails for lack of damages.  "Section 502 sets no threshold level of damage or loss that must be reached to impart standing to bring suit.  Under the plain language of the statute, any amount of damage or loss may be sufficient."  Facebook, Inc. v. Power Ventures, Inc., 2010 WL 3291750, at *4 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

July 20, 2010).  Karma made expenditures to determine "which employees accessed, altered, damaged, or deleted data from Karma's computer systems; the extent computer systems were tampered with, damaged, or accessed without authorization; and potential methods of remediation."  SGD Ex. 285, ¶ 2.  For the same reasons above, the Court finds admitting Kunkel's declaration is not prejudicial.  Because Section 502 has no minimum damage threshold, unlike the CFAA, and Karma has pointed to sufficient evidence of damages, the claim does not fail for lack of damages.

Accordingly, Defendants are not entitled to summary judgment based on lack of damages.

2.     Huang

California Penal Code § 502, also known as the California Comprehensive Computer Data Access and Fraud Act, criminalizes nine categories of acts regarding knowingly accessing and using without permission a computer or data from a computer.  Cal. Penal Code § 502; see also Facebook, Inc. v. Grunin, 77 F. Supp. 3d 965, 971–72 (N.D. Cal. 2015).  Section 502 allows for private civil rights of action against violators.  Cal. Penal Code § 502(e).

Karma alleges Former Employee Defendants, including Huang, violated sections (1), (2), (3), (4), (6), and (7), which provide:

(c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

(2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)          Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

a computer, computer system, or computer network.

(3) Knowingly and without permission uses or causes to be used computer services.

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

. . .

(6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Cal. Penal Code § 502(c).

All of the subsections of § 502(c) that potentially apply in this case require that Defendants' actions be taken "without permission." See Cal. Penal Code § 502(c)(1)–(4), (6)–(7). However, the statute does not expressly define the term "without permission," and the term's meaning is unsettled. See NovelPoster v. Javitch Canfield Grp., 140 F. Supp. 3d 954, 965–67 (N.D. Cal. 2014) (explaining split of authority as to whether "without permission" requires access "in a manner that overcomes technical or code-based barriers"). Courts have provided meaning at least as to subsection (c)(2), which applies to a person who "without permission, takes, copies, or makes use of" data on a computer. Cal. Penal Code § 502(c)(2). The Ninth Circuit has held that this "includes logging into a database with a valid password and subsequently taking, copying or using the information in the database improperly." United States v. Christensen, 828 F.3d 763, 789 (9th Cir. 2015); see also Pierry, Inc. v. Thirty-One Gifts, LLC, 2018 WL 1684409, at *10 (N.D. Cal. Apr. 5, 2018). Section 502 (c)(1) similarly applies in relevant part to a person who "without permission . . . uses any data in order to . . . wrongfully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

control or obtain . . . property or data." Cal. Penal Code § 502 (c)(1)(B). Both provisions prevent unauthorized use of data obtained from a computer system; therefore, the Court finds that the Ninth Circuit's reasoning in Christensen applies with equal force to subsection (c)(1).

Defendants argue that at most Huang's Lordstown computer has the same filenames as files on his Karma computer. Mot., Dkt. No. 272, at 9. Karma argues Huang transferred confidential and proprietary MQTT source code files to LMC between April 25, 2020, and August 29, 2020. In Robert Zeidman's ("Zeidman"), expert report, Zeidman states "The two Karma files were first committed April 29 and had several commits by Stephen Punak and Dan Huang, the last on August 25, 2020." SOF Ex. 123, at 212. But Huang signed his offer Letter with Lordstown on August 28, 2020. ASOF ¶ 361. Defendants point to paragraph 12 of Zeidman's report as evidence that Punak and Qin made the MQTT commitments to Lordstown's repository, not Huang. But paragraph 12 of the Zeidman report relates to "Instructions." SOF Ex. 123, at 12. As such, there is a genuine dispute of material fact as to whether Huang, "improperly" copied confidential MQTT files from Karma's repository to Lordstown's repository knowing of his upcoming decision to sign Lordstown's offer letter.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on Count XXVII and XXVIII.

C.    *Violation of the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA")*

Defendants argues Karma's claims for violation of DTSA and CUTSA fail for lack of damages. Mot., Dkt. No. 272, at 9. Defendants also argues the claims fail for all Defendants except Punak because the claims rely on publicly available source code, and the claims against Huang fail because Karma did not show Huang wrongfully acquired, disclosed, or used any Karma trade secret. Id. at 9–11.

1.    Damages

The issue of damages is discussed infra Part III.O.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)                    Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

2.   <u>Publicly available source code</u>

"Under both the DTSA and the CUTSA, 'misappropriation' means either (1) the '[a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;' or (2) the '[d]isclosure or use of a trade secret of another without express or implied consent.'" <u>Alta Devs., Inc. v. LG Elec., Inc.</u>, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations omitted).

Defendants argue the source code uploaded online does not qualify for trade secret protection because it is public information.  Mot., Dkt. No. 272, at 10.  The source code was undisputedly available online on GitHub in June or July 2019.  SGD ¶ 324.  As such, Defendants argue the non-Punak Defendants are entitled to summary judgment based on any misappropriation claim related to the Kanoop source code.  <u>Id.</u>

Defendants rely on <u>Moreland Apartments Assocs. v. LP Equity LLC</u>, where the court found names and phone numbers of limited partners are not trade secrets because they are available through publicly accessible resources.  2019 WL, 6771792 (N.D. Cal. Dec. 12, 2019).  Generally, the unprotected disclosure of a trade secret terminates the existence of the trade secret.  <u>SkinMedica, Inc. v. Histogen Inc.</u>, 869 F. Supp. 2d 1176, 1194 (S.D. Cal. 2012).  Karma relies on <u>Hirel Connectors, Inc. v. U.S.</u>, where the court held publication of some of the trade secrets online did not automatically make the trade secrets generally known.  2004 WL 5639770, at *21 (C.D. Cal. Jan. 23, 2004).  Karma also relies on <u>O2 Micro Intern. Ltd. v. Monolithic Power Sys, Inc.</u>, for the proposition that "[c]ombinations of public information from a variety of different sources when combined in a novel way can be a trade secret.  It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known." 420 F. Supp. 2d 1070, 1090–91 (N.D. Cal. 2006), <u>aff'd</u> 221 Fed. Appx. 996 (2007).

As Karma points out, Karma owns the copyright to the code created by Punak. ASOF ¶ 55, Ex. 57.  There is a genuine dispute as to whether Punak's code was developed prior to his time at Karma and whether he had permission to post it publicly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

SOF Ex. 122, ¶ 86; Declaration of Weian Huang, Dkt. No. 137-18, ¶ 7. A reasonable inference, based on the evidence, is Punak did not have permission to post the code and the code was Karma's proprietary code. As such, Punak's posting of the code does not automatically render it generally known because it was only one aspect of Karma's trade secrets. See SOF Ex. 123, ¶ 287. Defendants' motion relies on the fact that the code is not trade secret. Moreover, the evidence Defendants point to in no way shows Karma failed to remove the code or limit its use. See SOF Ex. 122, ¶ 165; Ex. 123, ¶¶ 75–78.

Accordingly, the Court **DENIES** Defendants motion for summary judgment with respect to the use of the Punak code.

   3. Claims against Huang

Defendants argue Karma cannot establish Huang copied from Karma source code, or that similar file names on Huang's Karma and Lordstown computers is insufficient to establish misappropriation. But Karma points to evidence indicating Huang copied a significant amount of lines codes and files. See SOF Ex. 122, ¶ 64 (discussing the commits by Huang); Ex. 123, ¶¶ 205–12 ("The two Karma files were first committed April 29 and had several commits by Stephen Punak and Dan Huang . . . ."). As such, there is a genuine dispute of material fact as to whether Huang did in fact copy Karma source code and therefore misappropriated Karma's trade secrets.

Accordingly, the Court **DENIES** Defendants motion for summary judgment with respect to Huang.

   *D.* *Breach of Contract*

Karma alleges Durre, Huan, Qin, Punak, Kim, Huang, and Post each breached their individual employment contracts with Karma. Defendants move for partial summary judgment on each of the claims. The Court discusses each in turn.

   1. Acceptance of employment with Lordstown

California Business and Professions Code § 16600 voids any contract that prevents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-02104 JVS (DFMx) | Date | November 18, 2022 |
|---|---|---|---|

| Title | Karma Automotive LLC v. Lordstown Motors Corp. et al. |
|---|---|

anyone "from engaging in a lawful profession, trade, or business." See Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 945 (noting "covenants not to compete are [generally] void"). But non-competition agreements are enforceable when necessary to protect an employer's trade secret. See Asset Marketing Sys., Inc. v. Gagnon, 542 F.3d 748, 756 (9th Cir. 2008).

