THOMAS R. LUCCHESI (*admitted pro hac vice*)
*tlucchesi@bakerlaw.com*
TERRY M. BRENNAN (*admitted pro hac vice*)
*tbrennan@bakerlaw.com*
ANTHONY B. PONIKVAR (*admitted pro hac vice*)
*aponikvar@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:    (216) 621-0200
Facsimile:    (216) 696-0740

RYAN D. FISCHBACH (SBN 204406)
*rfischbach@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, California 90025-0509
Telephone:    (310) 820-8800
Facsimile:    (310) 820-8859

*Attorneys for Defendants*
LORDSTOWN MOTORS CORP., *et al.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KARMA AUTOMOTIVE LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LORDSTOWN MOTORS CORP., an Ohio corporation; STEVE BURNS, an individual, JOHN LEFLEUR, an individual, DARREN POST, an individual, RICH SCHMIDT, an individual, ROGER J. DURRE, an individual, HONG XIN HUAN (A.K.A. "GEORGE" HUAN), an individual, BEI QIN, an individual, STEPHEN PUNAK, an individual, CHRISTOPHER KIM, an individual, DAN ZHIHONG HUANG, an individual, PUNAK ENGINEERING, INC., a California corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 8:20-cv-02104-JVS-DFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER STRIKING IN PART DEFENDANTS' DAMAGES EXPERT REPORT FOR VIOLATION OF COURT ORDERS BARRING ALTERNATIVE DAMAGES CALCULATIONS, UNDISCLOSED EXPERT OPINIONS, AND UNDISCLOSED EVIDENCE**<br><br>[*Filed concurrently with Declaration of James E. Pampinella*] |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**INTRODUCTION**

Karma asks this Court to strike portions of the expert report submitted by Defendants' replacement damages expert, Jim Pampinella, alleging that Mr. Pampinella's report: (1) exceeds the limitations set by this Court; (2) relies on "previously undisclosed" opinions of other experts; and (3) relies on "new evidence" unrelated to updated sales or production volumes. These arguments are both factually and legally baseless, relying on a combination of inapposite case law and a mischaracterization of the limitations placed by this Court on Mr. Pampinella's report.

Indeed, Karma's motion is a transparent attempt to relitigate the outcome of the March 23, 2023 telephone conference—held at Karma's request—during which this Court made clear that "[t]he only two restrictions" on Mr. Pampinella's report would be that he be "shielded from the Sowards[] report" and that his report include "no alternative damage calculation." (Mar. 23, 2023 Tr., Dkt. 530-3, at 13:9-11.)[1]

Because Mr. Pampinella did nothing to the contrary, the Court should deny Karma's motion to strike.

**ARGUMENT**

**I.    Mr. Pampinella's expert report does not contain any alternative damage calculations.**

Karma first seeks to strike the following seven opinions from Mr. Pampinella's report that purportedly contain "alternative damages calculations" in violation of this Court's prior instruction:

---

[1] Karma nevertheless continues to invoke language in the Court's March 13 Order, including a statement that any replacement expert "shall not exceed the factual limits of the Sowards Report." (Mot. to Strike, Dkt. 530, at 3, 4.) But not only did the Court subsequently clarify at the March 23 conference that Mr. Pampinella would be permitted to consider information outside of what was considered by Mr. Sowards, but Karma fails to identify any specific opinions or statements in Mr. Pampinella's report that it claims should be stricken as "exceed[ing] the factual limits of the Sowards Report."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  (Mot. to Strike, Dkt. 530, at 5-6 (citations omitted).)

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

But the above statements identified by Karma either: (1) contain no calculations at all; or (2) merely illustrate how the damage calculations made by *Karma*'s damages expert, Daniel McGavock, would change if McGavock used real-world data, as this Court specifically endorsed during the March 23 conference.

First, as Karma acknowledges, this Court made clear during the March 23 telephone conference that the prohibition on an "alternative damage calculation" did *not* prevent Mr. Pampinella from applying updated information on Lordstown's actual vehicle sales to the damage model proffered by *Karma's* damages expert, Daniel McGavock. (*See, e.g.,* Mot. to Strike, Dkt. 530, at 2 (noting that "the Court indicated that Pampinella may consider certain evidence regarding sales and production numbers past the discovery deadline").) As counsel for Defendants explained during that conference:

> [Karma]'s expert has made some hypothetical calculations based upon projections of sales of vehicles, hundreds of thousands of vehicles. We know today that that's not true. . . . [Therefore] it would be appropriate for our expert to say, look, the hypotheticals done by Mr. McGavock, the plaintiff's expert, envision hundreds of thousands of vehicles, and when you run hundreds of thousands of vehicles through his model, it gives the number X, which is his billion dollars. If you run nine vehicles through his calculations, it gives a different number. . . . I want to be clear that that's something that I believe will be part of an expert's opinion in this case.