Defendants argue Durre, Huan, Qin, Punak, Kim, Huang, and Post are entitled to partial summary judgment to the extent Karma's claims are based on their acceptance with Lordstown or their overlap of employment with Lordstown and Karma. Mot., Dkt. No. 272, at 12. Karma alleges Durre, Huan, Qin, Punak, Kim, Huang, and Post breached the Confidentiality Agreement by "accepting employment with LMC, which created a conflict of interest with Karma." FAC, Dkt. No. 72, ¶¶ 165, 171, 177. 183, 195, 201, 207. Defendants fail to point to which part of the "Confidential Information, Invention Assignment and Arbitration Agreement" signed by Durre, Huan, Qin, Punak, Kim, Huang, and Post is at issue. See, e.g., SGD Ex. 5. The agreement prevents "Conflicting Employment" and "Solicitation of Employees" but does not contain any provision broadly restricting employment. Even if such a provision were present, it would likely be permissible to protect Karma's trade secrets. See Asset Marketing Sys., Inc. v. Gagnon, 542 F.3d 748, 756 (9th Cir. 2008) ("Under California law, non-competition agreements are unenforceable unless necessary to protect an employer's trade secret.").

Accordingly, the Court **DENIES** Defendants motion for summary judgment with respect to Durre, Huan, Qin, Punak, Kim, Huang, and Post's acceptance of employment with Lordstown.

2.    Overlapping employment

Next, Defendants argue Durre and Huan are entitled to partial summary judgment based on their overlapping employment with Lordstown and Karma. Defendants argue there was no violation because Karma and Lordstown are not competitors. Mot., Dkt. No. 272, at 13.

As discussed above, typically non-competition agreements are void except when necessary to protect trade secrets. Defendants fail to cite any relevant authority

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-02104 JVS (DFMx) | Date | November 18, 2022 |
|---|---|---|---|

| Title | Karma Automotive LLC v. Lordstown Motors Corp. et al. |
|---|---|

indicating provisions not to compete during one's employment are also void. See W. Air Charter, Inc v. Schembari, 2017 WL 10638759, at *8 (C.D. Cal. Oct. 6, 2017) ("[T]he Court is not aware of any cases holding that provisions not to compete during one's employment are void.") (collecting cases).

Section 4 of the agreement does not mention "competitors" as Defendants contend. Instead, Section 4 states employees "will not engage in any other employment . . . directly related to the business in which [Karma] is now involved or becomes involved in. SGD Ex. 5, § 4; Ex. 14. Based on the plain language of the agreement, the issue is not whether Karma and Lordstown are competitors but whether Durre and Huan engaged in other employment directly related to business Karma was involved in.[1] There is a genuine dispute of material fact relating to the relationship of Karma and Lordstown in terms of their overlapping products, markets, and competitors. Karma sells electric vehicles and develops technology for use in electric vehicles. See ASOF ¶ 3. Lordstown is building an electric truck and sought to purchase electric vehicle technology from Karma. Id. And what's clear is that Karma and Lordstown worked together such that Durre and Huan's employment with Lordstown could be seen as directly related to the business Karma is involved in.

Accordingly, the Court **DENIES** Defendants motion for summary judgment with respect to Durre and Huan's overlapping employment.

3.    Solicitation of Karma employees

Next, Defendants argue Qin is entitled to partial summary judgment based on his alleged solicitation of Karma employees due to lack of evidence. Mot., Dkt. No. 272, at 13–14. Karma failed to respond to this argument, except to note Karma sought to stipulate to dismissing this claim but Defendants refused. Opp'n, Dkt. No. 287-1, at 17 n.5.

---

[1] As discussed infra Part III.H, there is a genuine dispute of material fact as to whether Lordstown and Karma are competitors anyways.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)                    Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

As such, Defendants are entitled to summary judgment on this issue.  See Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed.").

4.   Kim's breach of confidentiality

Next, Defendants argue Karma cannot establish Kim breached his confidentiality agreement.  Defendants argue Kim's confidentiality agreement does not apply to Kim's subsequent work with Karma.  Defendants also argue Kim did not breach his confidentiality agreement by soliciting other Karma personnel to join Lordstown.  Karma does not reply to this second argument.

The parties dispute whether section 1 of Kim's confidentiality agreement applies to the intended business transaction between Karma and Kim, or all work done by Kim for Karma.  See SOF, Ex. 69, § 7 ("The Parties to this Agreement intend to enter into discussions regarding a potential business transaction ('Purpose') which may involve the disclosure by a Party (the 'Disclosing Party') to the other Party (the "Receiving Party") of Confidential Information (as defined below).").  While § 1 may lay out the purpose of the agreement (in boilerplate fashion), § 2, which defines "Confidential Information" does not limit the scope of information as narrowly as Defendants suggestions.  Id. § 2.  The plain language of § 2 simply states Confidential information is "information of a Party," including information "given the nature of the information or the circumstances of disclosure, is or reasonably should be considered confidential."  Section 3 provides Kim "will not disclose Confidential Information to any third party."  Id. § 3.  As such, the Court finds the confidentiality agreement covered any confidential information Kim received during his time at Karma.

Defendants argue, in any event, Karma cannot identify any confidential information Kim improperly disclosed.  But Karma points to evidence indicating there is a genuine dispute of material fact as to whether Kim breached his confidentiality agreement by misappropriating Karma's trade secrets and confidential information.  See SOF Ex. 66, at 111, 115.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

Accordingly, the Court **DENIES** Defendants motion for summary judgment as to Kim's breach of his confidentiality agreement.

    5.    <u>Huang's breach of confidentiality</u>

Lastly, Defendants argue Karma cannot establish Huang breached his confidentiality agreement. Both parties refer to the arguments already made regarding Huang. As discussed above, there is a genuine dispute of material fact as to whether Huang did in fact copy Karma source code and resultantly misappropriated Karma's trade secrets. Therefore, there is also a genuine dispute whether Huang violated his confidentiality agreement by misappropriating Karma's trade secrets and confidential information. <u>See</u> <u>supra</u> Part III.C.3.

Accordingly, the Court **DENIES** Defendants motion for summary judgment as to Huang's breach of his confidentiality agreement.

For the foregoing reasons, the Court **GRANTS in part** and **DENIES** in part Defendants motion for summary judgment on Counts V–XII.

    E.    *Breach of Mutual Non-Disclosure Agreement*

Defendants argue Karma's claim for breach of the Mutual Non-Disclosure Agreement fails for two reasons. First, Defendants argue Karma cannot establish it "substantially complied" with the agreement. Second, Defendants argue Karma cannot prove damages. Both parties acknowledge the Mutual Non-Disclosure Agreement is governed by Ohio law.

"Where a plaintiff seeks to recover damages for breach of contract, the burden is upon [the plaintiff] to show either substantial performance or tender of performance of the conditions on [the plaintiff's] part to be performed. In the law of contracts, substantial performance is [an] approximation of full performance such that the parties obtain, in the main, what the contract called for, although it is not complete and final performance in every particular. A party is in substantial compliance with its promises when its deviations are nominal, trifling, technical, slight, and consistent with an honest effort to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)              Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

perform.  For the doctrine of substantial performance to apply, the unperformed duties must not destroy the value or purpose of the contract.  If the facts are undisputed, whether a party's conduct constitutes substantial performance is a question of law for the court." Lawless v. Bd. of Educ. of Lawrence Cnty. Educ. Serv. Ctr., 141 N.E. 3d 267, 285–86 (Ohio. Ct. App. 2020) (international quotations and citations omitted).

Defendants argue Karma did not substantially comply by failing to provide Lordstown with a certificate of compliance showing Karma returned, destroyed, or erased all of Lordstown's confidential information.  Mot., Dkt. No. 272, at 16.  Karma argues the failure to return or destroy such documents does not constitute a material breach. Opp'n, Dkt. No. 287-1, at 19.

Section 7 of the Mutual Non-Disclosure Agreement states: "Upon the earlier of termination or expiration of this Agreement, or at any time upon written request .  .  . the Receiving Party will . . . promptly return to the Disclosing Party or destroy and cause the Receiving Party's representatives, to return or destroy any of the Disclosing Party's Confidential Information in its and their possession [and] shall provide the Disclosing Party with a certificate . . . certifying the Receiving Party's compliance with this Section 7."  SOF Ex. 75, § 7.  The purpose of the agreement is to "protect the confidentiality of certain confidential information of the Parties exchanged in connection with supplying hardware, software and consulting services."

Karma admits it "may have inadvertently retained . . . a handful of email attachments possibly covered by the MNDA" but does not identify which.  Opp'n, Dkt. No. 287-1, at 19.  And Karma does not dispute it failed to provide Defendants with a certificate as required by the agreement.  SOF Ex. 2, at 204.  But neither party points to any evidence indicating which documents were retained or their importance.  The purpose of the agreement was to protect confidential information.  It might be undisputed that Karma kept *some* documents, but it is unclear *what* documents Karma kept.  The Court finds there is a genuine dispute of material fact as to the documents retained by Karma.  As such, the Court cannot determine if Karma's conduct was "nominal, trifling, technical, slight, and consistent with an honest effort to perform."  Hansel v. Creative Concrete & Masonry Constr. Co., 148 Ohio App. 3d 53, 56 (Ct. App. 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title       Karma Automotive LLC v. Lordstown Motors Corp. et al.

Accordingly, the Court **DENIES** Defendants motion for summary judgment with respect to Count XIII.