(Mar. 23, 2023 Tr., Dkt. 530-3, at 11:12-12:7.)

Following a lengthy objection by Karma's counsel (*id.* at 12:8-25), the Court ruled that it would "allow [Mr. Pampinella] to consider [the actual sales information] past the discovery cut-off," recognizing that "it would be unfortunate not to deal with the real facts" if—as is the case here—"plaintiff's report was done [based on a] projection . . . [and] the reality just doesn't validate that." (*Id.* at 13:3-16.) Thus, the Court concluded that "[t]he only two restrictions" on Mr. Pampinella were that he be

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  "shielded from the Sowards[] report" and that his report include "no alternative

2  damage calculation." (*Id.* at 13:9-11.)

3      The first three items identified in Karma's motion—Items #1, #2, and #3 (Mot.

4  to Strike, Dkt. 530, at 5)—follow those directives to the letter. Rather than proposing

5  an alternative damage model, Mr. Pampinella merely applies real-world information

6  to the damage model propounded by *Karma's* damage expert to demonstrate the

7  absurdity of Karma's assumptions, exactly as defense counsel previewed and this

8  Court endorsed during the March 23 conference.

9      Both Item #1 and Item #2 make this clear on their face, explaining that Mr.

10 Pampinella's conclusions are derived from ███████████████████████████

11 ████████████████████████████████████████████████ (Mot. to

12 Strike, Dkt. 530, at 5; Pampinella Report, Dkt. 530-2, at 93.)

13     Similarly, Item #3 reflects the results of *Mr. McGavock's* calculation of the net

14 present value of Lordstown's alleged ██████████ "head start" if that "head start" was

15 based on Lordstown's actual vehicle sales and actual earnings as reported in its public

16 filings for 2020, 2021, and 2022, rather than the hypothetical numbers relied on by

17 Mr. McGavock. (Mot. to Strike, Dkt. 530, at 5; Pampinella Report, Dkt. 530-2, at

18 ¶¶ 103-04.) Again, this is exactly what the Court permitted at the March 23

19 conference.

20     Moreover, the opinion in Item #3—namely, that the net present value of any

21 purported "head start" would actually be *negative* because Lordstown only

22 experienced losses, not profits—is not an alternative damage calculation. Mr.

23 Pampinella is not opining that Lordstown is entitled to compensation from Karma for

24 accelerating its losses, but merely illustrating that, when applying the real-world

25 information to Karma's damage theory, any "head start" to Lordstown did not result

26 in any benefit. (Pampinella Report, Dkt. 530-2, at ¶ 103.)

27     The remaining statements challenged by Karma—Items #4, #5, #6 and #7

28 (Mot. to Strike, Dkt. 530, at 5-6)—likewise do not violate this Court's prohibition on

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  "alternative damages calculations," because they do not contain any damages
2  calculations at all.

3      Item #4 criticizes Mr. McGavock for choosing a ███ discount rate for his net-
4  present-value calculation of Lordstown's hypothetical future cash flows (Mot. to
5  Strike, Dkt. 530, at 5)—a rate that, according to industry literature, reflects that the
6  alleged future cash flows were "risk-free." (Pampinella Report, Dkt. 530-2, ¶ 121.)
7  Although Mr. Pampinella does not provide an alternative discount calculation, he
8  opines that Mr. McGavock's ███ discount rate is improper based on the facts of this
9  case, and Mr. McGavock should instead have used a "high-risk" discount rate of
10 ███ (*See id.* ¶¶ 120-122.)

11     Item #5 criticizes Mr. McGavock for failing to deduct or offset the R&D costs
12 that Lordstown actually incurred in developing the technologies at issue from his
13 calculation of Lordstown's purported "avoided costs," which he bases solely on the
14 R&D costs *Karma* allegedly incurred in connection with those same technologies.
15 (Mot. to Strike, Dkt. 530, at 5; Pampinella Report, Dkt. 530-2, ¶ 144-45.) But not
16 only does Mr. Pampinella not *calculate* such an offset ("I have not quantified the
17 appropriate offset"), he specifically opines that doing so would be impossible based
18 on other flaws in Karma's damage theories and the opinions of Mr. McGavock.
19 (Pampinella Report, Dkt. 530-2, ¶ 145.)