    *F.*    *Breach of Letter of Intent*

Karma alleges Lordstown breached the Letter of Intent (the "Letter") by failing to "work with Karma in good faith to negotiate definitive agreements." FAC, Dkt. No. 72, ¶ 222. Lordstown argues the Letter is non-binding and unenforceable, and even if it was, Karma's damages are limited to reliance damages. Mot., Dkt. No. 272, at 17–18. Karma argues Lordstown breached by failing to negotiate in good faith in the first place. Opp'n, Dkt. No. 287-1, at 19.

"Where a letter says that it is subject to the terms of a contemplated mutual agreement to be written and signed in the future, but other evidence indicates that the parties decided to be bound by the terms of the letter, the letter may amount to a contract. But the rights of private parties to enter into contracts also embraces their rights not to, and there is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement is made." Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 316 (9th Cir. 1996) (citations omitted).

But California courts recognize that "[u]nlike an agreement to agree, which does not constitute a closed proposition, an agreement to use best efforts [or to negotiate in good faith] is a closed proposition, discrete and actionable." Racine & Laramie, Ltd. v. Dep't of Parks & Rec., 11 Cal. App. 4th 1026, 1033 (1992) (internal quotations and citations omitted). Courts will enforce a "contract to negotiate the terms of an agreement." Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1257 (2002). "If, despite their good faith efforts, the parties fail to reach ultimate agreement on the terms in issue the contract to negotiate is deemed performed and the parties are discharged from their obligations. Failure to agree is not, itself, a breach of the contract to negotiate. A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith." Id. Sections 1 and 5 of the Letter states:

The Parties will work in good faith to develop the milestones and objectives

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

pursuant hereo.

. . .

> This Letter of Intent is for discussion purposes only and supersedes any prior discussions and materials presented with respect to such terms described above. Nothing contained herein creates any liability or any obligation on the part of any Party to share information, continue discussions, or enter into any Definitive Agreement.  Any binding obligation would be subject to the negotiation and execution of the Definitive Agreements, which would contain customary representations, warranties, conditions, and compliance with all regulatory requirements.

SOF Ex. 1, §§ 1, 5.  Section 2 also states Karma and Lordstown will "work together in good faith to negotiate, prepare, execute and deliver definitive agreements . . . ."  Id. § 2.  The terms of the Letter are inconsistent.  Sections 1 and 2 state the parties will work in "good faith" to "develop the milestones and objectives" and to "negotiate, prepare, execute and deliver definitive agreements governing the Transactions."  Id.  But Section 5 states the Letter does not create any liability to "continue discussions."  Id.

Karma's cause of action is premised on the Letter as a binding contract that Lordstown materially breached by failing to "refusing to work with Karma in good faith."  FAC, Dkt. No. 72, ¶¶ 218, 222.  Karma relies on Copeland v. Baskin Robbins U.S.A. for the proposition that California courts recognize a viable cause of action for "a failure to reach ultimate agreement result[ing] from a breach of that party's obligation to negotiate or to negotiate in good faith."  Opp'n, Dkt. No. 287-1, at 20 (quoting 96 Cal. App. 4th 1251, 1257 (2002)).  But such a claim is viable only "in an appropriate case."  Copeland, 96 Cal. App. 4th at 1256.

Similar to the letter of intent in Rennick, the Letter here clearly indicates Karma and Lordstown did not intend to be bound by the Letter.  See Rennick, 77 F.3d at 316.  Copeland distinguishes unenforceable agreements to agree and enforceable contracts to negotiate.  The Letter is more akin to Beck, as discussed in Copeland.  In Beck, "based [on the] conclusion [of] the words of the letter which manifest an intention of the parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

[] no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel." Copeland, 96 Cal. App. 4th at 1258 (internal quotations omitted). The contract in Copeland, on the other hand, stated "Baskin Robbins would agree, subject to a separate co-packing agreement and negotiated pricing." Id. at 1254. But Baskin Robbins broke off negotiations over the co-packing arrangement and Copeland sued. Id. The Letter is unlike the contract in Copeland, which was found to be a contract to negotiate, and therefore breach of contract was a viable cause of action. As the Court in Copeland stated, "it is important to note courts which have found purported contracts to be unenforceable 'agreements to agree' have focused on the enforceability of the underlying substantive contract, not on whether the agreement to negotiate the terms of that contract is enforceable in its own right." Id. The plain language of the Letter indicates an intent to formalize a future agreement without creating any obligations under the Letter itself. See SOF Ex. 1 ("This Letter of Intent is for discussion purposes only and supersedes any prior discussions and materials presented with respect to such terms described above.").

If the Letter was a valid contract to negotiate, "reliance damages are the only form of recovery available in an action on a contract to negotiate an agreement." Copeland, 96 Cal. App. 4th at 1263. Karma argues the amounts discussed in Section 6 of McGavock's report are "the value of Karma's proprietary and confidential technologies used in the illfated Endurance project stolen, not lost profits." Opp'n, Dkt. No. 287-1, at 44. When McGavock was asked if he calculated reliance damages, he replied: "I didn't have that legal term in mind when I performed my calculations, but . . . it is possible that what I quantified could be considered a form of reliance damages." SOF Ex. 68, at 133. Because the damages calculated by McGavock could be interpreted as reliance damages, this raises a genuine dispute of material fact.

Accordingly, the Court **GRANTS** Defendants motion for summary judgment on Count XIV.

G.   *Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage*

1.   Preemption

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

CUTSA "occupies the field" of common law claims based on the misappropriation of a trade secret. K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 954 (2009). CUTSA "implicitly preempts alternative civil remedies based on trade secret misappropriation." Id. at 954 (citation omitted). However, CUTSA does not supersede "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).

CUTSA "preempt[s] claims based on the same nucleus of facts as [an alleged] trade secret misappropriation." K.C. Multimedia, 171 Cal. App. 4th 939, 962; see also Cal. Civ. Code § 3426. Determining whether a claim overlaps with the CUTSA is "a factual inquiry, one that examines the conduct alleged in the claim." Id. at 958. If a common law tort claim "is not based on the existence of a trade secret," then CUTSA does not displace it. Angelica Textile Servs., Inc. v. Park, 220 Cal. App. 4th 495, 508 (2013). The statute "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." Mattel, Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011). This rule attempts to preclude a plaintiff from asserting claims that "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 240 (2010), disapproved on other grounds in Kwikset v. Super. Ct., 51 Cal. 4th 310, 337 (2011).

Defendants argue Karma's claims for tortious interference with contract, tortious interference with prospective economic advantage, violation of California Business and Professions Code Section 17200, violation of fiduciary duty, and conspiracy are preempted by CUTSA.

In the Complaint, Karma notes the tortious interference with contract claim is not based on misappropriation of Trade Secrets, but rather on the actions of Former Employee Defendants in sabotaging the Endurance project, recruiting Karma employees and the conversion of Confidential Information which is not trade secrets and Karma has a separate property interest in. FAC, Dkt. No. 72, ¶ 240. Karma likewise states the same

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 20-02104 JVS (DFMx)                    Date   November 18, 2022

Title     Karma Automotive LLC v. Lordstown Motors Corp. et al.

for the Section 17200 claim, the fiduciary duty claim, and the conspiracy claim.  Id.  ¶¶ 72, 253, 285.  As discussed throughout this Order, Karma's claims go beyond just misappropriation of trade secrets.  Each of Karma's claims contain independent conduct separate from the misappropriation of trade secrets.  But to the extent Karma's claims rely on misappropriation of "Confidential Information," which Karma considers different from its trade secrets, the claim fails.  See Mattel, Inc. v. MGA Entm't., Inc., 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[C]UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret.").  Nonetheless, Karma sufficiently alleges, and points to relevant evidence of, separate and independent conduct from the misappropriation of trade secrets or confidential information in each of its common law claims.  As such, CUTSA preemption does not apply.

Accordingly, the Court **DENIES** Defendants motion for summary judgment with respect to CUTSA preemption.

2.    Tortious interference with contract

Karma alleges Lordstown and the Lordstown Employee Defendants interfered with the confidentiality agreements between Karma and its employees, including the Former Employee Defendants.  FAC, Dkt. No. 72, ¶ 228.  Defendants argue Karma failed to show any independent wrongful conduct by Lordstown or the Lordstown Employee Defendants.  Karma argues Lordstown provided "express written encouragement" for Durre and the Former Employee Defendants to "build a competing team and start working on LMC's designs *while* they were being paid by Karma."  Opp'n, Dkt. No. 287-1, at 24 (emphasis in original).

A claim for tortious interference with contract requires: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).  " It is generally not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself."  Ixchel Pharma, LLC v. Biogen, Inc., 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

Cal. 5th 1130, 1141 (2020).  The key difference from interference with prospective economic advantage is that interfering with an existing contract is inherently wrong, while interfering with prospective economic advantage requires showing additional wrongful conduct.  Id. at 1142.