20     Item #6 is a similar general critique of Mr. McGavock's methodology for
21 determining Lordstown's allegedly avoided costs. (Mot. to Strike, Dkt. 530, at 6.) As
22 Mr. Pampinella opines, avoided costs should be determined by analyzing ███
23 ████████████████████████████████████████████
24 ████████████████████████████████████████████
25 ██████████████████████████ that were avoided by using the
26 purported trade secrets at issue. (Pampinella Report, Dkt. 530-2, ¶ 150.) But Mr.
27 Pampinella does not perform any such calculation in his report. (*Id.*) Indeed, Mr.
28 Pampinella's opinions are similar to criticisms found in the report of Defendants'

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   prior damage expert, Rodney Sowards, who likewise performed no alternative

2   calculation. (*See* Sowards Report, Dkt. 324-2, at 11 ███████████████████



8   Finally, Item #7 criticizes Mr. McGavock's use of Karma's overall

9   expenditures of ████████ on its bill of materials as a proxy for the benefit to

10  Lordstown of having Karma's bill of materials in its possession, rather than using the

11  (far lower) cost of obtaining third-party bills of materials from other suppliers in the

12  market (as Lordstown actually did here). (Mot. to Strike, Dkt. 530, at 6.) The fact that

13  Mr. Pampinella references the specific amount Lordstown spent on those other third-

14  party bills of materials does not render this opinion an "alternative damage

15  calculation." That amount is simply a fact—a fact Mr. Pampinella uses to

16  demonstrate the absurdity of Mr. McGavock assigning a value of ██████████ to the

17  Karma bill of materials, *more than* ████████ *higher* than the price Lordstown could

18  and did pay for similar third-party bills of materials.

19  For all these reasons, the statements identified on pages 5-6 of Karma's motion

20  are in no way improper "alternative damages calculations," and the Court should

21  therefore reject Karma's motion to strike them from Mr. Pampinella's report.

22  **II.   Mr. Pampinella properly relied on other subject-matter experts.**

23  Karma next seeks to strike the following four opinions from Mr. Pampinella's

24  report on the ground that these opinions "impermissibly rel[y] on previously

25  undisclosed expert opinions":



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL



(Mot. to Strike, Dkt. 530, at 7-8 (citations omitted).)

Karma's argument to exclude these opinions fails for three reasons: (1) experts are plainly permitted to rely on opinions and information from other experts; (2) three of the four opinions Karma seeks to strike do not cite and are not based on other expert opinions, let alone "undisclosed" opinions; and (3) all four of the challenged opinions have been disclosed *repeatedly* prior to Mr. Pampinella issuing his report.

First, it is black-letter law that expert witnesses can rely in part on the opinions of other experts, and "[t]here is no general requirement that the underlying expert testify as well." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Indeed, damages experts in particular "routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Vaporstream, Inc. v. Snap Inc.*, No. 217CV00220MLHKSX, 2020 WL 978731, at *9 (C.D. Cal. Feb. 28, 2020) (finding "nothing improper with Snap's damages expert, Mr. Bakewell, relying on opinions from Snap's technical expert, Dr. Greenberg"). Thus, to the extent Mr. Pampinella relied on the opinions of other technical experts to inform his own conclusions, that reliance is entirely permissible.

In fact, Karma does not cite a single case to the contrary.  Instead, Karma relies on cases opining on the propriety of attempts to introduce entirely new legal theories post discovery—a concept that has no application here. (Mot. to Strike, Dkt. 530, at 6-7 (citing *Masimo Corp. v. Apple Inc.*, No. SACV2000048JVSJDEX, 2023 WL 2347393, at *6 (C.D. Cal. Feb. 9, 2023) (observing that "fact-based expert disclosures made after the close of fact discovery should not form the basis of newly disclosed case theories"); *Amini Innovation Corp. v. Anthony California Inc.*, No. CV 03-8749, 2006 WL 6855371, at *9 (C.D. Cal. Sept. 21, 2006) (prohibiting plaintiff from "pursu[ing] a new theory of liability . . . after the close of discovery").) Not only are these cases irrelevant to Karma's legal argument, they are factually inapposite—as discussed below, all of Mr. Pampinella's opinions are based on information disclosed repeatedly during the litigation.

In any event, only *one* of the four challenged statements—Item #3—includes any reference at all to another expert's opinions.  (Mot. to Strike, Dkt. 530, at 7-8.) Item #1, for instance, cites discussions with six different individuals—all of whom are defendants and fact witnesses in this case, not experts—as well as filings related to Karma's motion for preliminary injunction and Defendants' motion for summary judgment, press reports, documents produced in discovery, and public SEC filings. (Pampinella Report, Dkt. 530-2, ¶ 128.) Item #2 cites a discussion with individual defendant Joe Durre, as well as a government recall notice published on the NTSB website. (*Id.* ¶ 147.) And Item #4 cites discussions with individual defendant Darren

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    Post, as well as a declaration submitted by Post opposing one of Karma's motions

2    for preliminary injunction. (*Id.* ¶¶ 166-67.) Thus, even if Karma's argument were

3    legally viable, it would only apply to one of the four opinions Karma seeks to strike.