Lordstown contends Karma's claim of tortious interference with contract fails due to lack of independent wrongful conduct.  But that requirement is only present for tortious interference with prospective economic advantage.  See Reeves, 33 Cal. 4th at 1145 ("The primary issue presented is whether a defendant may be held liable under an intentional interference theory for having induced an at-will employee to quit working for the plaintiff."); see, e.g., SSI Inc. v. Ferry, 2021 WL 9315372, at *10 (C.D. Cal. July 28, 2021).  Karma's allegations are more than just inducement to leave the at-will relationship.  Instead, Karma alleges Lordstown and the Lordstown Employee Defendants sought to interfere with the Former Employee Defendants contractual obligations to return confidential information, to not disclose confidential information, to not solicit Karma employee's, and to not concurrently work with another employer.  FAC, Dkt. No. 72, ¶ 229; see also Opp'n, Dkt. No. 287-1, at 25 n.6.  These acts primarily relate to the Former Employee Defendants' ongoing contractual obligations while on Karma's payroll, not any inducement by Lordstown to convince the Karma employees to leave.

Given the above, the only viable argument Lordstown has is Karma cannot establish knowledge of the underlying agreement or intent to cause breach, and lack of damages.  Mot., Dkt. No. 272, at 21–22.  It is undisputed Lordstown requires its employees to sign confidentiality agreements.  ASOF ¶ 488; Ex. 199.  Post, a Lordstown Employee Defendant, signed a similar confidentiality agreement when he worked for Karma.  ASOF ¶ 6; Ex. 5.  Post also coordinated with Durre via text to ensure Karma employees could apply to Lordstown without raising suspicion.  ASOF ¶ 235; Ex. 65.  These facts, taken together, raise a genuine dispute that Lordstown and the Lordstown Employee Defendants were aware of the Karma employees' confidentiality agreements.  Lordstown's argument that the claim fails for damages is discussed later below.

Accordingly, the Court **DENIES** Defendants motion for summary judgment on Count XV.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)          Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

3.    Tortious interference with prospective economic advantage

As to the tortious interference with prospective economic advantage, Lordstown argues the claim fails because Karma cannot establish a probability of future economic benefit, cannot establish independent wrongful conduct, and because employees cannot interfere with their own company's potential business relationships.

Case law is settled that a claim for tortious interference with prospective economic advantage requires showing independent wrongful conduct. "[T]o state a claim for interference with an at-will contract by a third party, the plaintiff must allege that the defendant engaged in an independently wrongful act." Ixchel Pharma, LLC v. Biogen, Inc., 9 Cal. 5th 1130, 1148 (2020); see also Reeves, 33 Cal 4th at 1152 (holding "to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act"). "California courts have held that independently wrongful conduct includes 'actions which are independently actionable, violations of federal or state law or unethical business practices, e.g., violence, misrepresentation, unfounded litigation, defamation, trade libel or trade mark infringement.'" Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C., 2007 WL 1394427, at *12 (N.D. Cal. May 10, 2017) (quoting PMC, Inc. v. Saban Entm't, Inc., 45 Cal. App. 4th 579, 602 (1996)).

As discussed above, the Court denied Defendants' motion for summary judgment on Karma's DTSA and CUTSA claims. Trade secret misappropriation is a sufficient action to constitute independent wrongful conduct. See GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc., et al., 2016 WL 6562064, at *12 (C.D. Cal. Apr. 21, 2016) (citing Gemini Alum. Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App. 4th 1249 (2002)). As such, Defendants fail to establish that there is no independent wrongful conduct supporting Karma's tortious interference with prospective economic advantage claim.

Next, Defendants argue Karma cannot establish a probability of future economic benefit. A claim for tortious interference with prospective economic advantage requires showing "that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference." Youst v. Longo, 43 Cal. 3d 64, 71

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

(1987). Defendants point out evidence showing Karma never had the capacity to actually develop, produce, and sell an infotainment system. See SGD, ¶¶ 12–16, 244–49. But the evidence does not undisputedly establish Karma's inability to develop an infotainment system. As Karma points out, Lordstown sought to hire a "dream team" from Karma for the infotainment system. ASOF Ex. 65, at 11. As such, there is a genuine dispute of whether the relationship between Karma and Lordstown would have resulted in future economic benefit.

Lastly, Defendants argue the Former Employee Defendants cannot interfere with their own company's potential business relationships. "It is also well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract." Shoemaker v. Myers, 52 Cal. 3d. 1, 24 (1990). Count XVI of the complaint is for tortious interference with prospective economic advantage against only the Former Employee Defendants. FAC, Dkt. No. 72, ¶¶ 233–40. Karma alleges the Former Employee Defendants "breached their duty of loyalty by making a side deal with LMC while they were employed by Karma, which resulted in LMC ending its relationship obligations to Karma." But given Shoemaker, and Karma's failure to point to any other legal authority stating otherwise, the Former Employee Defendants cannot interfere with their own employer's contract. As such, Karma's claim fails as a matter of law.

Accordingly, the Court **GRANTS** Defendants motion for summary judgment on Count XVI.

    *H.*    *Violation of California Business and Professions Code Section 17200 ("Section 17200")*

Defendants argue Karma fails to establish "unfair" practices, public deception, and damages. Mot., Dkt. No. 272, at 26–27.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Each prong [unlawful, unfair, or fraudulent] of the UCL is a separate and distinct theory of liability . . . ." Lozano v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)        Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007). The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law. Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) (citation omitted). An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). Finally, a business act is fraudulent within the meaning of § 17200 if "members of the public are likely to be deceived." Comm. on Children's Television v. Gen. Foods Corp., 35 Cal. 4th 197, 211 (1983).

First, Defendants argue Karma cannot establish the "unfair" prong because Defendants' conduct harms Karma, and not competition. Mot., Dkt. No. 272, at 26–27. Karma argues the "unfair" prong does not require "likelihood of public deception." Opp'n, Dkt. No. 287-1, at 30–31. But Karma fails to address anything else further regarding the "unfair" prong.

"When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). Defendants contend Karma fails to provide any evidence that Defendants' conduct threatened violation of antitrust law or harms competition. The evidence only points to harms to Karma as a competitor. See W. Air Charter, Inc. v. Sojitz Corp., 2019 WL 4509304, at *14 (dismissing a complaint for failure to detail how defendants' acts harm competition rather than the plaintiff as a competitor) (C.D. Cal. May 2, 2019). And the cases Karma cite do not focus on the "unfair" prong. See CRST Van Expedited, Inc. v. Werner Enterprises, Inc., 479 F.3d 1099, 1107 n.10 (9th Cir. 2007) ("We need not, and do not, decide whether CRST adequately alleged that Werner has engaged in an "unfair" business practice."); Angelica Textile Servs., Inc v. Park, 220 Cal. App. 4th 495, 510 (stating tortious interference with business relations can sustain a unfair competition law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

claim, without stating under which prong).  As such, Karma's claim fails as to the "unfair" prong of the UCL.

Next, Defendants argue Karma's claim fails under the "fraudulent" prong because Karma failed to show members of the public are likely to be deceived.  Karma does not dispute the "fraudulent" prong requires showing members of the public are likely to be deceived.  Opp'n, Dkt. No. 287-1, at 30–31.  Defendants rely on the assertion that Karma and Lordstown are not competitors, and thus there is not a likelihood of confusion.  But the evidence raises a reasonable inference that Karma and Lordstown are competitors.  See SOF Ex. 6, at 44, 77 (noting Karma's entry into the consumer SUV market); Ex. 3, at 98 (same); SGD Ex. 3, at 11 (indicating Lordstown's entry into the SUV market).  There is a genuine dispute of material fact relating to whether Karma and Lordstown are competitors.  See AK Futures LLC v. Boyd Street Distro LLC, et al., 2021 WL 4860513, at *6 (C.D. Cal. Sept. 15, 2021) ("[T]he public is entitled to a clear understanding of the source of a product and to distinguish goods among competitors.").  As such, Defendants are not entitled to summary judgment on this basis.

Next, Defendants argue Karma's claim fails under the "unlawful" prong because there are no underlying causes of action to sustain the prong.  "The California Supreme Court has given the term 'unlawful' a straightforward and broad interpretation: 'The UCL covers a wide range of conduct.  It embraces anything that can properly be called a business practice and that at the same time is forbidden by law . . . . Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices.'"  CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1107 (9th Cir. 2007).  There, the Ninth Circuit concluded the intentional interference with contract was a sufficient "unlawful" act for the purposes of the UCL.  Here, the Court denied Defendants' motion for summary judgment on the tortious interference with contract claim.  As such, Karma's claim does not fail for lack of establishing the "unlawful" prong.

Lastly, Defendants argue Karma's claim fails because Karma fails to identify the requisite elements for a constructive trust.  Karma requests a constructive trust as a remedy for Defendants violation of the UCL.  FAC, Dkt. No. 72, ¶ 246.  This trust would hold the "income, profits, commissions, fees, revenues, or other funds, received" from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

Defendants wrongful conduct.  Id.  But Defendants argue Karma fails to identify any "income, profits, commissions, fees, revenues, or other funds, received."  The Court agrees.  Karma fails to even address this argument in their opposition.  As such, Defendants are entitled to summary judgment on Karma's request for a constructive trust.  See, e.g., Blau v. YMI Jeanswear, Inc., 2004 WL 5313967, at *7 (C.D. Cal. Jan. 2, 2004).