4        Finally, all four of the allegedly "new" opinions were clearly and repeatedly

5    disclosed to Karma well before Mr. Pampinella issued his report. Karma's contrary

6    claim that these statements "are not found in any previously-produced expert reports,

7    discovery, or have been [sic] previously disclosed in any form prior to the Pampinella

8    Report" (Mot. to Strike, Dkt. 530, at 8) is false.

9        Item #1 expresses the general and uncontroversial fact that the development of

10   a hybrid luxury sports car differs significantly from the development of an all-electric

11   commercial pickup truck. (*Id.* at 7.) That point has been made countless times

12   throughout this case, including in other expert reports, declarations, and depositions.

13   (Andrews Report, Dkt. 321-1, at 12 █████████████████████████████

14   ███████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████

17   ████████████████████████████████████████ Wurmlinger Report,

18   Dkt. 316-2, at 7, 9, 23 (describing the differences between the Lordstown and Karma

19   vehicles and reasons why documents relevant to one would not be relevant to the

20   other); Andrews Decl., 138-4, at ¶ 13(a) ("LMC's EE Architecture is materially

21   different from Karma, seeing as the LMC's Endurance is an entirely different type of

22   vehicle with an entirely different all-electric powertrain"), ¶ 27 ("LMC's Endurance

23   is a very different vehicle than Karma's Revero"; providing examples).) Mr.

24   Pampinella's report says nothing more.

25       Item #2 refers to the fact that the development of Lordstown's Endurance truck

26   has remained ongoing throughout the pendency of this litigation, and therefore

27   Lordstown has continued to incur R&D costs related to those ongoing efforts. (Mot.

28   to Strike, Dkt. 530, at 7-8.) Not only has the continued development of the Endurance

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

been widely reported and Lordstown's R&D expenditures disclosed through public SEC filings, but Lordstown has also made clear throughout the litigation that it was continuing to develop the vehicle, as recognized by Karma's own prior filings in this case. (*See* Karma's June 28, 2022 Ltr. to Magistrate Judge McCormick, Dkt. 314-2, at 2 (describing deposition testimony reflecting continuing updates to Lordstown's technical documents, and quoting Defendants' discovery responses stating that "'the development of the Endurance remains ongoing' and 'the specification and requirement documents are subject to change'"); Defendants' June 30, 2022 Ltr. to Magistrate Judge McCormick, Dkt. 314-3 ("Karma is well aware that the technologies related to the Endurance are still under development," and "the vehicle's development and technology change daily"; citing deposition testimony).) Indeed, Karma filed one of its five motions in limine to preclude the introduction of updated documents created post-discovery precisely because it *knew* that development was ongoing, as Defendants had informed them. (Karma Mot. for Evidentiary Sanctions, Dkt. 314, at Page 6 of 8/Page ID #77623.)

Item #3 reflects input from Defendants' expert Scott Andrews on the amount of time necessary to recreate the electrical architecture of a vehicle. (Mot. to Strike, Dkt. 530, at 8.) Contrary to Karma's feigned surprised, however, that opinion was expressed repeatedly in Mr. Andrews' expert report. (Andrews Report, Dkt. 321-1, at 5



77 (

Finally, Item #4 discusses the fact that Lordstown was able to purchase third-party bills of materials from vendors—Intellicosting and RLE International—at a tiny fraction of the value Karma assigns to its own bill of materials. (Mot. to Strike,

- 11 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Dkt. 530, at 8.) But the roles of Intellicosting and RLE have been well known to

2   Karma for years—for example, defendant Darren Post submitted a declaration

3   opposing Karma's motion for preliminary injunction in *August 2021* that described

4   how Lordstown hired Intellicosting and RLE to create early versions of its bill of

5   materials and electrical architecture. (Aug. 20, 2021 Post Decl., Dkt. 137-13, ¶¶ 11-

6   19, 25-28; *see also* Andrews Report, Dkt. 321-1, at 95 ███████████████████

7   ████████████████████████████████████████████████████████████

8   █████████████    Indeed, in his discussion of Intellicosting and RLE, Mr. Pampinella

9   cites extensively to that same declaration. (Pampinella Report, Dkt. 530-2, ¶ 166 &

10  nn. 527-530.)