Accordingly, the Court **GRANTS in part and DENIES in part** Defendants motion for summary judgment with respect to Count XVII.

I.    *Breach of Fiduciary Duty and Duty of Loyalty*

Karma alleges Durre, Huan, and Qin breached their fiduciary duty and duty of loyalty to Karma.  FAC, Dkt. No. 72, ¶¶ 252, 259.  Lordstown argues Karma fails to prove all the elements of breach of a fiduciary duty.

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  Tribeca Cos., LLC v. First Am. Title Ins. Co., 239 Cal. App. 4th 1088, 1114 (2015) (quoting Gutierrez v. Girardi, 194 Cal. App. 4th 925, 932 (2011)).  "Although breach of duty of loyalty and breach of fiduciary duty are separate claims, they have 'virtually identical' elements."  E.D.C. Tech., Inc. v. Seidel, 216 F. Supp. 3d 1012, 1016 (C.D. Cal. 2016).

A corporate fiduciary is someone who is "an officer who participates in management of the corporation, exercising some discretionary authority."  Enreach Tech., Inc. v. Embedded Internet Solutions, Inc., 403 F. Supp. 2d 968, 976 (2005).  "Corporate directors and officers typically are deemed to owe fiduciary duties to their employer, and non-officers also have been found to owe fiduciary duties if they participate in management."  Les Fields/C.C.H.I. Ins. Servs. v. Hines, 2016 WL 6873459, at *14 (N.D. Cal. Nov. 22, 2016).  An officer who participates in management is a fiduciary.  GAB Bus. Servs, Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 420–21 (2000), disapproved of on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004).  This is a question of fact, "that in most cases . . . will be easily met."  Id. at 421.  Lordstown argues no separate duty of loyalty exists without a fiduciary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)          Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

relationship.  Mot., Dkt. No. 272, at 28 (citing Mattel, Inc. v. MGA Entm't., Inc., 2011 WL 8427611 (C.D. Cal. Mar. 28, 2011)).[2]

Lordstown contends Durre, Huan, and Qin had at least two levels of management above them; Huan nor Qin could not enter into contract on Karma's behalf; Huan nor Qin had no employees reporting to them; and Qin did not supervise anyone's work.  Mot., Dkt. No. 272, at 29.  As such, according to Lordstown, Durre, Huan, and Qin, did not owe a fiduciary duty to Karma.  As a preliminary matter, Karma fails to dispute the characterization of Qin's participation in management.  Based on the undisputed facts asserted by Lordstown, Qin is not a fiduciary.  SGD ¶¶ 152–55.

Karma contends Durre was directly involved in hiring and Huan oversaw younger employees, both facts sufficient to show they owed a fiduciary duty.  Opp'n, Dkt. No. 287-1, at 32.  As to Huan, "Huan was not an officer of Karma and did not have authority to enter into contracts on Karma's behalf.  Huan had no direct reports at Karma, but Huan did supervise the work of other Karma employees from time to time."  SOF Ex. 47, No. 14.  The ability to enter into contracts alone does not equate to participation in management.  Thus, Huan does not owe a fiduciary duty to Karma.  As to Durre, he oversaw employees, had employees reporting to him, was not an officer, and "may have been authorized" to enter into certain contracts.  SOF Ex. 48, No. 22.  Durre also reported to the Chief Innovation Officer, a C-level executive.  SOF Ex. 43.  Based on these facts, Karma has met the "low threshold" to show Durre owed a fiduciary duty.

As such, the rest of the analysis with regard to breach of fiduciary duty will only proceed as to Durre.  Defendants are entitled to summary judgment on Count XIX with respect to Huan and Qin as neither owed a fiduciary duty.

---

[2]  While the Court need not conduct this analysis, "the Mattel case represents a minority view that has been explicitly rejected in subsequent district court decisions."  Cardinal v. Lupo, 2019 WL 4450859, at *11 (N.D. Cal. Sept. 17, 2019) (collecting cases).  Courts have instead found that even lower-level employees may owe a duty of loyalty that gives rise to a claim for breach of duty of loyalty. Id. (collecting cases).  As such, this Court will follow the majority rule that "California law recognizes a claim for breach of an employee's duty of loyalty while still employed."  Id. at *12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

Defendants argue the fiduciary duty claim is barred because the conduct at issue are covered by Durre's employment agreement. In AMN Healthcare, Inc. v. Aya Healthcare Services, Inc., the court held that the breach of duty of loyalty failed because the duty arose from the confidentiality and nondisclosure agreement. 28 Cal. App. 5th 923, 942 (2018). Karma alleges Durre violated his fiduciary duty by working for Lordstown and Karma concurrently; sabotaging the Endurance Project, recruiting Karma employees, conspiring with Lordstown, and misappropriating confidential information. FAC, Dkt. No. 72, ¶ 260. At oral argument, Karma argued the claim for Durre's breach of fiduciary duty can in fact exist independent on the breach of contract claim. While true, Karma's claims against Durre rest on his fiduciary duties stemming from his contractual obligations to Karma. See FAC, Dkt. No. 72, ¶ 259 ("As employees of Karma, Durre, Huan, and Qin owed a fiduciary duty to Karma by virtue of their duty to act for the benefit of Karma in matters *connected with their contractual and employment relationship with Karma*, and by the special confidence reposed in them by Karma in connection with their exposure and access to Karma's Confidential Information." (emphasis added)). Defendants correctly point out the relevant conduct is already covered in Durre's "Confidential Information, Invention Assignment and Arbitration Agreement." See SOF Ex. 14. As such, Durre's duty arises from the agreement and "breaching an alleged contract does not create a tort cause of action." AMN Healthcare Servs., Inc., 28 Cal. App. 5th at 941. As such, the claim for breach of fiduciary duty against Durre fails.

Karma's breach of duty of loyalty claims likewise rely on the same conduct covered by Durre, Huan, and Qin's confidentiality agreements. See SOF Exs. 14, 15, 16. For those same reasons above, Karma's breach of duty of loyalty claims also fails.

Accordingly, the Court **GRANTS** Defendants motion for summary judgment on Counts XVIII & XIX.

J.    *Aiding and Abetting Breach of Duty of Loyalty*

Karma alleges Lordstown and Post aided and abetted the breach of duty of loyalty. FAC, Dkt. No. 72, ¶¶ 265–73. A theory of aiding and abetting requires "the actual commission of a tort." Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566; see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

also <u>Harrison</u> v. <u>Downey</u> <u>S&L</u> <u>Ass'n</u>, 2009 U.S. Dist. LEXIS 71638, at *12 (S.D. Cal. Aug. 14, 2009) ("Because the Court has dismissed Plaintiff's claim for breach of fiduciary duty, there is no underlying tort supporting Plaintiff's fourth cause of action."). As discussed above, Karma's claim for breach of duty of loyalty fails. Thus, Karma's claims for aiding and abetting breach of duty of loyalty also fails because there is no underlying tort.

Accordingly, the Court **GRANTS** Defendants motion for summary judgment on Counts XX & XXI.

*K.    Conspiracy*

Defendants argue they are entitled to summary judgment because Karma fails to demonstrate a common plan or "mutual understanding or agreement." Mot., Dkt. 272, at 35.

"Conspiracy is . . . a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." <u>Applied</u> <u>Equip.</u> <u>Corp.</u> v. <u>Litton</u> <u>Saudi</u> <u>Arabia</u> <u>Ltd.</u>, 7 Cal. 4th 503, 510–11 (1994) (internal quotations omitted). Thus, a conspiracy requires the formation and operation of a conspiracy, as well as damage to the plaintiff from acts done to further the conspiracy. <u>Id.</u> at 511.

Defendants contend Karma has not demonstrated any facts indicating a common plan to (1) sabotage the Endurance project at Karma; (2) exfiltrate confidential information from Karma, or (3) wrongfully raid Karma's employees. Mot., Dkt. 272, at 35. Karma argues, as described in their factual background section, the common plan was to hire Karma employees who worked on Endurance, and use Durre's position to sabotage and end the relationship with Lordstown. Opp'n, Dkt. No. 287-1, at 32–33. The Court finds there are genuine disputes of material as to whether there was a common plan as to all of the above. <u>See</u>, <u>e.g.</u>, ASOF Ex. 65, at 342–43 ("We also discussed strategies to avoid legal issues."); <u>Id.</u> ("Didn't want them to know we have already been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

working on this."); Ex. 19 ("Steve is still thinking about timing — contract the work to Karma with this team intact and then hire the team if/when Karma goes insolvent (hopefully 6 months or more from now)."); Ex. 70 ("I propose hiring Joe Durre and his furloughed team as our west coast infotainment/connectivity team to develop Endurance's system"); Ex. 85 ("Proposal: How to Proceed - with Karma or Joe Durre LLC"); Exs. 148, 149, 150, 177 (sending confidential information to Lordstown employees).[3]

Accordingly, the Court **DENIES** Defendants' motion for summary judgment with respect to Count XXII.

*L.    Fraud*

Karma alleges a cause of action for fraud against Lordstown based on Lordstown's misrepresentations during the due diligence period for the Endurance Project and in the Letter of Intent.  FAC, Dkt. No. 75, ¶ 290.  Lordstown argues Karma's claim fails because Karma cannot show lack of intent; that Karma relied on Lordstown's alleged promise; or damages.  Mot., Dkt. No. 272, at 36.

Lordstown argues it did in fact engage in substantive good-faith negotiations, and thus Karma cannot show lack of intent to negotiate in good faith.  Id.  Lordstown argues the discussions between Lordstown and Karma, exchange of proposals, and disclosure of information show Lordstown engaged in good-faith negotiations.  See SOF ¶¶ 221–37 and related exhibits.  But Karma points to evidence indicating Lordstown "strung Karma along" and continued to "scheme to poach Karma's employees."  See Opp'n, Dkt. No. 287-1, at 34–35; see, e.g., ASOF Ex. 84 ("LMC is waiting for k [Karma] to go under.); Ex. 184 ("We have people in mind, but I also want to post the positions externally.  This will protect us from any issues with Karma, . . ."); Ex. 73 ("Also, I hired Joe Durre but it must never be mentioned to Karma.  He is on vacation and technically still with Karma,

---

[3] While the Court makes reference to *some* Exhibits, the Court relied on all of the Exhibits cited by the parites.  As such, the Exhibits referenced here were not the only Exhibits the Court relied on analyzing Defendants' motion.  Together, the Exhibits raise a genuine dispute of material fact as to whether the Defendants engaged in a common plan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)                   Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

so if he is on a call with Karma people involved, treat him like Karma.  To avoid lawsuits, we must not let Karma know - they will find out on their own several months from now.").[4]  This evidence raises a genuine dispute of material fact as to whether Lordstown actually engaged in good-faith negotiations, or sought to poach Karma's employees all along.

Lordstown argues Karma cannot show it justifiably relied on Lordstown alleged promise.  Mot., Dkt. No. 272, at 36.  Karma relies on a quote from Copeland stating "California law has long recognized a claim for fraud under circumstances like those presented by Karma here, where '[a] promise made without any intention of performing it.'"  Opp'n, Dkt. No. 287-1, at 35 (quoting Copeland, 96 Cal. App. 4th at 1261).  But a fuller reading of Copeland is fatal to Karma's claim.  In the following paragraph, the court states: "Thus, we conclude neither unjust enrichment nor promissory fraud provide a party an adequate vehicle for relief when its negotiating partner breaks off negotiations or negotiates in bad faith."  Copeland, 96 Cal. App. 4th at 1261.  The evidence Karma points to does create a genuine dispute of fact as to whether Lordstown schemed to poach Karma employees.  But there is no evidence showing Lordstown induced Karma to enter into the LOI by fraud.

Lastly, Lordstown argues Karma's fraud claim fails for lack of reliance damages.  See Reply, Dkt. No. 305, at 17–18.  But as discussed above, there is a genuine dispute of material fact as to reliance damages.  See infra Part III.F.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment with respect to Count XXIII.

*M.    RICO*

Section 1962(c) of the RICO statute prohibits any person from conducting or participating in an enterprise with income derived from a pattern of racketeering activity.  18 U.S.C. § 1962(c).  To state a claim for violation of section 1962(c), the plaintiff must

---

[4] See supra n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

allege that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005).

        1.   RICO enterprise

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name. The term enterprise is defined in 18 U.S.C. § 1961(4) as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Id. (internal quotations and citations omitted). "The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute." United States v. Turkette, 452 U.S. 576, 583 (1981). "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007) (en banc). To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'" Id. at 552 (quoting Turkette, 451 U.S. at 583).

There is a genuine dispute of material fact as to whether Defendants had a common purpose to engage in a course to poach Karma employees and misappropriate Karma's confidential and trade secrets. See ASOF Ex. 66 ("From Joe's perspective, he and his managers are excited about the possibility to be part of LMC and to develop & launch the Endurance's architecture and software. Joe's only worry is how to do this without Joe being sued by Karma."). There is also a genuine dispute of material fact as to whether Defendants engaged in a formal or informal on going organization to achieve that purpose. See id. Ex. 65 ("I'm rooting for LMC WC [LMC West Coast]"); Ex. 46 ("[I]t needed to be more staggered but we'll need to keep everything as quiet as possible."). And there is evidence showing Defendants engaged this month long scheme, and not in isolation. See id. Ex. 132 ("That said, we could acquire the team 4-6 months from now

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                    Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

if/when Karma becomes insolvent.").[5]

Accordingly, Defendants motion for summary judgment based on lack of an enterprise under § 1962(c) fails.

2.    Pattern of racketeering activity

The RICO statute defines "pattern of racketeering activity" to require that the defendant commit at least "two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5).  Two predicate acts by themselves are not enough establish a pattern, however.  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 238 (1989).  The plaintiff must also allege that the predicate acts were "related" and "continuous."  Id. "'Continuity' is both a closed- and open-ended concept, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  H.J. Inc., 492 U.S. at 241.

Defendants argue Karma cannot establish a pattern because the alleged conduct is a "single episode having a singular purpose of."  Mot., Dkt. No. 272, at 38.  Karma argues the pattern of racketeering activity present is the Defendants engaged in a pattern of, on separate occasions, of stealing Karma's trade secrets.  Opp'n, Dkt. No. 287-1, at 38–39.

As the Ninth Circuit noted in Sever v. Alaska Pulp Corp., "[t]he identification of a "pattern of racketeering activity" has proven a challenging task for courts."  978 F.2d 1529, 1535.  "In [Sever], the Circuit identified two factors that led it to conclude that no 'pattern' existed in the case before it.  First, 'although [Plaintiff] alleges a number of "acts," [Defendants'] collective conduct is in a sense a single episode having the singular purpose of impoverishing [Plaintiff], rather than a series of separate, related acts,' and second 'there is no suggestion that these defendants would have continued [their criminal acts], or that they ever intended anyone but [Plaintiff] any harm.'"  GSI Tech. v. United Memories, Inc., 2014 WL 1572358, at *4 (N.D. Cal. Apr. 18, 2014).  In GSI Technology,

---

[5] See supra n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 20-02104 JVS (DFMx) | Date | November 18, 2022 |
|---|---|---|---|

| Title | Karma Automotive LLC v. Lordstown Motors Corp. et al. |
|---|---|

the court found the fraudulent acts were all done to accomplish a single goal, and there was only a single victim. Id. at *5. These factors combined establish there was not a pattern of racketeering activity. Id. Karma argues GSI Technology is unpersuasive. Karma relies on Uthe Tech. Corp. v. Allen, but the court there distinguished its case from GSI Technology because the "alleged conspiracy intended to siphon off sales . . . indefinitely into the future." 2016 WL 1427557, at *3 (N.D. Cal. Apr. 12, 2016) (emphasis added). Karma also relies on Kearney v. Foley & Lardner, LLP for the proposition that plaintiff "was not required to show multiple schemes and multiple victims to demonstrate a pattern of racketeering activity." 607 Fed. Appx. 757, 759 (9th Cir. 2015) (mem.). But as the court in Palantir Tech. Inc. v. Abramowitz noted, "the Ninth Circuit's decisions in Sever and Medallion are both precedential and sufficiently analogous . . . the Court need not rely on an unpublished memorandum disposition [in Kearney] or district court cases to reach its decision." 2021 WL 2400979, at *8 n.2 (N.D. Cal. June 11, 2021). In fact, Palantir is analogous to the present case. There, the court dismissed the plaintiff's RICO claim because the case, "a single alleged fraud—theft of Palantir's trade secrets in order to establish competing businesses to benefit the Abramowitz enterprise—was committed against a single alleged victim—Palantir." Id. at *8–9.

Based on the above case law, and with the evidence on the record, no reasonable fact finder could find Defendants engaged in a pattern of racketeering activity. While Defendants alleged conduct may have been different acts of misappropriating information and sending it via email or cloud-based platforms, it constitutes a "single episode" for the purposes of a RICO action. The Defendants engaged in a singular goal, as even Karma admits, of stealing Karma's trade secrets through these acts. And Karma is the singular victim. See Sever, 978 F.2d at 1535 (discussing Medallion Televsion Enters, Inc. v. SelecTV of Cal., Inc., 833 F.2d 1360 (9th Cir. 1987)). All of these factors combined establish Defendants were not engaged in a pattern of racketeering activity.

Accordingly, the Court **GRANTS** Defendants motion for summary judgment on Count XXIV.

4.    RICO conspiracy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

Section 1962(d) of the RICO statute allows anybody from conspiring to violate RICO.  18 U.S.C. § 1962(d).  To allege a RICO conspiracy under section 1962(d), the plaintiff need only show an agreement to violate RICO.  Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 774–75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy.").  Moreover, "[t]he illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved."  Id. at 775.

Defendants argue Karma's RICO conspiracy fails because there is no underlying RICO violation, and Lordstown cannot conspire with its own employees and officers.  At oral argument, Defendants argued there can be no RICO conspiracy without a RICO claim when the RICO claim is dismissed because of a lack of a pattern of racketeering activity.  "[It is] well-established principles and contemporary understanding demonstrate that, although a [RICO] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, it suffices that he adopt the goal of furthering or facilitating the criminal endeavor, and he need not agree to undertake all of the acts necessary for the crime's completion."  Salinas v. United States, 522 U.S. 52, 53 (1997).  Nonetheless, the Ninth Circuit routinely affirms a courts' decision to dismiss a RICO conspiracy claim when the substantive RICO violation is inadequately plead on *a motion to dismiss*.  See, e.g., Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000) ("In particular, the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy.  We agree."); McMillan v. Chaker, 791 Fed. Appx. 666, 667 (9th Cir. 2020) (mem.) (same); Chang v. Noh, 787 Fed. Appx. 466, 467 (9th Cir. 2019) (mem.) (same); De Los Angeles Gomez v. Bank of Am., N.A., 642 Fed. Appx. 670, 676 (9th Cir. 2016) (same).  But see United States v. Christensen, 828 F.3d 763, 780 (9th Cir. 2015) ("[A] RICO conspiracy under § 1962(d) requires only that the defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it."); United States v. Fernandez, 388 F.3d 1199, 1259 (9th Cir. 2004) (upholding a § 1962(d) conviction even though there was no § 1962(c) conviction); Morning Star Packing Co. v. SK Foods, L.P., 2018 WL 3740561, at *8 (E.D. Cal. Aug. 7, 2018) (discussing RICO conspiracy); Smith v. Berg, 247 F.3d 532, 537 (3d Cir. 2001) ("Salinas makes 'clear that § 1962(c) liability is not a prerequisite to § 1962(d) liability.'"); but cf. United States v. Fiander, 547 F.3d 1036,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)          Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

1042 (9th Cir. 2008) ("Thus, we have held that a conspiracy conviction may be sustained even where the goal of the conspiracy is impossible."). All of the relevant authorities in Defendants favor apply at the motion to dismiss stage. As the First Circuit aptly noted, "[a] conspiracy claim under section 1962(d) may survive a factfinder's conclusion that there is insufficient evidence to prove a RICO violation, but if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." Efron v. Embassy Suies (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000) (internal citations omitted). Defendants do not cite to any Ninth Circuit authority indicating a dismissal of a RICO conspiracy at the summary judgment stage is warranted based on finding a lack of an underlying RICO violation.

Defendants correctly point out "a corporation cannot conspire with itself or its employees because it can act only through its officers and employees." See U.S. Concord, Inc. v. Harris Graphics Corp., 757 F. Supp. 1053, 1061 (N.D. Cal. 1991). But as Karma notes, the alleged conspiracy is between all Defendants, including the Karma employees (who were working for Karma at the time). Opp'n, Dkt. No. 287-1, at 40. Even the Complaint itself alleges "LMC and the LMC Individual Defendants conspired with each other and with the Former Employee Defendants at, near, or around the time of their departure dates from Karma." FAC, Dkt. No. 72, ¶ 317(b). And the evidence shows the Karma employees could have in fact agreed to conspire. See SGD Exs. 19, 65, 66, 87, 107, 141. As such, there is a genuine dispute as to the conduct between the Former Employee Defendants and the Lordstown Employee Defendants.

Accordingly, the Court **DENIES** Defendants motion for summary judgment on Count XXV.

*N.    Violation of Lanham Act*

To show trademark infringement under the Lanham Act, the plaintiff must show that (1) the plaintiff owns a valid trademark; (2) the defendant is using the plaintiff's trademark without the plaintiff's authorization; and (3) the defendant's use of the trademark likely confuses consumers. Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (citing Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047, 1053 (9th Cir. 1999)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

Defendants argue Karma's claim for violation of the Lanham Act fail because there is no evidence of: use of a trademark in a confusing manner; single specific false or misleading advertisement, promotion, or other representation of fact; and likelihood of consumer confusion. The Court addressed the evidence of likelihood of consumer confusion previously in this Order. As such, the remaining analysis will only address Defendants' first two arguments.

Karma argues the present case is a "reverse passing off" case and therefore Karma need not prove Defendant is using their trademark. Opp'n, Dkt. No. 287-1, at 41.

"Reverse passing off is accomplished 'expressly' when the wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer." Cleary v. News Corp., 30 F.3d 1255, 1261 (9th Cir. 1994) (quoting Shaw v. Lindheim, 919 F.2d 1353, 1364 (9th Cir. 1990)). But reverse passing off can also occur "by selling or offering for sale another's product that has been modified slightly and then labeled with a different name." Id. (quotations and citations omitted). Karma contends their claim is viable because Lordstown is "marketing a product designed, developed, and manufactured based on Karma's technology." Opp'n, Dkt. No. 287-1, at 41.

As the Supreme Court noted, "as used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 32 (2003). Instead, "the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Id. at 37. Karma relies on Luxul Tech. Inc. v. Nectarlux, LLC. 78 F. Supp. 3d 1156 (N.D. Cal. 2015). But in Luxul, defendants replaced plaintiff's name on the actual goods with defendant's name and sold that product. Karma does not allege Lordstown is passing off Karma product as Lordstown product, either as a vehicle or as a software. Instead, Karma's main contention is that Lordstown stole Karma's code, incorporated into their product, and is now selling that product. Opp'n, Dkt. No. 287-1, at 41. There is no evidence or allegations showing Lordstown sold the actual Karma software or vehicles labeled as Lordstown products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)          Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

And Courts have regularly dismissed reverse passing off claims similar to Karma's. See e.g., Smartix Intern. Corp. v. Mastercard Intern. LLC, 2008 WL 4444554, at *6 (S.D.N.Y. Sept. 30, 2008) (noting "[a]llegations that defendant used plaintiff's patented technology to develop its product failed to state reverse palming off claim because the Lanham Act only protects the tangible products, not the underlying proprietary technology."); Gen. Univ. Sys., Inc. v. Lee, 379 F.3d 131, 149 (5th Cir. 2004) (holding that a viable reverse passing off claim requires " taking tangible copies of its software, removing its trademarks, and selling them as its own"). As a matter of law, Karma's claim fails.

Additionally, Defendants points out that there is no evidence showing Lordstown used Karma's trademark in a confusing manner or that there is a specific misleading advertisement, promotion, or other representation of fact. Karma fails to point to any evidence indicating otherwise.

Accordingly, the Court **GRANTS** Defendants motion for summary judgment on Count XXVI.

*O.    Damages*

Defendants contend all of Karma's allegations for damages fail as a matter of law. The Court will discuss each in turn.

1.    Lost profits

"Under California law, a plaintiff seeking to recover lost profits must offer evidence sufficient to show, with reasonable certainty, both the occurrence and extent of the claimed lost profits." Goodness Films, LLC v. One, LLC, 2014 WL 12594201, at *2 (C.D. Cal. Aug. 28, 2014) (citing Sargon Enters., Inc. v. Univ. of S. Cal., 55 Cal. 4th 747, 773–74 (2012)). "While it is true that a plaintiff need not prove the amount of his or her losses with absolute precision-particularly where the defendant's misconduct has made the amount difficult to ascertain—he or she has the "'burden to produce the best evidence available in the circumstances to attempt to establish a claim for loss of profits.'" Id. (quoting S.C. Anderson, Inc. v. Bank of Am., 24 Cal. App. 4th 529, 536 (1994)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title      Karma Automotive LLC v. Lordstown Motors Corp. et al.

Karma argues McGavock's report sufficiently calculates damages based on his own expertise, industry standard, and information provided by Lordstown.  See Opp'n, Dkt. No. 287-1, at 41–42.  Defendants argue Karma fails to establish any of the assumptions underlying its damages calculations were reasonably certain to occur.  Mot., Dkt. No. 272, at 43–44.

Defendants rely on a number of cases to argue, under different theories, that Karma cannot establish lost profits.  Defendants reliance on Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp., is unpersuasive.  2011 WL 13143358, at *3 (N.D. Cal. Nov. 23, 2011).  There, the "projection of lost profits was made on the basis of a speculative, grandiose business plan which made assumptions that were totally unrealistic and unreasonably optimistic."  Id.  The business plan in that case involved no experienced employees, questions of legally selling in the United States, astronomical rates of sales, and lack of financing and detailed operational plan.  That is unlike the case here.  Defendants reliance on Maggio, Inc. v. United Farm Workers, is likewise unpersuasive.  227 Cal. App. 3d 847 (1991).  There, the court found lost profits could be calculated with reasonable certainty.  A strike of workers did not turn the plaintiff into a new business where reasonably lost profits could not be calculated.  And in Grouse River Outfitters Ltd. v. Oracle Corp., the fact that the sales were sixty percent lower than projected was not the determinative factor in the court rejecting the lost profits calculation.  2019 WL 8918902, at *8 (N.D. Cal. June 21, 2019).  It was the fact that the damages expert did not address the shortfall that "render[ed] his figures unreliable."  Finally, Defendants reliance on Magnetar Technologies Corp. v. Intamin, Ltd. is also unpersuasive because the expert there "only compared Magnetar's 'actual [results] versus their business plan[, which] showed that they did not achieve their business plan.'"  801 F.3d 1150, 1159 (9th Cir. 2015).

Karma points to evidence of the financial projections for the development of Lordstown's infotainment system.  See ASOF Ex. 137.  Karma contends the projections were made prior to the litigation, and McGavock relied, in part, on the projections.  See Opp'n, Dkt. No. 287-1, at 45–46; see also Vieste, LLC v. Hill Redwood Dev., Ltd., 2011 WL 5914019, at *10 (N.D. Cal. Nov. 28, 2011) ("[C]ourts may consider, among other factors, expert testimony, the experience of similar businesses, whether the market is established, market studies, the plaintiff's experience in the field, and prelitigation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)        Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

projections." (citing Parlour Enters, Inc. v. Kirin Grp., Inc., 152 Cal. App. 4th 281, 288 (2007))). Additionally, Defendants rely on McGavock's statement that the lost profits calculations were "not real world information." Mot., Dkt. No. 272, at 44. But McGavock's Change Sheet indicates the entire phrase "it is not real world information" should be "based on real world information." ASOF Ex. 102, at 2. So in fact, a reasonable inference is that McGavock's opinions are based on real world information. Based on McGavock's testimony and his report, there is a genuine dispute of material fact as to lost profits. The evidence before the Court is nowhere near as speculative or similar as it is in the cases relied on by Defendants. Accordingly, Defendants are not entitled to summary judgment on this basis.

2.    Unjust enrichment

"A defendant's unjust enrichment is typically measured by the defendant's profits flowing from the [trade secret] misappropriation. A defendant's profits often represent profits the plaintiff would otherwise have earned. Where the plaintiff's loss does not correlate directly with the misappropriator's benefit, as is the case here, the problem becomes more complex. There is no standard formula to measure it. A defendant's unjust enrichment might be calculated based upon cost savings or increased productivity resulting from use of the secret. Increased market share is another way to measure the benefit to the defendant. Recovery is not prohibited just because the benefit cannot be precisely measured. But as with any other pecuniary remedy, there must be some reasonable basis for the computation." Ajaxo Inc. v. E*Trade Fin. Corp., 187 Cal. App. 4th 1295, 1305 (2010) (internal citations omitted); see also Sonoma Pharm., Inc. v. Collidion Inc., 2018 WL 3398940, at *6 (N.D. Cal. June 1, 2018).

Defendants argue Karma's unjust enrichment claim based on saved research and development costs fails because Karma fails to calculate the costs Lordstown saved. Mot., Dkt. No. 272, at 45. Instead, Defendants argue Karma aggregated the development cost for the entire vehicle systems, of which the misappropriated materials were only a small part of. Id. But Defendants fail to cite any relevant legal authority supporting their position except Baker v. Cottrell, Inc., which deals with proximate causation in the strict products liability context, not damages or unjust enrichment. See 2017 WL 6730572 (E.D. Cal. Dec. 29, 2017). But see Workplace Tech. Rsch., Inc. v. Project Mgmt. Inst.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)          Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

Inc., 2021 4895977, at *17 (S.D. Cal. Oct. 20, 2021) ("As for proximate causation, this is rarely an issue suitable to disposition by summary judgment when material facts are disputed.") (internal quotations and citations omitted)).

Karma points to evidence indicating Karma spent approximately $125 million over six years in research and development costs for the E/E Architecture, Power Moding, and Infotainment projects. See SOF Ex. 62, Schedules 3.1, 3.2. Meanwhile, Lordstown spent approximately $21 million over three years on "Karma Related Projects," including Electrical Architecture, Power Moding, and Infotainment projects. See id. Ex. 272. As the court in Ajaxo Inc. stated "unjust enrichment might be calculated based upon cost savings or increased productivity resulting from use of the secret," which could reasonably be the case here. 187 Cal. App. 4th at 1305 (citing Bourns, Inc. v. Raychem Corp., 331 F.3d 704, 709–10 (9th Cir. 2003)). Lordstown's expert stated "if [Lordstown] benefitted . . . they benefitted by not having to create the basic outline of" the 2010 Fisker document. SOF Ex. 275, at 199. But he goes on to state "it doesn't appear to me that they gained any significant value from doing that." Id. at 201. Nonetheless, there is a genuine dispute of material fact as to Lordstown's cost savings from their alleged misappropriation of trade secrets.

The above analysis similarly applies to Defendants argument that Karma cannot establish unjust enrichment damages based on Lordstown's alleged accelerated timeline. Mot., Dkt. No. 272, at 46. Additionally, Defendants argue Karma's reliance on the 30-month timeline is too speculative to support Karma's damages claim. Id. But in his deposition testimony, McGavock agrees the 30 month timeline is in reference to the model where the number of months used can be adjusted, including the use of 30, or 78 months. SOF Ex. 68, at 178. The evidence does not undisputedly show Karma's damages explicitly relied on this 30 month timeline. As such, there is a genuine dispute as to whether there are unjust enrichment damages based on the accelerated timeline.

Next, Defendants argue Karma cannot establish any investments made because of the technologies at issue in the case. Mot., Dkt. No. 272, at 47. Karma points to evidence indicating Lordstown raised over $1 billion in financing after the alleged misappropriation of Karma's trade secrets and Lordstown's investor materials represent Lordstown has "innovative technology drives high margins." See SOF Ex. 67, ¶ 218; Ex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)                    Date   November 18, 2022

Title      Karma Automotive LLC v. Lordstown Motors Corp. et al.

3.

At oral argument, Defendants argued there is no evidence at all in the record indicating a causal connection and Karma's argument relies on a *post hoc, ergo propter hoc* argument.  Mot., Dkt. No. 272, at 47–48 (citing Franklin v. Dynamic Details, Inc., 116 Cal. App. 4th 375, 393–94 (2004)).  The court in Franklin found the loss of business after the delivery of certain libelous emails was insufficient in of itself to establish causation.  Id.  Karma alleges Lordstown raised over $1 billion in capital after the alleged misconduct occurred.  Opp'n, Dkt. No. 287-1, at 48.  Under Franklin, that assertion alone would certainly be a *post hoc, ergo propter hoc* argument and defeat Karma's claim.  But Karma also contends Lordstown's investor materials, which contained important representations to investors, were based on Defendants misappropriation and use of Karma's trade secrets.  See ASOF, Dkt. No. 287-2, ¶ 456.  The Court finds this creates a genuine dispute as to whether investors may have been prompted to raise capital, in part or in full, based on Defendants alleged misconduct.  This is an factual connection for the jury to assess, not for the Court on summary judgment.  See Workplace Tech. Rsch., Inc. v. Proj. Mgmt. Inst., 2021 WL 4895977, at *17 (S.D. Cal. Oct. 20, 2021) (quoting Lombardo v. Huysentruyt, 91 Cal. App. 4th 656, 666 (2001)).

Lastly, Defendants argue Karma cannot establish damages based on the Lordstown Employee Defendants' gains from selling their Lordstown stock. Defendants point out Karma's damages theory here primarily relies on the fact that "defendants actually realized gains during and after the period of alleged wrongful conduct." SOF Ex. 68, at 230.  Additionally, Defendants argue the lack of an event study or analysis linking the price of the stocks to the alleged misconduct defeats Karma's damages theory. Defendants rely on In re Imperial Credit Industries, Inc. Securities Litigation for the proposition that Karma's damages claim here fails for lack of an event study or like analysis.  252 F. Supp. 2d 1005, 1014.  There, the court held "[a] proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong."  In re Imperial Credit Indus., 252 F. Supp. 2d at 1014–15.  McGavock did not affirmatively answer whether or not he conducted such an analysis.  See SOF Ex. 68, at 229–36.  But as discussed by the court in In re Imperial Credit Industries, and the cases cited there, an event study or analysis is required in *securities cases*.  Id. (discussing securities litigation cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 20-02104 JVS (DFMx)          Date   November 18, 2022

Title   Karma Automotive LLC v. Lordstown Motors Corp. et al.

Defendants, as the moving party, fail to provide sufficient Ninth Circuit authority requiring an event study or similar analysis in cases similar to here where an unjust enrichment theory is based on realized gains from selling stock. Given the analysis and evidence discussed above, and the subsequent profits by the Lordstown Employee Defendants from the stock sales, there is a genuine dispute of material fact as to whether there is a causal connection between the alleged wrongful conduct and the Defendants' profits from the stock sale. See SOF Ex. 62, 274–77; see also Digital Envoy, Inc. v. Google, 2005 WL 29999364, at *5 (N.D. Cal. Nov. 8, 2005). This is a triable issue more appropriate for the jury, not the Court on summary judgment.

To the extent any part of Defendants motion for summary judgment relies on Karma's failure to establish damages, the motion is **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants motion for summary judgment.

The Court **GRANTS** Defendants' motion for summary judgment on Counts XIV, XVI, XVIII, XXIII, XIX, XX, XXI, XXIV, and XXVI.

The Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment on Counts I, II, V, VI, VII, VIII, IX, X, XI, XII, and XVII.

The Court **DENIES** Defendants' motion for summary judgment on Counts III, IV, XIII, XV, XXII, XXV, XXVII, XXVIII, and Damages.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 20-02104 JVS (DFMx)                Date    November 18, 2022

Title    Karma Automotive LLC v. Lordstown Motors Corp. et al.

|  |  | : | 0 |
|---|---|---|---|
|  | Initials of Preparer | lmb |  |