11          Accordingly, Karma's motion to strike portions of Mr. Pampinella's report as

12  relying on previously undisclosed expert opinions fails, because—to the extent the

13  challenged opinions rely on other experts at all—such reliance is permitted and the

14  opinions themselves were repeatedly disclosed to Karma during the litigation.

15  **III.    Mr. Pampinella properly relied on treatises, articles, trade publications,**

16          **and other public information to support his opinions.**

17          Finally, Karma seeks a broad order striking any and all opinions based on

18  allegedly "undisclosed evidence[]" in the form of legal treatises and industry articles"

19  cited in Mr. Pampinella's report. (Mot. to Strike, Dkt. 530, at 10.)

20          Once again, however, Karma does not cite a single authority that supports

21  granting such extraordinary relief, instead relying on cases reciting the irrelevant but

22  uncontroversial proposition that, under Rule 37, documents not disclosed during

23  discovery are inadmissible as evidence. (Mot. to Strike, Dkt. 530, at 9-10 (citing

24  *Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008);

25  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).)

26          But Rule 703 makes clear that the admissibility of evidence forming the basis

27  of an expert opinion "need not be admissible for the opinion to be admitted," so long

28  as that evidence is of a kind "experts in the particular field would reasonably rely on"

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

in forming their own opinions. Fed. R. Evid. 703; *see also Williams v. Illinois*, ——
U.S. ——, 132 S.Ct. 2221, 2246, 183 L.Ed.2d 89 (2012) (Breyer, J., concurring)
("Under well-established principles of evidence, experts may rely on otherwise
inadmissible out-of-court statements as a basis for forming an expert opinion if they
are of a kind that experts in the field normally rely upon."); *United States v. Sims*,
514 F.2d 147, 149 (9th Cir. 1975) (endorsing the view that expert opinion is
admissible if based upon information that was obtained out of court from third parties
but is information upon which experts reasonably rely); *In re Live Concert Antitrust
Litig.*, 863 F. Supp. 2d 966, 995 (C.D. Cal. 2012) ("The Court recognizes, as a general
matter, that economists are entitled to rely on relevant trade publications and
comparable industry materials when conducting an economic analysis of a particular
industry."). In other words, even if Karma is correct that certain legal treatises and
articles are inadmissible at trial, that fact is irrelevant to whether Mr. Pampinella can
rely on them to form his expert opinions.

    This rule holds regardless of whether the evidence itself was produced in
discovery. *See Epistar Corp. v. Lowes Companies, Inc.,* No.
LACV1703219JAKKSX, 2022 WL 18911512, at *3 (C.D. Cal. Oct. 25, 2022)
(damages expert was allowed to rely "on the documents previously produced in fact
discovery *as well as new materials on which experts customarily rely*, as well as the
existing trial record and testimony presented in [the] case"); *Gray v. Mazda Motor of
Am., Inc.*, No. SACV 8-279-JVS (ANx), 2009 WL 10673335, at *2 (C.D. Cal. Feb.
6, 2009) (expert witness may rely on, but not introduce into evidence, videos of a
vehicle inspection produced after close of discovery).

    As Mr. Pampinella's attached declaration makes clear, the "new" sources and
evidence challenged by Karma are exactly the kinds of evidence relied upon by
experts in Mr. Pampinella's field, and thus fall squarely inside the boundaries set by
Rule 703. (Pampinella Decl., attached as Exhibit A, at ¶¶ 2-3.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Indeed, Karma and its counsel should be well aware of this fact, since Karma's own damage expert, Daniel McGavock, similarly cited treatises and publications not produced by either party in discovery, including well over a dozen citations to the same sources that Karma now argues should disqualify Mr. Pampinella's opinions. (*Id.* at ¶ 3; *compare* Ex. B to Pampinella Report, Dkt. 530-2 (relying on, among other sources, International Energy Agency's "Global EV Outlook" report, CNBC, LMC's investor website, TechCrunch, The Wall Street Journal, and S&P Capital IQ) *to* App'x B to McGavock Report, Dkt. 349-3 (same).)

Accordingly, because Rule 703 clearly permits experts to rely on inadmissible evidence, and because Mr. Pampinella's reliance on the allegedly undisclosed "legal treatises and industry articles" is standard practice in his field, Karma's motion to strike an unspecified set of Mr. Pampinella's opinions for relying on such information should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Karma's motion to strike.

Dated:    June 26, 2023                    Respectfully Submitted,

**BAKER & HOSTETLER LLP**

By:    */s/ Scott C. Holbrook*
         Scott C. Holbrook *(Pro Hac Vice)*

*Attorneys for Defendants*
LORDSTOWN MOTORS CORP., *et al.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES